1  DAVID J. COHEN, ESQ.
   California Bar No. 145748
2  ALEXANDER P. GUILMARTIN, ESQ.
   California Bar No. 30676
3  **BAY AREA CRIMINAL LAWYERS, PC**
   300 Montgomery Street, Suite 660
4  San Francisco, CA 94104
   Telephone:  (415) 398-3900
5

6  Attorneys for Defendant **Matthew Worthing**

7

8              IN THE UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

12  UNITED STATES OF AMERICA,      )      Case No. 3:12-cr-00300-CRB
                                   )
13             Plaintiff,          )
                                   )
14  v.                             )
                                   )
15  MATTHEW WORTHING,              )
                                   )
16             Defendant.          )      Date:   January 31, 2018
                                   )      Time:  1:30 p.m.
17  _____    )      Ctrm.:  6

18

19

20  **MR. WORTHING'S MOTION TO WITHDRAW HIS PLEA, PURSUANT TO FED. R.
21  CRIM. P. 11(d)(2)(B)**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.   Mr. Worthing Should Be Permitted to Withdraw His Plea Because the Two Mail
     Fraud Counts to Which He Pled Are Structurally Deficient. . . . . . . . . . . . . . . . . . . . . . 5

     1.   The Information Filed Against Mr. Worthing Fails to Allege Any
          Actionable Omission in Support of the Mail Fraud Counts. . . . . . . . . . . . . . . . . 6
     2.   The Information Filed Against Mr. Worthing Fails to Incorporate
          the Bid-Rigging Allegations into the Mail Fraud Counts, Rendering
          the Counts Structurally Deficient. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     3.   For Purposes of the Validity of the Information, There Exists No
          Meaningful Distinction Between Charges Pursuant to 18 U.S.C. §1341
          and Charges Pursuant to a Conspiracy Theory of Liability under §1349. . . . . . . 12
     4.   Any Opposition from the Government to Mr. Worthing's Request to
          Withdraw His Plea on the Basis of Improper Mail Fraud Charges Would
          Be Arbitrary and Capricious. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.   The Government Has Implicitly Acknowledged That Mr. Worthing's Entire Plea
     Is Void. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.   Mr. Worthing Should Be Permitted to Withdraw His Plea Because the Record
     Contains an Inadequate Rule 11 Plea Colloquy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     1.   The Record Contains an Inadequate Rule 11 Plea Colloquy. . . . . . . . . . . . . . . 19
     2.   The Transcript of the Plea Hearing Is Prima Facie a Correct Statement
          of the Proceeding. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     3.   The Deficiencies in the Plea Colloquy Warrant Withdrawal of Mr.
          Worthing's Plea. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

          i.    There is insufficient evidence that Mr. Worthing "was aware
                of the rights at issue when he entered his guilty plea". . . . . . . . . . . . . . 23
          ii.   The Court's Rule 11 errors were not merely "minor or
                technical". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          iii.  The district court's failure to provide the advisements
                required by Rule 11(b)(1)(G), (H), and (N) are each sufficient
                in and of themselves to warrant withdrawal of Mr. Worthing's
                plea. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D.   The Information Is Void for Lack of Specificity as to the Conspiracy Allegations,
     Requiring Mr. Worthing Be Granted Permission to Withdraw His Plea. . . . . . . . . . . . 28

E.   Mr. Worthing Should Be Permitted to Withdraw His Plea to Multiplicitous Counts. . . 32

     1.   Mr. Worthing Has Been Charged with Multiple Counts Arising from the
          Same Conspiracy, Rendering the Charges Multiplicitous. . . . . . . . . . . . . . . . . 32
     2.   The Improper Multiplicity of the Charges in the Information Support
          Permitting Mr. Worthing to Withdraw His Plea. . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF CONTENTS

Page

F.   Mr. Worthing Should Be Permitted to Withdraw His Plea Due to Information
That Counsel Has Discovered and Obtained since Mr. Worthing Entered
His Plea................................................................ 36

    1.   Government Misconduct.............................................. 37
    2.   Mail Fraud Dismissals............................................... 38
    3.   Government Informants............................................... 39
    4.   Additional Discovery................................................ 39
    5.   New Statements..................................................... 39
    6.   Related Prosecutions................................................. 40
    7.   The Factual and Legal Discoveries That Have Been Made since the Time
       of the Plea Support Mr. Worthing's Request to Withdraw His Plea......... 40

IV.   CONCLUSION........................................................ 42

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Case Law</u>                                                                                                   <u>Page(s)</u>

3
*Arnold v. United States*
  336 F.2d 347 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

4
*Beckham v. Wainwright*
5    639 F.2d 262 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

6
*Chiarella v. United States*
7    445 U.S. 222 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cleveland v. United States*
8    531 U.S. 12 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

9
*County of Marin v. Deloitte Consulting LLP*
   836 F.Supp.2d 1030 (N.D. CA 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, *passim*

10
*Dunn v. United States*
11    284 U.S. 390 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12
*Eggleston v. United States*
   798 F.2d 374 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

13
*Eller v. EquiTrust Life Ins. Co.*
14    778 F.3d 1089 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

15
*Ferguson v. United States*
   513 F.2d 1011 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

16
*Fleisher v. United States*
17    302 U.S. 218 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18
*Hamling v. United States*
   418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

19
*Hernandez v. Chappell*
20    2017 U.S. App.LEXIS 26978 (9th Cir. Dec. 29, 2017). . . . . . . . . . . . . . . . . . . . . . . . 36

21
*Herron v. United States*
   512 F.2d 439 (4th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

22
*Launius v. United States*
23    575 F.2d 770 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

24
*Loughrin v. United States*
   134 S.Ct. 2384 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

25
*McCarthy v. United States*
26    394 U.S. 459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, *passim*

27
*McKeever v. Warden, SCI-Graterford*
   486 F.3d 81 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28

## <u>TABLE OF AUTHORITIES</u>

<u>**Case Law**</u>                                                                                          <u>**Page(s)**</u>

*Menna v. New York*
    423 U.S. 61 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Neder v. United States*
    527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Neibel v. Trans World Assur. Co.*
    108 F.3d 1123 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Russell v. United States*
    369 U.S. 749 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, *passim*

*Salinas v. United States*
    522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Selvester v. United States*
    170 U.S. 262 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simon v. Value Behavioral Health, Inc.*
    208 F.3d 1073 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Turner v. Calderon*
    281 F.3d 851 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Angela Ruiz*
    241 F.3d 1157 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Ankeny*
    502 F.3d 829 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Arellano-Gallegos*
    387 F.3d 794 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Argueta-Ramos*
    730 F.3d 1133 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Avila*
    733 F.3d 1258 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Baramdyka*
    95 F.3d 840 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Bendis*
    681 F.2d 561 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Benny*
    786 F.2d 1410 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Blaylock*
    20 F.3d 1458 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

<u>**Case Law**</u>                                                                                                                  <u>**Page(s)**</u>

*United States v. Bohonus*
    628 F.2d 1167 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bonilla*
    637 F.3d 980 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Boren*
    278 F.3d 911 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, *passim*

*United States v. Bradley*
    381 F.3d 641 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Buchanan*
    59 F.3d 914 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Buckley*
    689 F.2d 893 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Burchell*
    U.S. Dist. LEXIS 89888 (D. Or. June 30, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Castro-Verdugo*
    750 F.3d 1065 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Cecil*
    608 F.2d 1294 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, *passim*

*United States v. Cochran*
    109 F.3d 660 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, *passim*

*United States v. Curtis*
    506 F.2d 985 (10th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Davis*
    428 F.3d 802 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Dayton*
    592 F.2d 253 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Dowling*
    739 F.2d 1445 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. DuBo*
    186 F.3d 1177 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, *passim*

*United States v. Ensminger*
    567 F.3d 587 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, *passim*

*United States v. Fulcher*
    626 F.2d 985 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Case Law**</u>                                                                                   <u>**Page(s)**</u>

3

*United States v. Galloway*
    2016 U.S. Dist. LEXIS 109639 (N.D. Cal.Aug. 15, 2016). . . . . . . . . . . . . . . . . . 3, *passim*

4

*United States v. Garcia*
    401 F.3d 1008 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

6

*United States v. Gastelum*
    16 F.3d 996 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, *passim*

7

8

*United States v. Goodwin*
    457 U.S. 368 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

*United States v. Graibe*
    946 F.2d 1428 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, *passim*

10

*United States v. Hess*
    124 U.S. 483 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

11

12

*United States v. Jaramillo-Suarez*
    857 F.2d 1368 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, *passim*

13

14

*United States v. Jones*
    472 F.3d 1136 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, *passim*

15

*United States v. Josten*
    704 F.Supp. 841 (N.D. IL1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16

*United States v. Kalu*
    791 F.3d 1194 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17

18

*United States v. Kennell*
    15 F.3d 134 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19

*United States v. Klinger*
    128 F.3d 705 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

20

21

*United States v. Laurienti*
    611 F.3d 530 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22

*United States v. LeCoe*
    936 F.2d 398 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23

24

*United States v. Lewis*
    138 F.3d 840 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

25

*United States v. Licciardi*
    30 F.3d 1127 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

26

27

*United States v. Lonich*
    2016 U.S. Dist. LEXIS 9813 (N.D. Cal. Jan. 27, 2016) . . . . . . . . . . . . . . . . . . . . 9, *passim*

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Case Law</u>                                                                                           <u>Page(s)</u>

3

*United States v. Lujano-Perez*
    274 F.3d 219 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4

*United States v. McIntosh*
    704 F.3d 894 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

6

*United States v. McTiernan*
    546 F.3d 1160 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, *passim*

7

*United States v. Messer*
    647 F.Supp. 704 (D. Mont. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

8

9

*United States v. Minore*
    292 F.3d 1109 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, *passim*

10

*United States v. Montgomery*
    150 F.3d 983 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, *passim*

11

12

*United States v. Morales-Rosales*
    838 F.2d 1359 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

13

*United States v. Nance*
    533 F.2d 699 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14

15

*United States v. Noah*
    475 F.2d 688 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

16

*United States v. Olatunji*
    872 F.2d 1161 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17

18

*United States v. Oledo*
    154 F.3d 937 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19

*United States v. Omer*
    395 F.3d 1087 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20

21

*United States v. ORS, Inc.*
    997 F.2d 628 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

22

*United States v. Ortega-Ascanio*
    376 F.3d 879 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

23

24

*United States v. Pena*
    314 F.3d 1152 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

25

*United States v. Pheaster*
    544 F.2d 353 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26

27

*United States v. Pirro*
    212 F.3d 86 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28

## TABLE OF AUTHORITIES

**Case Law**                                                                                              **Page(s)**

*United States v. Rios-Ortiz*
    830 F.2d 1067 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Rivera-Ramirez*
    715 F.2d 453 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Rodriguez*
    140 F.3d 163 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Rodriguez-Gonzales*
    358 F.3d 1156 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Rollings*
    751 F.3d 1183 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Rubalcaba*
    811 F.2d 491 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Smith*
    60 F.3d 595 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, *passim*

*United States v. Steffen*
    687 F.3d 1104 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Stoddard*
    111 F.3d 1450 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, *passim*

*United States v. Superior Growers Supply*
    982 F.2d 173 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Talkington*
    589 F.2d 415 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Tam*
    2017 U.S. Dist. LEXIS 141122 (N.D. Cal. Aug. 31, 2017) . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Tavelman*
    650 F.2d 1133 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Villalobos*
    333 F.3d 1070 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, *passim*

*United States v. Watson*
    582 F.3d 974 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Winter*
    663 F.2d 1120 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Wormick*
    709 F.2d 454 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

## TABLE OF AUTHORITIES

2

<u>**Case Law**</u> <span style="float:right">**Page(s)**</span>

3

*United States v. Yamashiro*
    788 F.3d 1231 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4

*United States v. Yefsky*
    994 F.2d 885 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, *passim*

5

6

*United States v. Zalapa*
    509 F.3d 1060 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

7

<u>**Statutes and Regulations**</u>

8

*Fed. R. Crim. P. 7(c)(1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, *passim*

9

*Fed. R. Crim. P. 11(b)(1)(A)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*
*Fed. R. Crim. P. 11(b)(1)(G)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, *passim*

10

*Fed. R. Crim. P. 11(b)(1)(H)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, *passim*
*Fed. R. Crim. P. 11(b)(1)(K)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*

11

*Fed. R. Crim. P. 11(b)(1)(L)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*
*Fed. R. Crim. P. 11(b)(1)(N)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*

