# EXHIBIT A

DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306767
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900
Facsimile: (415) 398-7500

Attorneys for Defendant **Matthew Worthing**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 3:12-cr-00300-CRB |
| ) | |
| Plaintiff, ) | |
| ) | **DECLARATION OF JOHN L. WILLIAMS,** |
| v. ) | **JR., ESQ., IN SUPPORT OF MOTION TO** |
| ) | **WITHDRAW PLEA** |
| MATTHEW WORTHING, ) | |
| ) | |
| Defendant. ) | |

I, JOHN L. WILLIAMS, JR., ESQ., declare as follows:

1.   I am an attorney duly licensed to practice law before the United States District Court for the Northern District of California and I am an attorney admitted to the California Bar and authorized to practice in the courts of the State of California. I was previously retained to represent Matthew Worthing, defendant herein, and represented him before this Court from this matter's inception until October 5, 2017. Prior to my substitution out of this case, I had been in active contact with the government in regards to this matter since January 14, 2011.

2.   On January 11, 2011, Mr. Worthing was interviewed in a non-custodial

questioning at his residence by the FBI. According to the FBI 302, during the interview, Mr. Worthing referenced only two specific transactions in which he had been involved: his purchases of 6 Santa Ana Avenue and 231 Gateway Drive. He was not specifically asked about any of the other seven real estate transactions the government would later ascribe to him in its calculation of volume of commerce.

3. On January 12, 2011, Mr. Worthing retained my services in connection with the FBI's investigation. I immediately reached out to the government, and on January 14, 2011, I spoke to Assistant United States Attorney Barbara Nelson, Esq., (as well as Albert Sambat, Esq., and Christina Wheeler, Esq.) via telephone. Ms. Nelson informed me that Mr. Worthing was not a top subject of the investigation, and that there was little I could do to move him from subject to witness.

4. On August 11, 2011, I met with Assistant United States Attorney David Ward, Esq., along with four other members of the Antitrust Division of the Department of Justice. I was not shown the 302 of Mr. Worthing's January 11 interview with the FBI, but Mr. Ward provided a general description of its contents. I was not shown any materials, and was not told anything further about the government's evidence.

5. On March 1, 2012, I again met with Mr. Ward and other members of the Antitrust Division. I was shown Mr. Worthing's 302 as well as a list of 12 property transactions with which the government had connected him. I was also shown auction sign-in sheets for transactions for 282 Holladay Avenue, 81 Highland Avenue, and 653 Skyline Drive. I was shown no evidence related to the nine other transactions the government had listed. I was told the government's evidence included various documents and statements from two different sources, including a detailed ledger of transactions. The government informed me they had considerable additional

evidence, implying the existence of informants and wires.

6. As I understand it, on March 7, 2012, the government interviewed John Worthing and Vince Sakowski, executives at Worthing Capital. On March 19, 2017, I met with Frank Ubhaus, Esq., who represented John Worthing and Mr. Sakowski in connection to this matter, along with John Worthing and Mr. Sakowski. Mr. Ubhaus, Mr. Sakowski, and John Worthing relayed to me information about the debriefs of John Worthing and Mr. Sakowski.

7. On March 27, 2012, I made an oral proffer to the government in exchange for Mr. Worthing's plea. In this proffer, I confirmed Mr. Worthing's involvement in the nine property transactions that would form the basis for his plea.

8. After negotiations with the government, I advised Mr. Worthing to enter a guilty plea to four felony counts. He did so on June 20, 2012.

9. When I advised Mr. Worthing to enter his plea on June 20, 2012, I had received no discovery from the government (apart from the information described above in ¶5). The government had not disclosed to me any other Rule 16 discovery or *Brady* materials, which I now understand would comprise a massive amount of information. The government had not produced to me in any form the ledgers on which it relied, nor any recordings, co-conspirator 302s, informants' non-prosecution agreements, or the debriefs of government witnesses (including informants and undercover officers).

10. Since June 20, 2012, I have learned considerable information about the factual circumstances of Mr. Worthing's alleged offenses, the nature of the dozens of bid-rigging prosecutions pursued in the Northern District of California, and the evidence available to the government. These developments have been significant, altering my understanding of the case, and I identify some of them below.