12

*Fed. R. Crim. P. 11(d)(2)(B)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*
*Fed. R. Crim. P. 11(h)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, *passim*

13

*Fed. R. Crim. P. 12(b)(3)(B)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*
*Fed. R. Crim. P. 32* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, *passim*

14

*18 U.S.C. §1341* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

15

*18 U.S.C. §1349* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, *passim*
*28 U.S.C. §753(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, *passim*

16

*28 U.S.C. §2241* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*
*28 U.S.C. §2255* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, *passim*

17

18

19

20

21

22

23

24

25

26

27

28

1  DAVID J. COHEN, ESQ.
California Bar No. 145748
2  ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 30676
3  **BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
4  San Francisco, CA 94104
Telephone:  (415) 398-3900
5

6  Attorneys for Defendant **Matthew Worthing**

7

IN THE UNITED STATES DISTRICT COURT
8
NORTHERN DISTRICT OF CALIFORNIA
9
SAN FRANCISCO DIVISION
10

11  UNITED STATES OF AMERICA,                )        Case No. 3:12-cr-00300-CRB
                                            )
12          Plaintiff,                       )
                                            )        **MR.   WORTHING'S   MOTION   TO**
13  v.                                       )        **WITHDRAW HIS PLEA, PURSUANT TO**
                                            )        **FED. R. CRIM. P. 11(d)(2)(B)**
14  MATTHEW WORTHING,                        )
                                            )        Date:   January 31, 2018
15          Defendant.                       )        Time:  1:30 p.m.
                                            )        Ctrm.:  6
16  ─────────────────────────────           )

17                                        **I.**

18                               **INTRODUCTION**

19          Since 2009, the United States government has engaged in a lengthy investigation and

20  prosecution of dozens of defendants who participated in foreclosure auctions in counties in the

21  Northern and Eastern Districts of California. As a part of that prosecution, the Federal Bureau of

22  Investigation met with Matthew Worthing on January 11, 2011, and discussed with him his

23  employment at his father's company, Worthing Capital, where he worked with his father's business

24  partner, Vince Sakowski. Allegedly, Matthew Worthing began to participate in trustee sales in San

25  Mateo and San Francisco Counties at his father, John Worthing's, direction. Initially, Matthew

26  Worthing was responsible for researching properties up for auction, and would then attend some of

27  the auctions with Vince Sakowski, who would ultimately place bids on behalf of the company. At

28  one particular auction in August of 2010, Sakowski directed Matthew Worthing not to bid on a

property up for auction. Later that day, Sakowski explained to Matthew Worthing that he had received a pay-off in order to not bid on the property. According to the government, following that first pay-off to Sakowski, Matthew Worthing received a number of other pay-offs in exchange for not bidding on properties, and himself purchased a handful of properties pursuant to the "regulars' scheme." Matthew Worthing's conduct, which ceased in late 2010 or early 2011, was done on behalf of his father's and Sakowski's company, Worthing Capital.

After Matthew Worthing spoke to the FBI, he agreed to an agreement with the Department of Justice's Antitrust Division whereby he would plead guilty to charges of conspiracy to commit bid-rigging and mail fraud. As Matthew Worthing understood it, in exchange for his cooperation and plea, neither his father nor Mr. Sakowski would be prosecuted. Accordingly, on April 2, 2012, Vince Sakowski entered into a non-prosecution agreement with the government. John Worthing entered into a similar non-prosecution agreement at or around the same time.

On April 26, 2012, the government filed its information against Matthew Worthing charging him with two counts of conspiracy to commit bid rigging (one each in San Mateo and San Francisco Counties) and two counts of conspiracy to commit mail fraud (same). Doc. no. 1. The information did not identify any specific mailings intended to further a scheme to defraud, nor did it identify any misrepresentations made by Matthew Worthing in any such mailings. Notably for purposes of this motion, the information also failed to incorporate the allegations underpinning the bid-rigging counts into the mail fraud counts. On June 20, 2012, a signed plea agreement was filed with the Court (doc. no. 8), and Matthew Worthing appeared before the Court to plead guilty to the four counts from the information (*see* doc. no. 9).

While Mr. Worthing has been awaiting sentencing, the government has continued its prosecutions out of both the Northern and Eastern Districts (all of which involve similar allegations of bid-rigging schemes and conduct by defendants to obtain either properties or pay-offs through private, secondary round-robin auctions). In many of those prosecutions, the government pursued charges for conspiracy to commit mail fraud, as they did against Mr. Worthing. However, on August 15, 2016, United States District Judge Hamilton of the Oakland branch for the Northern District of

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

2

1 | California ordered the mail fraud counts in the indictments of Mr. Galloway, Mr. Diaz, Mr. Gullory,

2 | and Mr. Joyce dismissed. *United States v. Galloway*, 2016 U.S. Dist. LEXIS 109639 (N.D. Cal. Aug.

3 | 15, 2016).  In her order, Judge Hamilton cited the fundamental structural deficiencies in the charges

4 | and ordered that the only appropriate remedy for the government's lacking pleading was dismissal.

5 |      Following Judge Hamilton's ruling, and in recognition thereof, the government

6 | acknowledged the infirmity in its mail fraud allegations, permitted every related defendant before

7 | this Court to withdraw their guilty pleas to the mail fraud counts, dismissed every mail fraud charge,

8 | and entered into a stipulated change of plea to an information charging only bid-rigging counts. *See*

9 | 3:13-cr-00587-CRB, doc. no. 40; 3:13-cr-00246-CRB, doc. no. 43; 3:12-cr-00785-CRB, doc. no. 49;

10 | 3:11-cr-00801-CRB, doc. no. 53; 3:13-cr-00804-CRB, doc. no. 34; 3:13-cr-00805-CRB, doc. no. 37;

11 | 3:13-cr-00069-CRB, doc. no. 40; 3:12-cr-00301-CRB, doc. no. 44; 3:13-cr-00388-CRB, doc. no. 39;

12 | 3:13-cr-00670-CRB, doc. no. 37; 3:11-cr-00795-CRB, doc. no. 73; 3:11-cr-00802-CRB, doc. no. 58;

13 | 3:11-cr-00798-CRB, doc. no. 55; 3:11-cr-00798-CRB, doc. no. 55; 3:11-cr-00800-CRB, doc. no. 54;

14 | 3:11-cr-00797-CRB, doc. no. 58; 3:11-cr-00796-CRB, doc. no. 61. Likewise, the government moved

15 | to dismiss the mail fraud charges against all five hold-out defendants, all of whom have since elected

16 | to plead guilty to bid-rigging counts alone. *See* 3:14-cr-00534-CRB, doc. nos. 178, 262, 264, 271,

17 | 275, 276. The government has extended this same offer to Mr. Worthing, who has refused to enter

18 | into a stipulation with the government regarding its unlawful charges and thus rejected the

19 | prosecution's resolution of voluntary dismissal of the charges in exchange for a new plea.

20 |      Mr. Worthing now moves to withdraw his guilty plea. In support thereof, he raises a number

21 | of claims, each of which provide sufficient reason for the Court to permit his withdrawal: (1) the

22 | information to which Mr. Worthing pled was structurally deficient due to the mail charges included

23 | therein, (2) the government has implicitly acknowledged that the plea is void, (3) the plea colloquy

24 | did not comply with Rule 11, (4) the information is invalid for lack of specificity as to the conspiracy

25 | allegations underpinning each count, (5) the four charges against Mr. Worthing are multiplicitous,

26 | (6) Mr. Worthing's original counsel would not have advised him to enter into a plea had he known

27 | the legal and factual information he has since learned, and (7) Mr. Williams rendered ineffective

28 |

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

3

1    assistance of counsel in advising Mr. Worthing to enter a plea. Each of these claims provide

2    sufficient reason to permit Mr. Worthing to withdraw his plea.

3                                                    **II.**

4                                      **LEGAL STANDARD**

5           Rule 11(d)(2) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a]

6    defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes

7    sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." "While

8    the defendant is not permitted to withdraw his guilty plea simply on a lark, the 'fair and just'

9    standard is generous and must be applied liberally." *United States v. McTiernan*, 546 F.3d 1160,

10   1167 (9th Cir. 2008). The "proper inquiry [for determining whether a plea can be withdrawn] is

11   whether the defendant has shown a fair and just reason for withdrawing his plea even if the plea is

12   otherwise valid." *Ibid*. "[E]ach case must be reviewed in the context in which the motion arose to

13   determine whether, ultimately, a 'fair and just' reason exists." *Ibid*.

14          To help make this determination, the Advisory Committee on Criminal Rules has adopted

15   the following guidelines:

16          Although the terms "fair and just" lack any pretense of scientific exactness,
         guidelines have emerged in the appellate cases for applying this standard. Whether
17       the movant has asserted his legal innocence is an important factor to be weighed, as
         is the reason why the defenses were not put forward at the time of original pleading.
18       The amount of time which has passed between the plea and the motion must also be
         taken into account.

19

20   Fed. R. Crim. P. 32 advisory committee's note (1983) (citations and internal quotation marks

21   omitted). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly

22   discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that

23   did not exist when the defendant entered his plea." *United States v. Ensminger*, 567 F.3d 587, 590-91

24   (quoting *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007)); *see also McTiernan*, 546 F.3d

25   at 1167 (same). "Erroneous or inadequate legal advice may also constitute a fair and just reason for

26   plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made

27   presentence." *McTiernan*, 546 F.3d at 1167, quoting *United States v. Davis*, 428 F.3d 802, 806-808

28   (counsel's mischaracterization of a possible sentence plausibly motivating the decision to plead

guilty sufficient to satisfy the 'fair and just reason' standard). "A defendant who moves to withdraw a guilty plea is not required to show that he would not have pled, but only that the proper legal advice of which he was deprived could have at least plausibly motivated a reasonable person in the defendant's position not to have pled guilty." *United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015) (quoting *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011); *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005)).

## III.

## ARGUMENT

In support of his motion to withdraw his plea, Mr. Worthing advances several claims: (1) that the mail fraud counts to which he pled guilty were unlawfully alleged, (2) that the government, through its conduct, has already implicitly acknowledged the infirmities in the plea, (3) that Mr. Worthing's plea colloquy was inadequate, (4) that the information is deficient for lack of specificity, (5) that the information is deficient due to the multiplicity of the charges contained therein, (6) that Mr. Worthing's original counsel would not have advised him to enter his plea had he known what he now knows, and (7) that Mr. Worthing's original counsel *should* not have advised him to enter a plea without conducting further investigation. Each of these contentions provides a fair and just reason to permit the withdrawal of Mr. Worthing's plea.

**A.    Mr. Worthing Should Be Permitted to Withdraw His Plea Because the Two Mail Fraud Counts to Which He Pled Are Structurally Deficient.**

Fed. R. Crim. P. 7(c)(1) states that "an indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." A charging document must allege every element of the offense charged (*United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)) and must set forth, within its four corners, facts sufficient to establish that a cognizable offense has been charged. (*United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002); *United States v. ORS, Inc.*, 997 F.2d 628 (9th Cir. 1993)). Where a charging document fails to properly charge an offense, it suffers from a fatal jurisdictional defect. *United States v. Morales-Rosales*, 838 F.2d 1359, 1361 (5th Cir. 1988).

1    Accordingly, Rule 12(b)(3)(B) permits a defendant challenge any defect in an information,

2    including a lack of specificity or failure to state an offense. Courts have held that "[t]he failure of

3    an indictment to charge an offense is a fair and just reason to permit such a withdrawal [of a plea]."

4    *United States v. McIntosh*, 704 F.3d 894, 907 (11th Cir. 2013). For example, Judge Wright of the

5    Eastern District has held it is "manifestly unfair and unjust to sentence [a defendant] on counts

6    charged in an indictment" to which the defendant had pled after that indictment was successfully

7    challenged by a co-defendant. And this very Court, sitting by designation on the Ninth Circuit,

8    authored an opinion permitting the withdrawal of a plea sought "before sentencing so that [the

9    defendant] can move to dismiss his indictment based on an intervening" decision in the law. *United*

10    *States v. Ortega-Ascanio*, 376 F.3d 879, 881 (9th Cir. 2004).

11    Here, Mr. Worthing entered into an agreement to plead guilty to an unlawful information,

12    one containing two counts of mail fraud lacking the requisite allegations and specificity. Those

13    counts are not merely improperly pled, but structurally deficient. Whether this Court views the defect

14    as the government's failing to properly charge Mr. Worthing or counsel's failing to object to an

15    improper charging document before advising his client to plead guilty, the result is the same: Mr.