Declaration of John L. Williams, Jr., Esq., in Support of Motion to Withdraw Plea
*U.S. v. Worthing*
Case No. 3:12-cr-00300-CRB                                3

11. At the time Mr. Worthing entered his plea, I was entirely unaware of the warrantless electronic surveillance program conducted by investigators in connection with the foreclosure auctions at issue in this case. This Court has since become familiar with these illegal recordings through litigation by defendants in related cases. The factual circumstances of this unlawful government conduct have been detailed in this Court's orders suppressing electronic surveillance evidence (3:14-cr-00534-CRB, doc. no. 150) and denying motions to suppress further evidence as fruits of the poisonous tree (3:14-cr-00534-CRB, doc. no. 248), and for the sake of efficiency, I do not repeat them here. I note, however, that illegal government surveillance began on December 22, 2009, long before the beginning of Mr. Worthing's alleged involvement in any bid-rigging scheme, and continued to September 15, 2010 (with Mr. Worthing's first alleged transactions taking place on September 1, 2, and 3, 2010).

12. In its litigation with other defendants, the government has made the blanket statement that it its illegal use of stationary recordings did not result in the identification of any defendants:

> The CHS also identified the subjects of the investigation in San Mateo County, including each of the defendants in this case [*United States v. Giraudo, Grinsell, Cullinane, Appenrodt, and Farag*]. Wynar Decl. ¶ 16. Prior to December 22, 2009, the CHS identified Mr. Giraudo, Mr. Grinsell and Kevin Cullinane in connection with the bid-rigging conduct. Wynar Decl. ¶16 (a), (b), and (c). Abraham Farag and James Appenrodt were identified in January and March 2010, respectively, as participants in the collusive conduct occurring at the San Mateo County auction. Wynar Decl. ¶16 (d) and (e). The FBI never used information from a stationary recording to identify new subjects in the San Mateo County investigation. Wynar Decl. ¶ 15.

3:14-cr-00534-CRB, doc. no. 164, 6:14-20. The government has never specified, however, whether that attestation applies to Mr. Worthing. Rather, my own independent investigation has lead me to believe that, at the time of Mr. Worthing's first San Mateo transaction (that is, the

Declaration of John L. Williams, Jr., Esq., in Support of Motion to Withdraw Plea
*U.S. v. Worthing*
Case No. 3:12-cr-00300-CRB                              4

September 2, 2010 auction for 1050 16th Avenue), the government was not even aware of Mr. Worthing's identity.

13.  I had no idea of the government's misconduct at the time I advised Mr. Worthing to enter his plea, and had I known then about the government's illegal actions, I would have demanded discovery from the government of all recordings relating to Mr. Worthing. The government's failure to make such discovery available before the entry of the plea would have affected my decision to recommend an early plea.

14.  Had I made such a Discovery request I would likely have also requested complete copies of Mr. Rezaian and Mr. Rosenbledt's Ledgers. Those Ledgers would have revealed the charging disparities between the manner in which Mr. Worthing charged and other defendants were charged. Numerous defendants participated in transactions in both San Mateo & San Francisco Counties. Mr. Worthing was charged in 2 separate counts of bid rigging, one for each of the two counties. Mr Worthing participated in a single transaction in San Francisco County. I believe no other defendant was charged with a separate count for a single transaction in a given county and other defendants charged with 2 counts in both counties had multiple transactions in each county. Other defendants had multiple transactions in both counties but were only charged with a single count of bid rigging. Knowledge of these disparities would have affected my decision to recommend an early plea.

15.  Critically, at the time I advised Mr. Worthing to enter his plea, Judge Hamilton had not rendered her decision in *United States v. Galloway*, 2016 U.S. Dist. LEXIS 109639 (N.D. Cal. Aug. 15, 2016). In that decision, Judge Hamilton dismissed the mail fraud charges against four defendants, citing the impropriety of the counts and the government's failure to properly allege them (as well as to incorporate the bid-rigging counts into the mail fraud counts).

Declaration of John L. Williams, Jr., Esq., in Support of Motion to Withdraw Plea
*U.S. v. Worthing*
Case No. 3:12-cr-00300-CRB                5

16. This development would have changed my advice to Mr. Worthing, who was charged with two mail fraud counts, in 2012. At the time of plea negotiations in March of 2012, I took issue with the government's volume of commerce calculation, believing it to be incorrect under the law. However, I did not pursue the topic, as it was of no consequence in light of the higher guidelines range applicable to Mr. Worthing due to his mail fraud counts. Had I been aware of the substantial defect in the mail fraud charges, I would have undoubtedly pursued their dismissal, and would not have advised Mr. Worthing to plead guilty to counts that were improperly charged.

17. Mr. Worthing's present counsel have advised me Mr Worthing wishes to withdraw his presently entered plea. Based on the fact that Mr. Worthing's present plea agreement includes a plea of guilty to the mail fraud counts, I believe he is entitled to withdraw that plea pursuant to FRC 11(d)(2)(B).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on the 17th of January, 2018, in Menlo Park, California.

/s/John L. Williams, Jr.
JOHN L. WILLIAMS, JR., ESQ.
DECLARANT