16    Worthing now faces sentencing on an information to which he did not, and could not have, legally

17    plead. The deficiencies Mr. Worthing identifies in the information not only permit, but require, him

18    to withdraw his plea.

19        1.    <u>The Information Filed Against Mr. Worthing Fails to Allege Any Actionable Omission in Support of the Mail Fraud Counts.</u>

20

21    A charge for mail fraud under 18 U.S.C. § 1341 requires either (a) an affirmative

22    misrepresentation or (b) a non-disclosure under circumstances where the defendant had a duty to

23    disclose. *Eller v. EquiTrust Life Ins. Co.*, 778 F3d 1089, 1092 (9th Cir. 2015). Although the

24    government's pleadings in similar cases argue that no misrepresentations are required to sustain

25    convictions for mail fraud, that argument holds no water following the Supreme Court's

26    pronouncements in *Cleveland v. United States*, 531 U.S. 12, 26 (2000) and *Loughrin v. United*

27    *States*, 134 S. Ct. 2384, 2391 (2014). The Court in *Loughrin* specifically explained why the

28

argument that a mail fraud allegation need only contain an allegation of misrepresentations *or* of a scheme to defraud fails:

> *Loughrin* rightly explains that, despite the word "or," *McNally* [483 U. S. 350 (1987)] understood that provision as setting forth just one offense—using the mails to advance a scheme to defraud. The provision's back half, we held, merely codified a prior judicial decision applying the front half: In other words, the back clarified that the front included certain conduct, rather than doing independent work.

*Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014). In recognition of this holding, the Tenth Circuit, for example, has reversed its prior jurisprudence on the subject: "In light of *Cleveland* and *Loughrin*, our previous precedent indicating section 1341 contains two separate offenses appears untenable." *United States v. Kalu*, 791 F.3d 1194, 1203, n.11 (2015).

The information charging Mr. Worthing with mail fraud, therefore, was required to allege specific misrepresentations or omissions in furtherance of a scheme to defraud. The information, however, makes no such allegations.

Indeed, the sole reference in the information to any misrepresentation or omission is a conclusory allegation that Mr. Worthing "ma[de] and caus[ed] to be made materially false and misleading statements that trustees relied upon to distribute proceeds from the public auction to the beneficiaries and convey title to properties sold at the public auction." Doc. no. 1, ¶¶ 11f, 23e. Nowhere in the information is a statement of what specifically those alleged "false and misleading statements" were, nor to whom they were made or how they influenced anyone to part with something of value.

A single boilerplate allegation that false statements were made simply cannot support a mail fraud charge. *See United States v. Nance*, 533 F.2d 699, 700 (D.C. Cir. 1976) (holding that fraud counts should have been dismissed because they failed to "allege any of the factual particulars of the false representations which defrauded the victim."); *United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974) (cited with approval in *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979) (affirming dismissal of a mail fraud indictment because it failed to allege "the nature of the schemes or artifices . . . including the particular pretenses, representations or promises claimed to have been false."); *United States v. Josten*, 704 F.Supp. 841, 842 (N.D. IL1989) (dismissing an indictment

charging investors with mail fraud because it did not set forth the representations alleged to be false, nor did it give the details of the allegedly improper investments"); *see also United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993) (finding an indictment insufficient where it "did not divulge the factual basis" of the allegations that the defendant "obtained []money from [victims] through false pretenses").

Nor can an alleged omission satisfy the statute's requirements where there is no sufficient allegation of a duty to speak. *See Eller v. EquiTrust*, *supra*, at 1092; *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986) (mail fraud requires "an affirmative material misrepresentation" or, in the case of "constructive" fraud, breach of a duty to disclose); *United States v. Dowling*, 739 F.2d 1445, 1448-49 (9th Cir. 1984), rev'd on other grounds, 473 U.S. 207 (1985) ("[A] scheme to defraud need not be an active misrepresentation, * * * [but] a non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached[.]");*United States v. Laurienti*, 611 F.3d 530, 539 (9th Cir. 2010); *Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").

The government has not alleged (and cannot allege) either a specific misrepresentation nor an omission made while under a duty to speak. In nearly identical cases before this very district, Judge Hamilton held as much (and it is her reasoning that is adopted herein). *United States v. Galloway*, 2016 U.S. Dist. LEXIS 109639 (N.D. Cal. Aug. 15, 2016). To cite one Tenth Circuit example referenced in the briefing that was before her, the Court in *United States v. Cochran* reversed a mail fraud conviction for insufficiency of the evidence where the government showed merely that the defendant had stated a net bid without disclosing the information that the bid would have been higher absent a broker fee, finding that there was no legal duty to disclose the additional information:

> The evidence in this case does not support such a duty, nor does it support the government's alternate theory that Stifel's nondisclosure coupled with its allegedly affirmative misstatements of fact (the net bids) induced false beliefs regarding the amount of the Postipankki bid to OCAT. In reality, we analyze the government's alternate theory virtually the same way as its nondisclosure theory because the

alternate theory presupposes a duty to disclose with any statements unaccompanied by such disclosure deemed fraudulent.

*United States v. Cochran*, 109 F.3d 660, 665-66 (10th Cir. 1997). The Eighth Circuit similarly ruled that selling collateral without a bank's approval and then making a draw request failed to satisfy the elements of mail fraud. *United States v. Steffen*, 687 F.3d 1104, 1114-16 (8th Cir. 2012). And as this district has explained in the context of an allegation that a defendant has a duty to inform a bank that he is subject to a criminal investigation at the time he secures financing:

> Defendant argues that the common law definition of fraud, which has been read into the fraud statutes, has traditionally treated a duty to disclose as an element of omission fraud. The government responds that the issue of duty is not an element of the offense that must be alleged, but rather that the "'duty' exception . . . is an affirmative defense and thus need not be alleged in the Indictment." Dkt. 100 at 5:8-9.
> The Court has reviewed the authority cited by the parties, and agrees with defendant that if the government wishes to prosecute based upon an omissions theory, the indictment must allege that defendant owed a duty to disclose. "Implied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. DuBo*, 186 F.3d 1177, 1179 (9th Cir. 1999).

*United States v. Lonich*, No. 14-cr-00139-SI-1, 2016 U.S. Dist. LEXIS 9813, at *22-23 (N.D. Cal. Jan. 27, 2016); *see also United States v. Tam*, No. 5:16-cr-00401-EJD, 2017 U.S. Dist. LEXIS 141122, at *11-12 (N.D. Cal. Aug. 31, 2017) (granting a motion for a bill of particulars on this theory).

Various theories of omission or misrepresentation can be inferred from the government's allegations in similar cases, but each lacks any basis in an established legal theory (and for that reason, each was rejected by Judge Hamilton). Allegations that Mr. Worthing made material misrepresentations regarding the identity of the property's purchaser or omissions regarding the secondary "round robin" auctions are not only entirely absent from the information, but insufficient to support a charge for mail fraud in any event because there exists no theory that Mr. Worthing had any obligation to disclose the additional information. Just as Mr. Worthing would not have been obligated to disclose a post-auction agreement made between purchasers, so too was he under no obligation to disclose the alleged secondary agreement between participants, nor the identity of the person who won the bid. The utter lack of any legal duty supporting any theory the government may proffer is dispositive.

1     Tellingly and equally dispositively, the government has failed to allege any duty to disclose
2     information that Mr. Worthing violated. This deficiency in the information both speaks to the
3     government's inability to identify any such duty and itself renders the information invalid. Had the
4     government intended to rely on a theory of omissions, it was required to allege a specific duty to
5     speak in its pleadings. "Implied, necessary elements, not present in the statutory language, must be
6     included in an indictment." *United States v. Lonich*, *supra*, at 7-8; citing *United States v. DuBo*, 186
7     F.3d 1177, 1179 (9th Cir.1999), *United States v. Pirro*, 212 F.3d 86, 93 (2nd Cir. 2000).

8     Notably and additionally, there is nothing to suggest any level of materiality attaches to the
9     omissions the government might attempt to allege. Materality, an essential element of mail fraud,
10    exists where the alleged false statement "has a natural tendency to influence, or [is] capable of
11    influencing, the decision of the decision making body to which it was addressed." *Neder v. United*
12    *States*, 527 U.S. 1, 16 (1999); *see also United States v. Rodriguez*, 140 F.3d 163, 168 (2nd Cir. 1998)
13    ("There simply was no evidence at trial that the misrepresentation could have, or did influence
14    Chemical Bank's decision to allow Rodriguez to reach the funds at issue."); *United States v.*
15    *Talkington*, 589 F.2d 415, 417 (9th Cir. 1978) (reversing conviction for making false statements to
16    federal agency because the statements were not capable of influencing the agency's decision);
17    *County of Marin v. Deloitte Consulting LLP*, 836 F.Supp.2d 1030, 1042 (N.D. CA 2011) (holding
18    that plaintiff failed to establish wire fraud because defendant's allegedly fraudulent conduct took
19    place after plaintiff decided to enter the transaction, and plaintiff thus could not "identify[] a
20    particular *transaction* between the parties that would not have resulted."). But Mr. Worthing's
21    conduct, even if any of it could be construed as a misrepresentation or omission, did not, and almost
22    certainly could not, have born any influence on banks' or debt-holders' decisions to part with any
23    of the properties that were put up for auction. The government, which at no point in these
24    proceedings has ever alleged a misrepresentation or omission made by Mr. Worthing, has likewise
25    never suggested that any such statement was material in any manner.

26
27
28

2.      The Information Filed Against Mr. Worthing Fails to Incorporate the Bid-Rigging Allegations into the Mail Fraud Counts, Rendering the Counts Structurally Deficient.

While the information filed against Mr. Worthing contains indications that the mail fraud counts are tied to the bid-rigging counts, it fails to make that connection explicit, and in alleging mail fraud, specifically fails to incorporate any of the allegations underlying the bid-rigging counts. The result is a fundamental, structural deficiency in the mail fraud allegations, one that requires Mr. Worthing be permitted to withdraw his plea to the information.

> An indictment must provide the defendant with a description of the charges against him sufficient to (1) enable him to prepare his defense; (2) ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) enable him to plead double jeopardy against a later prosecution; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Russell v. United States*, 369 U.S. 749, 763, 768 n. 15, 771, 82 S. Ct. 1038, 1046, 1049, n. 15, 1051, 8 L. Ed. 2d 240 (1962); *United States v. Pheaster*, 544 F.2d 353, 360 (9th Cir. 1976), cert. den., 429 U.S. 1099, 97 S. Ct. 1118, 51 L. Ed. 2d 546 (1977).

*United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir. 1980). There is "long-standing law that each count charged against a defendant must stand on its own." *United States v. Rodriguez-Gonzales*, 358 F.3d 1156, 1161 (9th Cir. 2004). The Supreme Court articulated just such a principle in *Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Each count in an indictment is regarded as if it was a separate indictment.") (citing *Selvester v.United States*, 170 U.S. 262, 267 (1898)). "Accordingly, it has been held that each count in an indictment must stand on its own, and cannot base its validity on the allegations of any other count not specifically incorporated." *U.S. v. LeCoe*, 936 F.2d 398, 403 (9th Cir.1991) (citing *U.S. v. Olatunji*, 872 F.2d 1161, 1166 (3d Cir. 1989); *U.S. v. Winter*, 663 F.2d 1120, 1138 (1st Cir. 1981), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997); *U.S. v. Fulcher*, 626 F.2d 985, 988 (D.C. Cir. 1980)).

Presumably, the government's mail fraud charges rely on an alleged overarching scheme to defraud arising out of Mr. Worthing's conduct that is described in the bid-rigging counts. The counts share similar terminology, and indeed, if the government (improperly) seeks to premise the mail fraud allegations on the conduct underpinning the bid-rigging charges, it must necessarily allege that the bid-rigging scheme is the basis for the fraud committed.  The allegations must be inextricably intertwined.

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

11

Despite this, the allegations of mail fraud specifically omit any reference to the bid-rigging allegations. For example, ¶4 of the information describes a bid-rigging scheme involving the following conduct:

> a. agreeing not to compete to purchase selected properties at public auctions in San Mateo County;
> b. designating which conspirator would win the selected properties at the public auctions for the group of conspirators; and
> c. refraining from or stopping bidding for the selected properties at the public auctions.

However, none of that conduct alleged in the bid-rigging counts is at any point incorporated into the subsequent mail fraud counts, which are devoid of such language entirely. There is no explanation in the information as to how the alleged mail fraud was committed, nor how any conduct described constituted fraud of any sort. The challenge Mr. Worthing raises is not to the strength of the evidence against him, which is "irrelevant to the sufficiency of the indictment." *U.S. v. Buckley*, 689 F.2d 893, 900 (9th Cir. 1982). Rather, this challenge is fundamental, attacking the very nature of the charges the government has raised. This deficiency in the pleading has been recognized as fatal by this very district. *United States v. Galloway*, 2016 U.S. Dist. LEXIS 109639 (N.D. Cal. Aug. 15, 2016). The necessary connection between the bid-rigging and mail fraud charges is clear; it seems impossible that Mr. Worthing could be convicted of the mail fraud counts if he were acquitted of the bid-rigging counts. Yet the government has elected to not accordingly allege charges of mail fraud, and the result is a deficient information, one that must be dismissed and from which Mr. Worthing must be permitted to withdraw his plea.

3.   For Purposes of the Validity of the Information, There Exists No Meaningful Distinction Between Charges Pursuant to 18 U.S.C. §1341 and Charges Pursuant to a Conspiracy Theory of Liability under §1349.

In discussions before this Court, the government has suggested that, while infirmities in the information as to actionable omissions or a lack of incorporation may have bearing on mail fraud charges under 18 U.S.C. §1341, the arguments do not apply to Mr. Worthing's case because he has been charged as a conspirator under §1349. *See* 12/8/17 Transcript, 5:16-19. The government, of course, has cited no authority for this position, and indeed, puts forth a proposition for which Mr. Worthing can identify no law in support.

The government's contention is contradicted by a First Circuit case cited by the parties before Judge Hamilton and relied upon above, one in which the specificity challenge to the indictment was based on the document's failure to outline the factual basis for a mail fraud charge, despite the fact that the actual charge was for *conspiracy to commit* mail fraud. *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993). The Court explained:

> We think a mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count.
>
> We reach this conclusion based on the unusual nature of mail fraud. A multi-member mail fraud is itself treated like a conspiracy. *See Serrano*, 870 F.2d at 6 (multi-member fraud requires each member to participate in common scheme with intent to commit fraud); *see generally United States v. Wormick*, 709 F.2d 454, 461 (7th Cir. 1983) (applying conspiracy principles to multi-defendant mail fraud indictment). Thus, the engineering conspiracy count essentially charged Yefsky with agreeing to commit another conspiracy. Yefsky could not be expected to defend himself from a charge of conspiring to join a conspiracy to perpetrate a fraud if the indictment did not identify the fraud that was the ultimate underlying offense.

*Ibid*. (footnote omitted).

It is only sensible that where the government cannot properly allege a cause of action, it is likewise unable to allege the same cause of action by way of conspirator liability, and its failure would reach both types of charges. *See Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1044 (N.D. Cal. 2011) ["Because Marin failed to allege a cause of action under 18 U.S.C. § 1962(c), the claim under section 1962(d) for conspiracy to violate section 1962(c) is likewise be [*sic*] dismissed with leave to amend. *See Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997)."]; *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000) ["*Simon's* failure to plead the requisite elements of either a Section 1962(a) or a Section 1962(c) violation implicitly means that he cannot plead a conspiracy to violate either section."].

4.   Any Opposition from the Government to Mr. Worthing's Request to Withdraw His Plea on the Basis of the Improper Mail Fraud Charges Would Be Arbitrary and Capricious.

In the bid-rigging prosecution before this Court, the government has charged 19 defendants for their participation in an alleged fraudulent foreclosure auction scheme. Following the ruling from Judge Hamilton dismissing the mail fraud counts in cases arising from conduct in Alameda County, and in recognition of the legal inadequacy of the mail fraud counts in all related cases, the

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

13

government has permitted every defendant to withdraw their pleas and re-plead to informations omitting the mail fraud counts. As to the five hold-out defendants, the government dismissed the mail fraud counts from the indictment. Indeed, this same offer to re-plead has been extended to Mr. Worthing. As the government has explained, it "no longer intends to pursue mail-fraud charges" in order "to achieve parity with the defendants in similarly situated cases." Doc. no. 45. As a result, if the government were to now reverse its position and oppose Mr. Worthing's withdrawal of his plea, it would clearly be doing so as punishment for Mr. Worthing's exercise of his procedural rights, giving rise to a claim of vindictive prosecution. As the Supreme Court has noted, a defendant may obtain a dismissal of the charges against him where "the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *United States v. Goodwin*, 457 U.S. 368, 384 (1982).

Mr. Worthing is similarly situated to each of the other 18 defendants whom the government has permitted to re-plead, Mr. Worthing having allegedly been involved in the same overall scheme. He is not more culpable than any of the defendants in the scheme, and in fact has a lower alleged volume of commerce (at under $1,000,000) and more limited extent of participation than nearly every other defendant. There is no just reason for the government to oppose Mr. Worthing's withdrawal of his plea, as they have permitted every other defendant to do the same. It is clearly not the government's overriding sense of generosity that has compelled that allowance, but rather it is the fundamental legal deficiency in their pleadings that has been recognized by this district as requiring dismissal. The government's response to Judge Hamilton's dismissal of mail fraud counts in some of the big-ridding prosecutions that are currently ongoing was to acknowledge the flaw in its charges and to pursue a dismissal thereof. The government has thus allowed every other defendant before it to withdraw their plea and re-enter pleas to informations that omit mail fraud counts (or, in the case of the hold-outs, dismissed the mail fraud counts outright). If the government is to now oppose Mr. Worthing's request to withdraw from his plea, just as it has permitted each of the other defendants in these related cases to do, it acts arbitrarily and capriciously, singling out Mr. Worthing

for different treatment than that it has given other defendants purely on the basis of its dissatisfaction with the procedural rights Mr. Worthing has executed.

**B.      The Government Has Implicitly Acknowledged That Mr. Worthing's Entire Plea Is Void.**

In support of Mr. Worthing's motion to withdraw his plea is the fact that, by seeking the dismissal of mail fraud counts for many other defendants in related cases, the government has already conceded impropriety in the plea. Judge Hamilton's ruling regarding a fatal defect in the mail fraud allegations applies to every defendant so charged; the government's only very recently proffered argument that conspirator liability distinguishes many of these cases from the pure §1341 charges has no support in the law and is contradicted by the government's many previous statements on the issue. Consequently, the government has acknowledged the defect and thereby acknowledged that Mr. Worthing should not be forced to continue forward with an illegal plea.

In response to Mr. Worthing's motion to withdraw, the government appears to now desire to claim that the agreement it entered into with many other defendants was one not based in the law, but was instead merely the product of a generous offer by the prosecution.[1] However, parties in a criminal case cannot simply stipulate to orders without any legal basis for doing so, and it cannot be that the re-pleas executed by dozens of other defendants were done so both knowingly and illegally.

An agreement between the parties must be based in the law; the parties cannot agree to illegal actions. Indeed, even in a plea agreement, the parties cannot stipulate to the imposition of an illegal sentence. It is for this reason that despite the presence of an appellate waiver in many plea agreements, valid in all other respects, such a waiver does not extend to an illegal sentence, which can be challenged on appeal no matter the terms of the agreement. *See United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996); *United States v. Angela Ruiz*, 241 F.3d 1157 (9th Cir. 2001);

---

[1] MR. MAST: And, Your Honor, the Government's view is the charge was not defective. . . .
The Government's decision to re-enter a plea or "rearrange" pleas, as you said, was purely a matter of prosecutorial discretion. It was not required by Judge Hamilton, and would not be required under the law.

12/8/17 Transcript, 5:16-6:8.

1   *United States v. Watson*, 582 F.3d 974, 977 (9th Cir. 2009). Whether a defendant has waived his

2   right to appeal an illegal sentence cannot even be considered an issue, as such a waiver is expressly

3   forbidden and can never be thought to have been enacted. *United States v. Castro-Verdugo*, 750 F.3d

4   1065, 1072-73 (9th Cir. 2014). Were Mr. Worthing to be sentenced pursuant to his convictions for

5   mail fraud, that sentence would be illegally rendered, and an illegal sentence is not one the parties

6   can simply stipulate to (or agree to in a plea agreement).

7   　　　　How the government characterizes its decision to allow dozens of defendants to re-plead to

8   informations omitting mail fraud counts has vacillated depending on what point the government

9   wished to make at any particular moment. At times, the government has argued that it does not agree

10   with Judge Hamilton's ruling, but is nonetheless acting in unnecessary compliance therewith

11   (rightfully earning this Court's bewilderment):

12   　　　MR. JACOBS: In fact, there's another complicating factor for the government, which
    　　　is, when Mr. Rezaian pled, he actually pled to a charge that's not a crime. So he pled
13   　　　to mail fraud, which has now been dismissed. . . .

14   　　　THE COURT: But he pled to something which is no longer a crime?

15   　　　MR. NICHOLSON-MEADE: Your Honor, that's not the government's position. But
    　　　what has occurred is the government has dismissed the fraud charges that were
16   　　　originally filed against these defendants –

17   　　　THE COURT: Be that as it may, going back to what the witness pled to, he pled to
    　　　something which now – is it the government's position that – that the defendant – the
18   　　　witness pled to something which is or is not a crime in light of the law?

19   　　　MR. NICHOLSON-MEADE: No. The government has not taken the position that
    　　　Mr. Rezaian did not plead to – that the fraud charges were not a crime. However, the
20   　　　disposition –

21   　　　THE COURT: Are they a crime now?

22   　　　MR. NICHOLSON-MEADE: The government's position is that they are.
    　　　What occurred in the East Bay cases is that the fraud charges brought against
23   　　　similarly situated individuals were dismissed.

24   　　　THE COURT: We don't have to go there yet.

25   　　　MR. NICHOLSON-MEADE: Okay.

26   　　　THE COURT: This is getting very complicated.

27   　　　MR. NICHOLSON-MEADE: It is, Your Honor. But I think the fundamental –

28

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

THE COURT: This is the most complicated case I've ever seen.

3:14-cr-00534-CRB, 1/20/17 Transcript, 169:25-171:13.

These characterizations, however, fly in the face of the language the government used when it originally described the situation to this Court in its initial request to vacate the then-set status hearings and schedule re-pleas:

> The United States has proposed new plea agreements with the above-captioned defendants to achieve parity with the defendants in similarly situated cases. On August 15, 2016, the Honorable Chief Judge Hamilton dismissed the mail-fraud charges filed against the defendants in *United States v. Galloway, et al.*, No. 14 CR 607 (N.D. Cal.), a case arising from conduct similar to the conduct charged in the above-captioned cases, but occurring in Contra Costa County and involving different participants. *See* Dkt. 139. (No. 14 CR 607 (N.D. Cal.)). Following Judge Hamilton's Order, the United States elected not to pursue the mail-fraud charges in *United States v. Giraudo*, and on October 13, 2016, upon the United States' motion, this Court dismissed the mail fraud charges against the *Giraudo* defendants. See Dkt. 178. That case is scheduled for trial on January 8, 2018.
>
> Like the *Giraudo* defendants and defendants before Judge Hamilton, the United States no longer intends to pursue mail-fraud charges against the above-captioned defendants. The United States has proposed new plea terms which include bid-rigging charges, but remove reference to the mail-fraud charges.

Doc. no. 45.

Similarly telling is the specific manner in which the government has elected to proceed with each similarly situated defendant. The government did not choose to respond to Judge Hamilton's ruling by filing a superseding indictment curing the defects in the pleadings and alleging the omission and duty they had previously failed to allege, nor incorporating the bid-rigging allegations. Instead, the government proceeded by way of another course of action in which it acquiesced in the dismissals of dozens of counts of mail fraud. Undoubtedly, it did not do so because the resources required to file properly pleaded indictments was too great, or because it had a spontaneous change of heart (if the latter is true, it is unclear why the government's heartstrings only appear available for certain defendants to pluck in certain ways). Rather, the government acknowledged the fundamental infirmity in its allegations, understood that the mail fraud charges were inapposite, and proceeded with charges it believed it had evidence to support. The only conceivable explanation for the manner in which the government has proceeded is one where all parties have conceded the defect that Judge Hamilton identified in her order.

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

17

Notably, no party has ever argued that the mail fraud portion of the plea agreements in this and dozens of related cases can simply be excised from the agreement without a complete voiding of the agreement; that is, the government has never proposed severability. That is perhaps because such an argument would undoubtedly fail, as plea agreements are fully integrated documents and a plea to one count in an agreement cannot simply be severed from other terms contained therein. *See United States v. Rollings*, 751 F.3d 1183, 1189 n.4 (10th Cir. 2014) ["The government has not argued here that the provisions in the agreement are severable, and, even if it had, this argument would fail because the plea agreement on its face is completely integrated. *See* App. 132 ('This document contains the entire plea agreement between defendant, Terry Jo Rollings, and the United States through its undersigned attorney. No other agreement or promise exists, nor may any additional agreement be entered into unless in writing and signed by all parties.'[2])."]; *McKeever v. Warden, SCI-Graterford*, 486 F.3d 81, 92 (3d Cir. 2007), citing approvingly *United States v. Lewis*, 138 F.3d 840 (10th Cir. 1998) and *United States v. Bradley*, 381 F.3d 641 (7th Cir. 2004) ["Two sister circuits, however, have been confronted with this question and have held that, when the plea as to one violation is constitutionally invalid because the parties did not understand at the time that the statute did not reach the defendant's conduct, the entire plea agreement must be voided; courts should not simply "sever" the invalid pleas and treat the remainder of the plea agreement as valid."]. In any event, it is evident that, were the terms of the plea agreement to be unilaterally altered, Mr. Worthing would be permitted an opportunity to withdraw therefrom.

The government's "repleading" scheme might be considered as being executed pursuant to one of two vehicles: either a stipulated withdrawal or a 28 U.S.C. §2255 habeas corpus petition. For the reasons given above, the parties cannot simply stipulate to an unlawful procedure; any agreement

---

[2] Language in Mr. Worthing's plea agreement mirrors that cited by the Tenth Circuit:

This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

Doc. no. 8, 14:13-15.

---

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

between the parties must have amounted to a stipulation that a violation of law requires withdrawal, and that violation must still require withdrawal ("repleading" stipulation or not). On the other hand, a stipulated habeas petition likewise requires an agreement that a violation of law had occurred. Such a petition cannot be freely granted with no basis, as the statutory language explicitly requires that relief be granted only where there has been a "violation of the Constitution or laws of the United States." There is simply no vehicle in the law by which a prosecutor and defendant may simply agree to effectuate whatever change in proceedings they desire. The fact that dozens of defendants have been permitted to withdraw their pleas and enter new pleas to modified charges is not, and cannot be, the result of spontaneous prosecutorial discretion and a happenstance meeting of the minds. The only reasonable conclusion that can be drawn is that these defendants have pled anew because their original pleas were unlawful, and the government's acquiescence to this procedure acts as a concession of the illegality of the original pleas.

**C.** **Mr. Worthing Should Be Permitted to Withdraw His Plea Because the Record Contains an Inadequate Rule 11 Plea Colloquy.**

1.      The Record Contains an Inadequate Rule 11 Plea Colloquy.

Rule 11 of the Federal Rules of Criminal Procedure is explicit in its required advisements and assurances for a court accepting a guilty plea:

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During the address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
. . .

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release; . . .

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment; . . .

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence . . .

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

19

1   Fed. R. Crim. P. 11(b).

2        The record of Mr. Worthing's June 20, 2012 plea hearing indicates no advisement

3   whatsoever as to the requirements of Rule 11(b)(1)(A), (K), (L), or (N). That is, the Court made no

4   reference as to its authority to order restitution, its obligation to impose a special assessment, or Mr.

5   Worthing's waiver of his constitutional right to appeal.[3] As to "the government's right, in a

6   prosecution for perjury or false statement, to use against the defendant any statement that the

7   defendant gives under oath," the Court elected to place Mr. Worthing under oath, but did not provide

8   any advisement about potential prosecution for perjury that might arise from Mr. Worthing's

9   subsequent statements:

> THE CLERK: Please raise your right hand. You do solemnly swear that the answers
> you give shall be the truth, the whole truth and nothing but the truth.
>
> THE DEFENDANT: I do.
>
> THE COURT: You may put your hand down. Please speak into the mike. Okay. Mr.
> Worthing, you understand that you are under oath and you must answer my questions
> truthfully?
>
> THE DEFENDANT: I do, Your Honor.

6/20/12 TX, 2:19-3:2.

        But perhaps more critically, the record of the plea hearing also indicates that Mr. Worthing

was not advised of "the nature of each charge" nor, accordingly, the "maximum possible penalty"

of each charge. At his hearing, Mr. Worthing was meant to plead guilty to two counts of conspiracy

---

[3] As Rule 11(b)(1)(N) envisions in its description of "terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," Mr. Worthing's plea agreement contains just such a provision and waiver:

> The defendant also knowingly and voluntarily waives the right to file any appeal, any
> collateral attack, or any other writ or motion, including but not limited to an appeal under
> 18 U.S.C. §3742 or a motion under 28 U.S.C. § 2241 or 2255, that challenges the sentence
> imposed by the Court if that sentence is consistent with or below the Sentencing Guidelines
> range stipulated by the parties in Paragraph 9 of this Plea Agreement, regardless of how the
> sentence is determined by the Court.

Doc. no. 8, ¶2.

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

to commit bid-rigging and two counts of conspiracy to commit mail fraud. The transcript of the hearing indicates two occasions on which the charges were addressed, neither time in full:

> THE COURT: What are the possible consequences of this plea?
>
> MR. WARD: Your Honor, the defendant is charged with four counts in the Information. Count One charges the defendant with participating in a conspiracy to suppress and restrain competition by rigging bids to obtain selected properties offered at public real estate foreclosure auctions in San Mateo County in violation of 15 U.S.C. Section A. The maximum penalty is a term of imprisonment for ten years; a fine in an amount equal to the greatest of $1 million; or twice the gross pecuniary loss caused to the victims, whichever is greater; a period of supervised release of not more than three years; a $100 special assessment per penalty totaling $400.
>
> Count Two of Four charges the defendant with violating 18 U.S.C. Section 1349 during the relevant period, and the maximum penalties are a term of imprisonment for 30 years; a fine of not more than $1 million; a term of supervised release of not more than five years; and a $100 special assessment per count; and restitution. . . .
>
> THE COURT: What are the essential elements of the offense?
>
> MR. WARD: The essential elements of the Sherman Act violation are that the defendant participated in a conspiracy to suppress and restrain competition by rigging bids to obtain selected properties offered at public real estate foreclosure auctions, in unreasonable restraint of interstate trade and commerce. Count Four of the Information charges the defendant with conspiracy to commit mail fraud in violation of 18 U.S.C. 1349 or that there was an agreement between two or more persons to commit the crime of mail fraud. The defendant became a member of a conspiracy of at least one of its objects and intending to help accomplish it.

*Id*. at 5:19-6:15, 8:1-8:15. Despite the fact that Mr. Worthing was pleading guilty to four counts, both times the prosecutor addressed the charges, he mentioned only two counts (one count of each of bid-rigging and mail fraud).

2. The Transcript of the Plea Hearing Is Prima Facie a Correct Statement of the Proceeding.

Mr. Worthing duly notes that he can rely only upon the record of the proceedings available to him, including specifically the court reporter's transcript of the June 20, 2012 plea hearing. This transcript indicates significant and uncharacteristic omissions by the district court, as described above. However, the transcript is certified as "a correct transcript from the record of proceedings in the above-entitled matter," and is thus compliant with both 28 U.S.C. §753(b) (requiring that the reporter "attach his official certificate") and Guide to Judiciary Policy, Vol. 6, §510.25 (providing requirements for certified transcripts of proceedings). *See also* §520.63.30(a) [providing a

certification example for transcripts prepared by stenography, which this certification follows verbatim].[4]

"The transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. §753(b). Consequently, the record of the proceedings, complete with its entirely inadequate Rule 11 plea colloquy, must govern this court's determination of Mr. Worthing's contentions. Notably, Circuits that have addressed inadequate or nonexistent records of plea hearings have treated the circumstance as they would an insufficient Rule 11 colloquy, mandating withdrawal or reversal. *See*, *e.g.*, *Herron v. United States*, 512 F.2d 439, 441 (4th Cir. 1975); *Ferguson v. United States*, 513 F.2d 1011, 1013 (2d Cir. 1975).

Mr. Worthing proceeds in reliance on the record before him.

3.     <u>The Deficiencies in the Plea Colloquy Warrant Withdrawal of Mr. Worthing's Plea.</u>

One of the oft-recognized circumstances permitting withdrawal of a guilty plea is an "inadequate Rule 11 plea colloquy." *United States v. Ensminger*, 567 F.3d 587, 590-91 (9th Cir. 2009); *see also United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007); *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (2004); *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987). Rule 11(h) imposes a limitation on this principle, providing that a court's deviation from the advisement it is required to provide and inquiry it is required to make "is harmless error if it does not affect substantial rights." The Ninth Circuit has explained the force of this provision:

> Prior to the enactment of subsection 11(h), noncompliance with Rule 11 in direct appeal cases was always reversible error. *See McCarthy v. United States*, 394 U.S. 459, 468-69, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). In 1975, however, extensive amendments were made to Rule 11 to require more elaborate and lengthy procedures. As a result, unlike the simpler pre-1975 version of Rule 11, the chance of harmless errors of a minor or technical nature is now more likely. The Advisory Committee Notes make clear that the 1983 Amendments to Rule 11, wherein subdivision (h) was enacted, merely reject *McCarthy's* extreme sanction of automatic reversal where technical violations occur and permit a harmless error analysis. "Subdivision (h) makes *no change* in the responsibilities of the judge at Rule 11 proceedings, but instead merely rejects the extreme sanction of automatic reversal." Advisory Comm. Notes to Fed. R. Crim. P. 11(h), 1983 Amendment (emphasis in original).

---

[4] Although counsel has inquired with the court clerk, there do not appear to have been any stenographic notes of the plea hearing lodged in the court's files.

*United States v. Odedo*, 154 F.3d 937, 940 (9th Cir. 1998), overruled on other grounds.

"[T]he kinds of Rule 11 violation which might be found to constitute harmless error upon direct appeal are fairly limited." Fed. R. Crim. P. 11(h), Notes of Advisory Committee to the 1983 Amendment. "[S]ubdivision (h) should not be read as supporting extreme or speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards." *Ibid*. Consequently, "[t]o show that the error was harmless, the government must establish either that the record affirmatively demonstrates that the defendant 'was aware of the rights at issue when he entered his guilty plea' or that the district court's Rule 11 error was simply 'minor or technical.'" *United States v. Villalobos*, 333 F.3d 1070, 1074 (9th Cir. 2003).

For this reason, a number of Rule 11 violations have been deemed sufficient to warrant a withdrawal of plea (or reversal), including failures to fully inform a defendant of the nature of the charges against him (*Villalobos*, *supra*, 333 F.3d 1070; *United States v. Minore*, 292 F.3d 1109, 1113 (9th Cir. 2002)), failures to inform a defendant he cannot withdraw his plea if the district court refuses to accept the government's sentencing recommendation (*United States v. Graibe*, 946 F.2d 1428, 1430 (9th Cir. 1991)), and failures to provide the Rule 11 colloquy until after the plea was accepted (*United States v. Gastelum*, 16 F.3d 996 (9th Cir. 1994)).

        i.    There is insufficient evidence that Mr. Worthing "was aware of the rights at issue when he entered his guilty plea."

Rule 11's harmless error provision excuses errors in the district court's plea colloquy where there is sufficient evidence the defendant knew of the rights that the court failed to advise him of. In making this determination, a reviewing court is constrained to the record of the plea proceeding, and should not look to other evidence, including, for example, the defendant's other contacts with the criminal justice system. *Odedo*, *supra*, 154 F.3d 937, 940 ["Our review is limited to the record of the plea proceeding"]; *United States v. Kennell*, 15 F.3d 134, 138 (9th Cir. 1994) ["In making the critical inquiry into what Kennell actually knew at the time he entered his plea, we are limited to the contents of the record of the plea proceeding"]; *Graibe*, *supra*, 946 F.2d 1428, 1434 ["we are limited to what the record of the plea proceeding contains"]; *United States v. Jaramillo-Suarez*, 857 F.2d 1368, 1371 (9th Cir. 1988). In the present case, the district court failed to make any mention of a

1  significant constitutional right, that is, Mr. Worthing's waiver of his right to appeal his sentence. So
2  too did the Court fail to advise Mr. Worthing of restitution, special assessments, or the fact that Mr.
3  Worthing's statements, if false, could expose him to prosecution for perjury. And most
4  fundamentally, the Court failed to advise Mr. Worthing as to the nature of the charges against him,
5  including their maximum penalties and even the number of charges to which he was pleading. Just
6  as the plea proceeding included no mention of these rights by the judge, the record also discloses no
7  mention of these rights by the defendant, his counsel, or the prosecutor.

8      Nor are there any statements from the record of the plea proceeding here that shows Mr.
9  Worthing was sufficiently advised of his rights by someone other than the Court at any time,
10  including by his own counsel. Even a statement by counsel affirming his belief that his client
11  understands the rights he is foregoing fails to offer sufficient evidence that a defendant does, in fact,
12  fully understand the contours of the advisements the Court is required to provide, as these generic
13  statements tell "little about the substance and depth of his conversations with his client." *United*
14  *States v. Arqueta-Ramos*, 730 F.3d 1133, 1140 (9th Cir. 2013). But here, the weight of a defense
15  attorney's assurance is of no consequence, because the Court made no inquiry of counsel whatsoever
16  and nothing in the record indicates that Mr. Worthing was appropriately advised by counsel of the
17  appellate rights he was waiving or the other Rule 11(b) advisements that the Court did not iterate.

18              ii.     The Court's Rule 11 errors were not merely "minor or technical."

19      Mr. Worthing's case is not one where the only criticism that can be levied against the plea
20  proceedings is the Court's failure to read verbatim the advisements the rule mandates. The colloquy
21  described in Rule 11 should be interpreted fairly; it "is not to be read as requiring a litany or other
22  ritual which can be carried out only by word-for-word adherence to a set 'script.'" Fed. R. Crim. P.
23  11(h), Notes of Advisory Committee to the 1983 Amendment. Accordingly, minor or technical
24  violations of the rule require leniency. For example, where the court informs a defendant he has a
25  right to a jury trial, but later tells him his plea waives his right to a "trial" rather than a "jury trial,"
26  the error can be considered so minor as to not provide a "fair and just" reason to allow the defendant
27  to withdraw his plea. *United States v. Rubalcaba*, 811 F.2d 491, 493 (9th Cir. 1987).

28

But the errors committed by the district court in this case are entirely different in magnitude. Violations of Rule 11 that "nullify or dilute important Rule 11 safeguards" must be treated differently from those that are merely "minor or technical." *Gastelum*, *supra*, 16 F.3d 996, 999; *see also Jaramillo-Suarez*, *supra*, 857 F.2d 1368, 1371. The court in this case failed to advise Mr. Worthing of fundamental constitutional rights and the very nature of the charges against him; this failure cannot be deemed a mere "minor or technical" violation of a procedural rule. Critically, Mr. Worthing was not informed, for example, of the appellate rights he was waiving by entering his plea and may find himself without the full litany of due process remedies that would have been available to him had he been appropriately advised. Likewise, Mr. Worthing was not informed of the nature of the four charges against him, charges that were themselves multiplicitous and insufficiently specific, and which should have been challenged accordingly. Indeed, one of Mr. Worthing's contentions has always been the inappropriateness of his pleading to multiple counts of bid-rigging and mail fraud, rather than a single count. It is telling that the inadequate colloquy in this case included a reading of the charges that entirely avoided alerting Mr. Worthing to the fact that he was ultimately pleading to multiple counts of each charge, instead offering the misleading description of the counts transcribed above. With appropriate advisement from the Court, an advisement the legislature has specifically and purposefully set out to mandate, Mr. Worthing may well have proceeded differently and not be in this position, one Rule 11(b) is designed to avoid.

Reviewing Courts faced with district courts' failures, as in this case, to advise a defendant as to one of his constitutional rights have been unforgiving where the record is entirely silent as to a specifically mandated advisement:

> Nothing in the record of the plea proceeding suggests that Graibe knew that he would not have the right to withdraw his guilty plea if the judge refused to impose the sentence agreed upon by the parties. This is not a case in which the district judge merely failed to utter verbatim some magical words. The required advisement was not given in any form.

*Graibe*, *supra*, 946 F.2d 1428, 1434. Likewise, here the district court failed to give required advisements "in any form." Rather than explain the appellate rights Mr. Worthing was waiving by entering into his plea, the district judge neglected to advise Mr. Worthing as to these fundamental

constitutional rights, and his waiver of them, in any way. The district judge likewise neglected to make even a cursory mention of its authority to order restitution, its obligation to impose special assessments, or the perjury prosecutions that could follow any false statements Mr. Worthing made. Most dramatically, Mr. Worthing was not advised as to the elements or maximum penalties of two of the counts to which he pled, instead being affirmatively mislead by the prosecutor into the notion that he was pleading guilty to only two counts in total. The necessary consequence of the inadequacy of the plea colloquy in this case is that Mr. Worthing must be permitted an opportunity to withdraw his plea, which he presently seeks to do.

iii. The district court's failure to provide the advisements required by Rule 11(b)(1)(G), (H), and (N) are each sufficient in and of themselves to warrant withdrawal of Mr. Worthing's plea.

Any one of the district court's failures to properly advise Mr. Worthing provide sufficient reason to permit him to withdraw his plea; when taken in conjunction, these errors absolutely demand the conclusion that Mr. Worthing has presented a fair and just reason to withdraw his plea.

Among the most important of Mr. Worthing's contentions is the effect of the Court's failure to properly advise him regarding the nature (and maximum penalty) of the charges against him. The district court here omitted entire counts to which Mr. Worthing was pleading guilty, failing to instruct him of their elements, their maximum penalties, or even their very existence. Courts have reversed decisions to prohibit a defendant's withdrawal of his plea in circumstances where the district court failed to "advise the defendant during the plea colloquy of the elements of the crime and ensure that the defendant understands them." *United States v. Villalobos*, 333 F.3d 1070, 1073 (9th Cir. 2003). The court's failure to instruct a defendant as to a critical element of his offense affects his substantial rights and denies him due process. *Id.* at 1074. After all, "the defendant's right to be informed of the charges against him is at the core of Rule 11, which exists to ensure that guilty pleas are knowing and voluntary." *United States v. Minore*, 292 F.3d 1109, 1119-20 (9th Cir. 2002); *see also United States v. Pena*, 314 F.3d 1152 (9th Cir. 2003). Tellingly, the *Villalobos* Court reversed merely on the basis of the district court's failure to advise the defendant as to the proper burden of proof on drug quantity; the district court here more dramatically failed to advise Mr.

Worthing as to the very *existence* of charges to which he was pleading, let alone the burdens of proof or elements carried with them.

If the Ninth Circuit has acknowledged that "we do not suggest that reading the indictment will in most instances satisfy the requirements of Rule 11" (*United States v. Rivera-Ramirez*, 715 F.2d 453, 457 (9th Cir. 1983)), then certainly the court's failure to even read all four counts from the information charging Mr. Worthing is insufficient here. *See also United States v. Lujano-Perez*, 274 F.3d 219, 225 (5th Cir. 2001) [collecting cases in which failure to advise of nature of charges excused by reading of indictment combined with other evidence of defendant's understanding]. In *United States v. Smith*, 60 F.3d 595 (9th Cir. 1995), for example, the Court addressed a plea hearing in which the defendant waived reading of the indictment, but the district court did not thereafter explain the nature of the charges. Although the government pointed to its recitation of the factual basis for the plea, the plea agreement itself, and the defendant and counsel's recitations that they had discussed the nature of the charges with one another, the Court determined that none of this was sufficient evidence of defendant's understanding, essentially reducing the government's argument to one that "at some point outside of the plea proceeding, [the defendant] was probably informed of the charge." *Id*. at 599. The Court described "a total failure to identify the crime, much less explain it" as a "fundamental" omission, one that was fatal to the plea. *Ibid*.

Rule 11(b)(1)(N)'s purpose is to ensure that a defendant waiving his right to appeal his sentence does so knowingly and intelligently. It guarantees that a defendant is not merely put on notice of his waiver by the plea agreement and by counsel, but that the district court specifically inquires regarding an appellate waiver provision in the agreement and determines that the defendant fully understands the right he is giving up by entering his plea. The court here failed to heed the rule's requirements and made no inquiry into the appellate waiver provision contained in Mr. Worthing's plea agreement. The Ninth Circuit has also dealt with this type of failing, addressing a circumstance where an appellate waiver in a plea was not addressed at the plea hearing nor ever "mentioned in open court prior to the acceptance of the plea." *United States v. Arellano-Gallegos*, 387 F.3d 794, 797 (9th Cir. 2003). The *Arellano-Gallegos* Court made clear that the magistrate

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

27

judge's inquiry of the defendant regarding his understanding of the plea agreement was insufficient, as it "made no specific reference to the waiver of the right to appeal the sentence." *Ibid*. This "wholesale omission" affected the defendant's substantial rights and demanded that the waiver be rendered invalid. *Ibid*.; *see also United States v. Buchanan*, 59 F.3d 914, 917-18 (9th Cir. 1995). In fact, other Circuits have held that withdrawal of a plea is required even where there is no "plea-agreement provision waiving the right to appeal" and no Rule 11 violation, but simply the district court's communicating of an incomplete understanding of the effect of the plea on the defendant's right to appeal. *United States v. Avila*, 733 F.3d 1258, 1263 (10th Cir. 2013).

The Court was required by law to make a more detailed inquiry than the one it engaged in, one that covered the specific statutory advisements enumerated in Rule 11. The court's failure to advise Mr. Worthing of even the nature of all of the charges against him suggests that the court's colloquy was not the result of careful reflection and sufficient assurance, but mere neglect. On the basis of this failing alone, Mr. Worthing must be permitted to withdraw his plea; when taken in conjunction with the other Rule 11 violations committed by the district court, no other result can reasonably be considered.

### D.    The Information Is Void for Lack of Specificity as to the Conspiracy Allegations, Requiring Mr. Worthing Be Granted Permission to Withdraw His Plea.

In addition to the fundamental defects in the mail fraud charges, the information also lacks sufficient specificity of all counts, which are reliant on improperly pleaded conspiracy allegations. This is because these allegations fail to provide proper notice of the factual circumstances supporting the charges, including, specifically, an utter absence of any named co-conspirators.

> In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured. These criteria are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*Russell v. United States*, 369 U.S. 749, 763-64 (1962) (quotations omitted). "Undoubtedly the language  of the statute may be used in the general description of an offence, but it must be

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

28

accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974), quoting *United States v. Hess*, 124 U.S. 483, 487 (1888). "[I]t is not sufficient that the indictment . . . charge the offense in the same generic terms as in the definition; but it must state the species; it must descend to particulars." *Russell*, *supra*, 369 U.S. at 765; *see also United States v. Superior Growers Supply*, 982 F.2d 173, 177 (6th Cir. 1992) ("[t]o be legally sufficient, the indictment must assert *facts* which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime.") (citing *Fleisher v. United States*, 302 U.S. 218 (1937) (per curiam) (emphasis added)). In considering a motion to dismiss an indictment, the Court may not look beyond "the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

The information to which Mr. Worthing pled guilty fails to include a sufficient "statement of the facts and circumstances," and not merely because the mail fraud charges omit any omission or duty. The charging document fails to specify what conspiracy it actually refers to, neglecting to name any co-conspirators in the alleged offenses and thereby rendering it a complete mystery what specific allegations Mr. Worthing is tasked with defending against. This defect is appropriately addressed at this juncture, when it can be easily remedied, and it supports a withdrawal of Mr. Worthing's plea to allow properly pleaded charges. In the context of a motion to withdraw a plea, the Court should use a particularly low standard in assessing the strength of a defendant's specificity contention:

> Had Dayton gone to trial, been convicted, and protested on appeal that this indictment as filed was not sufficiently particularized to inform him of the charge he faced, his conviction would be upheld. Our precedents, however, make plain that in the case of guilty pleas and for Rule 11 purposes a more stringent assurance that the defendant understands the nature of the charges against him is required than where a contested trial is had.

*United States v. Dayton*, 592 F.2d 253, 256 (5th Cir. 1979) (citations omitted).

When assessing the specificity of conspiracy charges, charging documents have been deemed insufficiently specific where they, for example, contain a location and a list of co-conspirators, but

open-ended time frames and no pertinent factual circumstances. *United States v. Cecil*, 608 F.2d 1294, 1296-97 (9th Cir. 1979), *overruled on other grounds by United States v. Tavelman*, 650 F.2d 1133, 1137 (9th Cir. 1981) [noting that overt acts no longer need be alleged]. The indictment in *Cecil* read as follows:

> COUNT I
>
> That beginning on or before July, 1975, and continuing thereafter until on or after October, 1975, within the District of Arizona and elsewhere, LEONARD SILAS JOHNSON, FELIX DAN CECIL, DONALD LEE SCHAFFER, IVA LEE THUNDERCLOUD, LYNN RICHARD JOHNSON, RANDY DARRELL THOMAS, WARREN ARTHUR HAGGARD, KENNY ROBERT JAMES, SILAS BLAINE JOHNSON, TONY JOHNSON, and LIONEL JOHNSON, named herein as defendants and co-conspirators, did knowingly and intentionally conspire and agree together and with each other and with various other persons both known and unknown to the Grand Jury, to commit offenses in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).
>
> It was the object of said conspiracy that large quantities of marihuana, a Schedule I controlled substance, would be imported into the United States of America from Mexico by one or more of the co-conspirators in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).
>
> All in violation of Title 21, United States Code, Section 963.
>
> COUNT II
>
> That beginning on or before July, 1975, and continuing thereafter until on or after October, 1975, in the District of Arizona and elsewhere, LEONARD SILAS JOHNSON, FELIX DAN CECIL, DONALD LEE SCHAFFER, IVA LEE THUNDERCLOUD, LYNN RICHARD JOHNSON, RANDY DARRELL THOMAS, WARREN ARTHUR HAGGARD, KENNY ROBERT JAMES, SILAS BLAINE JOHNSON, TONY JOHNSON, [*1296] and LIONEL JOHNSON, named herein as defendants, did knowingly and intentionally conspire and agree together and with each other and with various other persons both known and unknown to the Grand Jury to commit offenses in violation of Title 21, United States Code, Section 841(a)(1).
>
> It was the object of said conspiracy that one or more of the co-conspirators would possess with intent to distribute and would distribute quantities of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).
>
> All in violation of Title, 21, United States Code, Section 846.

*Id*. at 1295-96. Notably, the language used in the improper *Cecil* indictment does not vary wildly from the language in the information here, as it too describes a criminal conspiracy with a criminal object with a vague time frame and without reference to any specific conduct. Importantly, however,

while the *Cecil* indictment remained insufficient even where it specifically listed the conspirators involved, Mr. Worthing's information lists none of the involved parties.

The information in this case lacks any reference to named co-conspirators, instead alleging that "Beginning as early as September 2010 and continuing until in or about January 2011, the defendant MATTHEW WORTHING and co-conspirators entered into and engaged in a combination and conspiracy to suppress and restrain competition by rigging bids to obtain selected properties." Doc. No. 1, p. 4, ¶2. The information goes on to enumerate the acts Mr. Worthing and his co-conspirators are alleged to have conspired to do, including agreeing not to compete with one another, designating winning bidders, and refraining from bidding. At no point, however, does it describe specific instances of such conduct or agreement to engage therein, nor does it ever identify specific conspirators (instead referring to them as "Various entities and individuals, not made defendants in this Count, [who] participated as conspirators in the offense charged and performed acts and made statements in furtherance thereof" (doc. no. 1, p. 5, ¶5)).

The plea agreement, for its part, provides no clarification, failing to offer any additional factual allegations. In fact, it confounds the matter, at one point referencing multiple "San Francisco County selected properties." Doc. no. 8, 5:9.

This lack of sufficiency in the information presents as a fatal defect that does not fairly apprise Mr. Worthing of the conduct the government is actually alleging. Crucially, the government's choice to charge Mr. Worthing with two separate counts of bid-rigging and two separate counts of mail fraud support this contention. The nature of the dual charges, if they are to be assumed to have any legitimacy, suggests the existence of two, and only two, separate conspiracies. Yet the government has indicated it is alleging Mr. Worthing's involvement in nine different transactions, each of which occurred at a different auction with different individuals present and participating. Of course, the reason the government has not charged Mr. Worthing with nine counts of bid-rigging (or any of the other related defendants with dozens of counts of the same) is because each transaction does not indicate a separate conspiracy, but rather, was simply an act pursuant to a larger scheme. Yet the government *has* charged Mr. Worthing with two separate conspiracies on the basis that one

of his transactions took place in a different county (while refusing to charge defendants with many transactions in multiple counties with multiple bid-rigging counts).

The result is that Mr. Worthing is, like anyone would be, unclear on the specific allegations that are being leveled against him. And while Mr. Worthing is not currently in a trial posture, he does face sentencing without forewarning from the government what specific agreements comprise his offense, and what might instead be offered against him as relevant conduct. If Mr. Worthing engaged in two separate conspiracies, then with whom did he conspire? Were the schemes separate conspiracies involving the same parties, or instances of entirely separate agreements between entirely separate individuals?

Even knowing the specific real estate transactions the government has indicated it is alleging Mr. Worthing's involvement in and having reviewed extensive materials (not from the government) as to various individuals' involvement in the overarching scheme, there remains insufficient information before Mr. Worthing to allow him to honestly deduce what conduct the government is alleging comprises each charge. When that is the case, the charging document lacks requisite specificity. Accordingly, Mr. Worthing must be permitted an opportunity to withdraw his plea and proceed, if at all, on charges that are both succinct *and* specific, carefully alleged so as to provide Mr. Worthing proper notice of the conduct he is asked to answer for.

**E.    Mr. Worthing Should Be Permitted to Withdraw His Plea to Multiplicitous Counts.**

Mr. Worthing has been charged with four felonies: two counts of conspiracy to commit bid rigging (one each in San Mateo and San Francisco Counties) and two counts of conspiracy to commit mail fraud (same). These charges are multiplicitous, and the information is deficient for that reason. Mr. Worthing should be permitted to withdraw his plea as a result of this defect in the charging document to which he pled.

     1.    Mr. Worthing Has Been Charged with Multiple Counts Arising from the Same Conspiracy, Rendering the Charges Multiplicitous.

"'The Double Jeopardy Clause prohibits subdivision of a single criminal conspiracy into multiple violations of one conspiracy statute.'" *United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005) (quoting *United States v. Montgomery*, 150 F.3d 983, 989 (9th Cir. 1998)). "[T]the

government must charge a single conspiracy which contemplates the violation of two different statutes in the same count; otherwise the indictment would be multiplicitous." *United States v. Licciardi*, 30 F.3d 1127, 1131 (9th Cir. 1994), citing *Launius v. United States*, 575 F.2d 770, 771 (9th Cir. 1978); *United States v. Noah*, 475 F.2d 688, 693 (9th Cir.), cert. denied 414 U.S. 1095, 38 L. Ed. 2d 553, 94 S. Ct. 728 (1973).

Where multiple violations of the same statute are alleged, a five-factor test adopted in *Arnold v. United States*, 336 F.2d 347, 350 (9th Cir. 1964) applies to determine whether the charges are multiplicitous and thus improper. *Ibid.* (applying the *Arnold* test to multiple conspiracies alleged under 18 U.S.C. § 371); see also *United States v. Montgomery*, 150 F.3d 983 (9th Cir. 1998) (applying the *Arnold* test to multiple conspiracies alleged under 21 U.S.C. § 846); *United States v. Bendis*, 681 F.2d 561 (9th Cir. 1981) (applying the *Arnold* test to multiple conspiracies alleged under 18 U.S.C. § 371). The *Arnold* test has been summarized as follows:

> To determine whether two conspiracy counts charge the same offense and so place the defendant in double jeopardy, we consider five factors: (1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated.

*United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997).

In the information, the government itself makes abundantly clear that the "conspiracies" alleged in its dual charges are in fact one and the same agreement. As to the conduct at issue, both bid rigging charges use identical language, differing only as to the location of the offense and duration of commission (the mail fraud charges likewise mirror each other in the same fashion). That is, as to *Arnold* factors (3), (4), and (5), the information draws no distinction. The information does allege that the bid rigging and mail fraud committed in San Mateo County continued from September of 2010 through January of 2011, while the bid rigging and mail fraud committed in San Francisco County occurred only in September of 2010. Other than that, the charges are identical.

More important than the language in the information, however, is the actual nature of the conspiracy that the government alleges Mr. Worthing engaged in. Although Mr. Worthing is alleged to have been involved in nine different property transactions (only the first of which was in San

Francisco), he is not charged with nine different conspiracies because all parties agree that there is only one conspiracy at issue: an agreement amongst many participants to conduct business in a certain manner during certain auctions. Although the information does not specify co-conspirators (a defect rendering it deficient for lack of specificity, and one the government should not now be able to manipulate in order to argue appropriate multiplicity of charges), it has always been clear that one overarching bid rigging scheme originated with a handful of "heavies" and trickled down to dozens of other individuals who had varying degrees of participation.

In cases where there was "significant time overlap" between the conspiracy charges and "overlap in membership," and the "nature of the overt acts . . . were similar," double jeopardy has prohibited multiple conspiracy counts, even though "the overlapping members had different roles and the two conspiracies were different in scope." *Stoddard*, *supra*, 111 F.3d at 1454-1456. The fact that, for instance, the charged conspiracies took place in a number of cities and counties (and even states), was not enough to alter the *Stoddard* court's analysis. That Mr. Worthing allegedly participated in a single transaction involving a property in San Francisco, pursuant to the same overall scheme and involving the same co-conspirators with the same means and methods, should not alter the analysis here either.

The way the government has elected to charge each of the defendants involved in the scheme further evidences the fact that there is only one overarching conspiracy at issue. Of the 86 defendants Mr. Worthing is aware have been charged, not one has been charged with multiple conspiracies arising from multiple transactions, despite some defendants being involved in as many as 314 auctions and pay-offs. This confirms that the government does *not* consider each transaction as a separate conspiracy, entered into by only the specific people personally involved in that transaction and only at the specific time of that transaction. Rather, the government views the conduct at issue as one large conspiracy affecting many property transactions and involving many different players at many different times; this view is appropriate given the nature of the bid rigging scheme in these cases. The government's attempt to divide the conspiracy by county in which transactions took place is entirely arbitrary, and likely merely the result of the way in which the U.S. Attorney has divided

its own team of prosecutors. The irrationality of this county-line-division is made abundantly clear by the fact that the government itself has indicated it does not consider different transactions to be different conspiracies.

That the government continues to pursue multiple bid rigging charges against Mr. Worthing as a consequence of his single San Francisco property transaction reveals the arbitrariness of their charging decisions. Discovery provided to defendants in these cases and documents Mr. Worthing has been able to review indicate no fewer than 40 defendants who could have been charged with participation in multiple counties, yet were not so charged. For unknown reasons, the government is adamant that Mr. Worthing be charged twice over for the same conspiracy, simply as a result of a single $3,000 pay-off he is alleged to have received in connection with a San Francisco property transaction (the first the government alleges Mr. Worthing had any involvement in). At the same time, defendants who participated in dozens (and, in some cases, hundreds) of transactions in multiple counties have only been charged with a single count of bid rigging. The factual absurdity of the government's position betrays the illogic of their legal one.

2.     The Improper Multiplicity of the Charges in the Information Support Permitting Mr. Worthing to Withdraw His Plea.

Even considered in isolation, the improper multiplicity of the charges in the information support Mr. Worthing's motion to withdraw his plea, as it establishes an infirmity in the underlying charging document that Mr. Worthing should be permitted an opportunity to challenge in this Court. This is particularly so because forbidding Mr. Worthing his withdrawal will effectively remove from him his ability to raise a multiplicity challenge at any future point, despite his now having retained counsel who have noted the defect in the information. Fed. R. Crim. Pro. 12(b)(2) requires a defendant raise "prior to trial" his challenges to "defects in the indictment," and Rule 12(f) punishes a failure to do so with a waiver to the challenge. Multiplicity challenges fall under the purview of both Rules, and where a defendant fails to raise such a challenge in the district court before trial, he waives his ability to ever do so. *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997). If Mr. Worthing is sentenced on all four counts to which he pled, he will lose his ability to raise a multiplicity challenge on appeal.

His multiplicity challenge now, however, is timely. Mr. Worthing's guilty plea has not mitigated his ability to challenge the illegal information to which he pled. *See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) ("a plea of guilty to a charge does not waive a claim that - judged on its face - the charge is one which the State may not constitutionally prosecute"). Rather, in support of Mr. Worthing's motion to withdraw is the fact that Courts have held that the precise time to challenge an indictment for multiplicity is now, that is, after a guilty plea but before sentencing. *United States v. Ankeny*, 502 F.3d 829, 838 (9th Cir. 2007); *see also United States v. Zalapa*, 509 F.3d 1060, 1063 (9th Cir. 2007) ("Ankeny 'lodged his objection at the appropriate time' by moving to dismiss the multiplicitous counts prior to sentencing."). Mr. Worthing does just that, and the relief he seeks is an opportunity to withdraw his plea in recognition of the defect in the information.

**F.     Mr. Worthing Should Be Permitted to Withdraw His Plea Due to Information That Counsel Has Discovered and Obtained since Mr. Worthing Entered His Plea.**

Throughout much of these proceedings, including prior to and at the time he entered his guilty plea, Mr. Worthing was represented by John L. Williams, Jr., Esq. Mr. Williams handled the plea negotiations and ultimately advised Mr. Worthing to enter his plea on June 20, 2012. Since that date, Mr. Williams has come to learn many significant facts of which he was unaware at the time of Mr. Worthing's plea. The result of these developments is that Mr. Williams can definitively inform this Court that, had he known at the time of the plea what he now knows, he would not have advised Mr. Worthing to enter into a guilty plea. *See* Exhibit A - Declaration of John Williams.

Mr. Williams' statements should be credited as an accurate impression of his advice and the reasoning behind it. Where counsel has attested as to his conduct and the reasons therefor and there is no reason to doubt the validity of those statements, the statements should be taken as true so long as they are not objectively unreasonable. *Hernandez v. Chappell*, No. 11-99013, 2017 U.S. App. LEXIS 26978, at *15 (9th Cir. Dec. 29, 2017). Mr. Williams' concession that he would have advised Mr. Worthing differently if he had more information supports Mr. Worthing's request to withdraw his plea, as it indicates that, had Mr. Worthing been more fully advised, he would not have pled guilty and would not now be faced with sentencing on the current charges. Mr. Williams' statements

provide a fair and just reason for Mr. Worthing to withdraw his plea and move forward with more fully informed counsel.

As Mr. Williams explains in his declaration, the information he had available to him at the time he advised Mr. Worthing to enter a plea was very limited. Although the government assured Mr. Williams that it had significant evidence of Mr. Worthing's conduct, Mr. Williams was given no discovery and was not permitted to review the materials in the government's possession. The government disclosed only its 302 related to Mr. Worthing's initial interview with the FBI. As a result, Mr. Williams now makes clear that the advice he provided in June of 2012 was premised on incomplete information, and the discoveries he has made since that date, had he known them at the time, would have altered his calculus and changed his advice. He should go further - the massive amount of materials he has obtained support potential entrapment, taint, and *Kotteakos* defenses, as well as other meritorious arguments. *See* Exhibit B - Declaration of David J. Cohen, Esq.[5] The information that has been discovered since the plea involves no fewer than six different areas:

### 1.   Government Misconduct

In his declaration, Mr. Williams cites the impact of the revelations that the government had engaged in months of illegal stationary audio recordings outside the San Mateo courthouse. Exhibit A, ¶11. As he explains:

> I had no idea of the government's misconduct at the time I advised Mr. Worthing to enter his plea, and had I known then about the government's illegal actions, I would have demanded discovery from the government of all recordings relating to Mr. Worthing. The government's failure to make such discovery available before the entry of the plea would have affected my decision to recommend an early plea.

*Id.* at ¶14. This is particularly so given the fact that, despite the government's assurance that "The FBI never used information from a stationary recording to identify new subjects in the San Mateo County investigation" (3:14-cr-00534-CRB, doc. no. 164, 6:20), the FBI's stationary recordings

---

[5] Mr. Worthing seeks to file the Declaration of David J. Cohen, Esq., under seal due to the privileged information contained therein and for all of the reasons described in Mr. Worthing's publicly filed administrative motion. Consequently, Mr. Worthing does not directly quote from the document nor relay its contents here. Mr. Worthing asks this Court refer to Mr. Cohen's Declaration where appropriate (and where it is specifically cited) for factual elaboration on the points contained in Mr. Worthing's motion.

1  continued beyond the point of Mr. Worthing's involvement in the bid-rigging scheme and, indeed,

2  beyond the time when the government was actually able to identify who Mr. Worthing was.

3        At the time Mr. Worthing entered his plea, there was no reason to suspect the government

4  had unlawfully recorded hundreds of hours of video and audio on which it was relying in support

5  of its case, nor was there any reason to believe that Mr. Worthing may have initially been identified

6  as a conspirator by means of those unlawful recordings. Mr. Williams acknowledges, as any

7  competent counsel would, that had he had even a hint of such information, he would not have

8  counseled his client to enter a plea, but instead would have vigorously sought discovery related to

9  the government's misconduct in order to identify evidence that must be suppressed and ascertain the

10  extent of the taint of the government's illegal actions.

11        2.   <u>Mail Fraud Dismissals</u>

12        Of greatest importance to Mr. Williams is the recent legal and factual development in which

13  Judge Hamilton ordered the dismissal of mail fraud counts on the basis of the insufficiency of the

14  government's allegations. As Mr. Williams describes, "This development would have changed my

15  advice to Mr. Worthing, who was charged with two mail fraud counts, in 2012." *Id*. at ¶18. This is

16  unsurprising, as Mr. Worthing ultimately pled guilty to (and will stand before this Court for

17  sentencing on) two counts which were illegally charged. Thus, Mr. Williams' adamance that he

18  would not have advised Mr. Worthing to enter a plea to these counts had he known of the

19  fundamental defects contained therein is objectively reasonable, and aligns with the statement any

20  competent counsel would make.

21        Here, Mr. Williams had virtually no Rule 16 or *Brady* discovery at the time he advised Mr.

22  Worthing to accept the government's plea deal. Since Mr. Worthing's plea, both Mr. Williams and

23  current counsel have learned of significant information neither had at the time. As a result, Mr.

24  Williams now tells this Court he would not have proceeded in the manner he did had he known of

25  this information prior to June 20, 2012. The only reasonable conclusion to be drawn is that Mr.

26  Williams did not have a full familiarity with the facts and the law regarding Mr. Worthing's case at

27

28

the time of the plea, and Mr. Worthing should be permitted an opportunity to withdraw that plea accordingly.

### 3. Government Informants

Since Mr. Worthing's plea, Mr. Williams has also obtained materials related to the government's use of informants and the extent to which it continued its investigation in an apparent attempt to entrap new participants. These materials detail the incredible incentives that government informants had to not only continue the scheme (from which they profited), but to entrap new participants such as Mr. Worthing. *See* Exhibit B, ¶24. This new information, which Mr. Williams was not privy to at the time he advised Mr. Worthing to enter his plea, supports an entrapment defense, and thus presents another meritorious argument that Mr. Williams would have been able to pursue had he had more information at the time he advised Mr. Worthing to enter his plea.

### 4. Additional Discovery

Defense investigation has also resulted in the obtaining of a large number of materials that Mr. Williams has been able to review, to varying degrees, since June 20, 2012. The government had produced none of these materials at the time of the plea, and indeed has never disclosed these materials since that date either. Present counsel has been unable to review many of these materials. However, Mr. Williams has described to counsel some of the significance of these materials, particularly given their relation to potential legal arguments, including entrapment and taint. *See* Exhibit B at ¶¶29-33. The recent discovery of these materials and information speaks powerfully to the fact that Mr. Worthing should be permitted to withdraw his plea and return to his earlier posture.

### 5. New Statements

The attached declaration also details other important information, including post-plea statements of Mr. Worthing, John Worthing, and Vince Sakowski. *See* Exhibit B at ¶35-37. These post-plea statements not only provide additional information that Mr. Williams did not have at the time of the plea, but directly revise any fair pre-plea understanding of the case and should certainly have affected the advice Mr. Williams provided to Mr. Worthing in 2012, had this information been known at that time.

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

39

6.    Related Prosecutions

In his post-plea presentation to the government, Mr. Williams highlighted the overcharging he had determined had occurred and the multiplicity of the charges against Mr. Worthing, given the manner in which other defendants had (or had not) been charged. He also attempted to persuade the prosecution to provide Mr. Worthing a minor role adjustment in light of the way in which other defendants' prosecutions had evolved. The government did not entertain Mr. Williams' suggestions. That Mr. Williams brought this information to the government's attention, however, evidences its importance. Although counsel explains in detail additional information in his attached declaration (*see* Exhibit B at ¶38), he notes here simply the acquittal of Victor Marr, as his circumstances as an agent of Michael Marr are in many way similar to those of Mr. Worthing, as well as the 2017 dismissal of the case against Barry Heisner.

7.    The Factual and Legal Discoveries That Have Been Made since the Time of the Plea Support Mr. Worthing's Request to Withdraw His Plea.

Mr. Williams' declaration, which presents objectively reasonable statements regarding his plea advice, should be accepted as accurate, and in and of itself, presents a fair and just reason to permit Mr. Worthing to withdraw his plea. Ultimately, Mr. Williams takes the position that he would have rendered different advice on June 20, 2012, if he had known then all of the information he knows now. Mr. Williams would have advised Mr. Worthing not to enter a plea, and instead would have, at a minimum, insisted that the prosecution proceed by way of indictment so as to entitle Mr. Worthing to full discovery. Mr. Williams specifically would have sought out materials related to the government's illegal stationary recordings, materials that would have been hugely important in determining the extent to which the evidence against Mr. Worthing is tainted by illegality (and which the government still has yet to produce to defense counsel despite its requests).

"A defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted). And "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "[W]here the issue is whether to advise the

Mr. Worthing's Motion to Withdraw His Plea, Pursuant to Fed. R. Crim. P. 11(d)(2)(B)
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

40

client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting *Beckham v. Wainwright*, 639 F.2d262, 267 (5th Cir.1981)). It is implicit in counsel's duty to advise their client fully regarding the decision to enter a plea that counsel have obtained an understanding of the government's case and have some familiarity with the evidence that will be presented. An attorney cannot assist their client in understanding "the law in relation to the facts" if the attorney does not know the facts.

One Oregon District Court specifically approved of counsel's decision to delay proffering his client before having had an opportunity to review the "large amount of discovery" in the case. *United States v. Burchell*, No. 3:11-CR-00524-JO-02, 2014 U.S. Dist. LEXIS 89888, at *8-9 (D. Or. June 30, 2014). As one Montana District Court explained, "[a]n objective standard of reasonableness cannot support an attorney's failure to familiarize himself with the facts of the case he is defending." *United States v. Messer*, 647 F. Supp. 704, 708 (D. Mont. 1986), citing *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). For this reason, a "failure to even review documents of discovery provided by the government [before advising to enter a plea] clearly constitutes deficient performance in defending a criminal case." *Ibid*. *Eggleston*, the case cited by the Montana District Court, itself dealt with a post-sentence ineffective assistance claim, wherein the defendant argued that his counsel had failed to interview witnesses or obtain full discovery before advising him to enter a guilty plea. *Eggleston*, 798 F.2d 374. The Ninth Circuit rejected Eggleston's claim in part because his counsel had been "well informed of the facts and circumstances of the case by his discovery methods," having not only the defendant as a source of information but also "complete access to all of the witness interviews and statements taken by the government, as well as supporting documents and FBI reports." *Id*. at 376.

Here, Mr. Williams had virtually no Rule 16 or Brady discovery at the time he advised Mr. Worthing to accept the government's plea deal. Since Mr. Worthing's plea, both Mr. Williams and current counsel have learned of significant information neither had at the time. As a result, Mr. Williams now tells this Court he would not have proceeded in the manner he did had he known of

1    this information prior to June 20, 2012. The only reasonable conclusion to be drawn is that Mr.

2    Williams did not have a full familiarity with the facts and the law regarding Mr. Worthing's case at

3    the time of the plea, and Mr. Worthing should be permitted an opportunity to withdraw that plea

4    accordingly.

5                                                    **IV.**

6                                             **CONCLUSION**

7            The "generous" standard for a defendant seeking to withdraw his plea before he has been

8    sentenced "must be applied liberally." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir.

9    2008). Here, Mr. Worthing seeks to withdraw his plea for a number of significant reasons, including

10   defects in the mail fraud charges, the government's implicit acknowledgment of those defects, an

11   inadequate Rule 11 plea colloquy, a lack of specificity in the conspiracy allegations, improper

12   multiplicity of counts, and plea counsel's declaration that he would not have advised Mr. Worthing

13   to enter his plea had he known then what he knows now. Each of these contentions is substantial,

14   and each alone provides a fair and just reason to permit Mr. Worthing to withdraw his plea. When

15   taken in conjunction, there is no other conclusion this Court can reasonably reach.

16          In light of the above arguments, Mr. Worthing respectfully requests the Court permit him to

17   withdraw his guilty plea.

18   Dated: January 17, 2018                    Respectfully submitted,

19                                              **BAY AREA CRIMINAL LAWYERS, PC**

20                                              By: /s/ David J. Cohen
                                                DAVID J. COHEN, ESQ.
21
                                                Attorneys for Defendant **Matthew Worthing**
22

23

24

25

26

27

28