DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 30676
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:  (415) 398-3900

Attorneys for Defendant **Matthew Worthing**

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>MATTHEW WORTHING,<br><br>          Defendant. | Case No. 3:12-cr-00300-CRB<br><br>**MR. WORTHING'S MOTION TO COMPEL DISCOVERY**<br><br>Date:   February 9, 2018<br>Time:  10:00 a.m.<br>Ctrm.:  6 |

I.

**INTRODUCTION**

On June 20, 2012, Matthew Worthing entered guilty pleas to all four counts of a four count information, all pursuant to a negotiated plea agreement. Doc. no. 9. On October 6, 2017, Mr. Worthing's new attorneys, David J. Cohen, Esq. and Alexander P. Guilmartin, Esq., of Bay Area Criminal Lawyers, P.C., substituted into this case. Doc. no. 48.

On December 8, 2017, the parties appeared before the Court and Mr. Worthing announced his intention to file a motion to withdraw his plea on a number of bases. Doc. no. 55. Mr. Worthing timely filed his motion to withdraw his plea and accompanying exhibits on January 17, 2018. Doc. no. 61. The motion was set for hearing on January 31, 2018, a probation interview was scheduled for February 1, 2018, and sentencing was set for March 21, 2018.

On January 19, 2018, the government filed a stipulation extending the time required for its filing of a response to February 7, 2018, the time for Mr. Worthing's reply to February 21, 2018, and the hearing on the withdrawal motion to March 2, 2018. Doc. no. 62. Mr. Worthing requested that January 31, 2018 remain on calendar for purposes of addressing case status, discovery issues, and a continuance of sentencing. The Court approved the stipulation and ordered the parties to proceed on these dates. Doc. no. 66.

On January 31, 2018, the parties appeared before the Court to address the outstanding discovery issues and the need for a continuance of sentencing. Doc. no. 71. The Court advised that Mr. Worthing need not make any incriminating statements to Probation before a decision was rendered on his motion to withdraw his plea. The Court noted that if Mr. Worthing's plea was withdrawn, then his request for a continuance of sentencing would become moot; if, on the other hand, Mr. Worthing's motion to withdraw his plea was denied, the Court and the defense would then discuss the additional time needed to prepare for sentencing. In regards to the discovery disputes, the Court and parties agreed to an expeditious motions hearing on the issue on February 7, 2018.[1]

On February 1, 2018, the Court ordered Mr. Worthing to file his motion to compel discovery by the end of February 2, 2018. Doc. no. 72. It also ordered the government to file a response by the end of February 5, 2018. It prohibited the filing of a reply from Mr. Worthing. On February 2, 2018, the Court ordered the hearing date be continued to February 9, 2018. Doc. no. 73.

Mr. Worthing now brings this motion to compel discovery, pursuant to the Court's order.[2]

---

[1] At the status conference, the government raised its request to have the Court strike a sealed filing submitted by David J. Cohen, Esq., on behalf of Mr. Worthing in support of his motion to withdraw his plea. The Court indicated that the issue could also be addressed at the motions hearing. Because the Court did not request any briefing on the issue, Mr. Worthing does not address it in the present motion. He may still elect to provide supplemental briefing or authorities on the issue of the sealed filing for the Court's consideration prior to the February 9 hearing.

[2] Mr. Worthing incorporates by reference his motion to withdraw his plea (doc. no. 61), which forms the basis for some of the arguments contained herein.

## II.

## **DISCOVERY HISTORY**

On December 27, 2017, Mr. Worthing formally requested Rule 16 and *Brady* discovery from the government, which indicated its willingness to meet and confer regarding specific discovery materials on January 2, 2018. On January 16, 2018, Mr. Worthing made a specific, written discovery request to the government seeking a number of materials in their possession, including specifically materials related to the government's illegal, warrantless recordings. *See* Exhibit A - Discovery Request. On January 19, 2018, the government responded to Mr. Worthing's request, stating its position that Mr. Worthing was entitled to no Rule 16 discovery while also offering to provide discovery related to Mr. Worthing's motion to withdraw his plea. When Mr. Worthing explained that all requested discovery was pertinent to his motion, the government agreed to disclose "the audio and video recordings that the government identified as capturing Mr. Worthing, or otherwise pertaining to Mr. Worthing," as well as "302s related to the recordings that refer to a statement made by Mr. Worthing."

On January 31, 2018, the government turned over four CDs containing approximately 47 hours and 29 minutes of audio and video recordings. The CDs included recordings of real estate auctions spanning from April 13, 2010 to January 6, 2011[3], as well as four brief outgoing calls to an unidentified individual. The CDs did not contain any 302s related to any of the recordings, nor any identifying information regarding the recordings. Prior to the January 31, 2018 disclosure, the only discovery the government had ever produced to Mr. Worthing were 302s related to his initial interview with the FBI and his post-plea debrief with the government, as well as a spreadsheet of transactions that formed the basis for the volume of commerce stipulated in the plea agreement.

In effect, there are four "universes" of discovery at issue, even smaller in scope than the last.

---

[3] An additional 71 minutes of audio recording appears to relate to a January 11, 2011 transaction. However, the year of this recording is not specifically identified as it is in others.

### A.     Materials in the Government's Possession

The largest group of materials is, of course, those in the government's possession. This includes all materials collected by the government in connection with its investigation and prosecution of at least 85 defendants across the Northern and Eastern Districts of California. This would include both the materials to which some of those defendants are entitled, and the materials to which no defendant is entitled. Only the government knows the true scope of these materials.

### B.     Materials Mr. Worthing Has Requested be Produced

This group of materials, listed in full in Mr. Worthing's discovery request (*see* Exhibit A), refers to the discovery to which Mr. Worthing is constitutionally and statutorily entitled, including materials relevant to his motion to withdraw his plea and his sentencing. It is this group of materials that Mr. Worthing seeks to compel the disclosure of in the present motion. These materials include the stationary audio and video recordings the government illegally obtained, the body wire recordings obtained from undercover agents and informants, impeachment materials for government informants, materials related to the transactions to which Mr. Worthing is allegedly connected, and 302s related to all of the above subjects.

### C.     Materials Mr. Worthing or Counsel Have Reviewed (or Been Informed of the Contents of) from Other Sources

This group of materials, smaller in scope than that which Mr. Worthing has requested disclosure of, includes documents and records that Mr. Worthing or his counsel have reviewed or been told of by sources other than the government. Mr. Worthing has been able to identify some of these materials by way of their public disclosure in other, related prosecutions. For example, On September 3, 2015, the government admitted the execution of these illegal recordings, with which this Court has become familiar through litigation by defendants in related cases. The factual circumstances of this unlawful government conduct were detailed in this Court's orders suppressing electronic surveillance evidence (3:14-cr-00534-CRB, doc. no. 150) and denying motions to suppress further evidence as fruits of the poisonous tree (3:14-cr-00534-CRB, doc. no. 248). The illegal government surveillance began on December 22, 2009, long before the beginning of Mr. Worthing's

alleged involvement in any bid-rigging scheme, and continued to September 15, 2010, beyond the time that Mr. Worthing allegedly became involved in the scheme (on September 1, 2010).

Mr. Worthing, through counsel, has also had some opportunity to review various additional materials. For example, Mr. Worthing's previous counsel, Mr. Williams, learned of the existence of (and some of the contents of) two ledgers (alternatively referred to by the government at times as "pay-owe sheets") from individuals involved in the overarching bid-rigging conspiracy that detail many of the alleged transactions which the government has investigated. As Mr. Williams explained in his declaration in support of Mr. Worthing's motion to withdraw his plea, these ledgers indicate prosecutorial disparities of which Mr. Worthing was not aware at the time he pled. Mr. Worthing is unable to fully describe this universe of materials in a public filing due to privileges and protections prohibiting its public disclosure. *See* doc. no. 63.

**D.   Materials Produced by the Government**

Finally, there is the discovery the government has actually disclosed to date, which includes only: (1) 302s of Mr. Worthing's initial FBI interview and post-plea debrief with the government, (2) a spreadsheet showing Mr. Worthing's alleged transactions comprising the stipulated volume of commerce, and (3) the 47:29 audio and video recordings identified above.[4] Unsurprisingly, this universe of discovery consists of the fewest materials.

**III.**

**THE GOVERNMENT'S DISCOVERY OBLIGATIONS DO NOT CEASE AT THE ENTRANCE OF A GUILTY PLEA.**

"In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States*, 384 U.S. 855, 873 (1966). With this in mind, the federal legislature has crafted the discovery disclosure requirements of Federal Rule of Criminal Procedure 16, and the courts have crafted a constitutional

---

[4] Mr. Worthing has been unable to conduct a thorough review of these lengthy recordings, which he only received on January 31, 2018. However, the vast majority appear to be body wire recordings from undercover agents (rather than stationary recordings). The earliest of the recording produced appears to be from April 13, 2010, four months after the government began its illegal surveillance methods.

right to exculpatory materials under *Brady v. Maryland*, 373 U.S. 83 (1963). The remedy for an intentional *Brady* violation is dismissal of the indictment. *See United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993); *Brown v. Borg*, 951 F.2d 1011 (9th Cir. 1991); *United States v. Chen*, 605 F.2d 433, 435 (9th Cir. 1979).

     A defendant can explicitly waive various discovery rights, including *Brady* and his right to discovery pursuant to Rule 16, in a plea agreement with the government. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). By logical extension, in the absence of an explicit waiver, the plea itself does not function as one, and the government's discovery obligations do not terminate by virtue of the plea agreement being entered into. Mr. Worthing's plea agreement contained no waiver of any discovery rights. Consequently, he has waived none of his discovery rights, and his entry of a plea has not eliminated any of the discovery rights he had prior to his plea.

     The Ninth Circuit has repeatedly recognized that the government's *Brady* obligations continue beyond the point of a guilty plea. *See, e.g., United States v. Plunk*, 153 F.3d 1011 (1998) (recognizing *Brady*'s application to undisclosed impeachment information in the possession of a cooperating witness' attorney); *United States v. Mikaelian*, 168 F.3d 380 (1999). The Ninth Circuit has also specifically recognized that "a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *see also Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) (applying *Brady* in guilty plea context); *United States v. Nagra*, 147 F.3d 875, 882 (9th Cir. 1998) (same); *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (applying *Brady* to a motion to a motion to withdraw a plea); *White v. United States*, 858 F.2d 416, 422 (8th Cir. 1988); *Miller v. Angliker*, 848 F.2d 1312, 1319-20 (2d Cir. 1988); *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985).

     At the January 31, 2018 hearing, the government posited that Mr. Worthing's discovery request was pursuant solely to Fed. R. Crim P. 16, and was invalid for that reason. This claim was incorrect, as Mr. Worthing has repeatedly cited the government's *Brady* obligations in seeking discovery.

Mr. Worthing also notes that it is not actually clear that Rule 16's discovery requirements could never apply at this stage of the proceedings, coming as they do after the government filed an information charging Mr. Worthing with criminal offenses. Mr. Worthing has identified no Ninth Circuit authority completely rejecting the application of Rule 16's requirements to post-plea proceedings. In fact, the Supreme Court's holding in *Ruiz* that the parties may choose to waive Rule 16 discovery in a plea agreement suggest that, in the absence of such a waiver, Rule 16 has applicability both before and after the plea. Mr. Worthing also notes that some of the materials he has requested include Mr. Worthing's recorded statements under Rule 16(a)(1)(B) which, notably, must be disclosed with none of Rule 16(a)(1)(E)'s requirements of materiality to a defense or use in the government's case-in-chief at trial.

### IV.

### THE MATERIALS MR. WORTHING HAS REQUESTED ARE RELEVANT TO HIS MOTION TO WITHDRAW HIS PLEA.

Many of the materials Mr. Worthing has requested from the government are explicitly necessary for full adjudication of his motion to withdraw his plea. In his motion, Mr. Worthing asserted seven bases for withdrawal, including the contention that the materials defense counsel has obtained or learned of since the plea support withdrawal. Mr. Worthing's argument is premised on materials the government has not disclosed, and thus that Mr. Worthing has never been able to fully review and analyze. While Mr. Worthing has obtained some very limited knowledge of the contents of some select portions of these materials (through no assistance of the government), the government's refusal to turn over the materials to which Mr. Worthing is entitled has left him hamstrung in his ability to fully present the issue to this Court.

Mr. Worthing has a constitutional right to the materials he has requested for purposes of his motion. *Brady* entitles a defendant, for example, to materials that "might have disclosed an entrapment." *Roviaro v. United States*, 353 U.S. 53, 64 (1957). So too does *Brady* extend to materials relevant to the issue of suppression of government evidence. *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) ["the due process principles announced in Brady and its progeny must

be applied to a suppression hearing"]; *see also Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990). Even the United States' Attorneys' Manual requires disclosure of evidence that "might have a significant bearing on the admissibility of prosecution evidence." U.S.A.M. §9-5.001(C)(2). Perhaps for these very reasons, the government in this case has indicated its willingness to disclose discovery that "will assist Mr. Worthing with his motion to withdraw from his plea agreement," and has provided some limited discovery pursuant to that concession.

Mr. Worthing has specifically raised claims involving entrapment and taint in his motion to withdraw his plea, arguing that counsel should have obtained these materials before advising a guilty plea and that the information Mr. Worthing has obtained since pleading supports the contention that these arguments provide a fair and just reason for withdrawal. For example, Mr. Worthing has asked the government to turn over materials in its possession related to its hundreds of hours of unlawful, warrantless stationary audio and video recordings outside the San Mateo Courthouse. This illegal government conduct has been the subject of litigation by other defendants before this Court, resulting in this Court suppressing evidence related to the recordings (3:14-cr-00534-CRB, doc. no. 150) and directly addressing taint arguments for individual defendants (3:14-cr-00534-CRB, doc. no. 248). As to Mr. Worthing, these materials bear directly on the question of the breadth of any taint arguments, a question with direct bearing on Mr. Worthing's motion to withdraw his plea. From the limited knowledge Mr. Worthing has been able to obtain (without the government's cooperation in discovery production), it appears that, at the time of Mr. Worthing's first San Mateo transaction (that is, the September 2, 2010 auction for 1050 16th Avenue), the government had not identified Mr. Worthing's involvement and was not even initially aware of Mr. Worthing's identity. It appears well within the realm of possibility that without the illegal recordings, the government would not have identified Mr. Worthing's involvement and would not have made him a subject of its investigation. This gives rise to the strong possibility of a taint argument resulting in the suppression of all evidence against Mr. Worthing.

Mr. Worthing has also learned some information about the government's use of informants in its investigation of the case, which is of particular relevance to an entrapment argument for

purposes of withdrawal of plea. These materials indicate that the government's informants were actively incentivized to promote the bid-rigging scheme and lull in additional participants, well beyond the point where the government had sufficient evidence to make its arrests (and before Mr. Worthing allegedly became involved). This information also lends support to arguments regarding outrageous governmental misconduct and *Kotteakos*. Thus, Mr. Worthing needs full impeachment and informant-related discovery in order to develop these arguments for his motion to withdraw his plea.

In addition, Mr. Worthing has learned of information supportive of arguments regarding overcharging, multiplicity, and lack of specificity, all of which he raises in his motion to withdraw his plea. The government has turned over none of the ledgers, wire recordings, auction sign-in sheets, informant debriefs, and other materials necessary to substantiate these challenges to the plea (and underlying information).

The government has not provided Mr. Worthing with all of the clearly illegal recordings in its possession, nor any materials supportive of the entrapment, outrageous governmental misconduct, and *Kotteakos* arguments that Mr. Worthing has raised in his motion. The result is that Mr. Worthing has not had a full and proper opportunity to analyze these materials and put before this Court the full merits of his position. These arguments are at the crux of one of the issues Mr. Worthing raises in his motion to withdraw his plea, and Mr. Worthing is entitled to all of these materials for purposes of that motion.

### V.

### THE MATERIALS MR. WORTHING HAS REQUESTED ARE RELEVANT TO SENTENCING.

Mr. Worthing has made his discovery request not only in order to obtain materials relevant to his motion to withdraw his plea, but also so that he may review the materials relevant to his sentencing. The government's *Brady* discovery obligations extend to materials that are "material either to guilt *or to punishment*." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (emphasis added). *Brady* itself was a sentencing case. *See United States v. Feeney*, 501 F.Supp. 1324, 1334 (D.Colo.

1980) ("[i]t is deserving of comment that *Brady v. Maryland* dealt only with punishment"). Various Circuits have vacated sentences on the basis of the government's failure to turn over materials relevant to sentencing. *See*, *e.g.*, *United States v. Weintraub*, 871 F.2d 1257 (5th Cir. 1989) (vacating for government's withholding of impeachment evidence relevant to drug quantity); *United States v. Severson*, 3 F.3d 1005 (7th Cir. 1993) (vacating and remanding for reconsideration of rulings on obstruction of justice and acceptance of responsibility enhancements due to *Brady* violation). As one Central District Court has described, materials relating "to the credibility of witnesses on whose testimony the probation department and the government rely in recommending a given sentence and/or on whose testimony aspects of the advisory guideline calculation are based" must be turned over to the defense prior to sentencing pursuant to *Brady* and *Giglio*. *United States v. Valenzuela*, No. CR 07-00011 MMM, 2009 U.S. Dist. LEXIS 64070, at *12 (C.D. Cal. July 14, 2009).

*Brady* extends to the materials Mr. Worthing has requested from the government here, particularly in light of his motion to withdraw his plea. Notably, in addition to the *Brady* entitlement to entrapment materials recognized in *Roviaro*, the Ninth Circuit has also recognized the availability of downward departures at sentencing for "imperfect entrapment." *United States v. McClelland*, 72 F.3d 717, 725 (9th Cir. 1995). *Brady*'s application to sentencing arguments would naturally extend to materials related to an "imperfect entrapment" sentencing argument as well.

The government's related prosecutions of other participants in the overarching bid-rigging scheme are also relevant to Mr. Worthing's sentencing, and he is entitled to materials related to those prosecutions. The government, for example, has neglected to charge many multi-county participants with more than one bid-rigging count (while charging Mr. Worthing with two counts on the basis of a single alleged transaction in San Francisco County). Since Mr. Worthing's plea, the government has also dismissed its case against Barry Heisner, despite Mr. Heisner's stipulated volume of commerce of $11,000,000. Information about these prosecutions, as a few examples out of many, matter a great deal to any sentencing disparity argument Mr. Worthing may make to this Court.

In addition, Mr. Worthing is entitled to all materials that Probation is currently relying on in its preparation of a presentence report. Under Criminal Local Rule 32-3(b) and (c), the government

is required to disclose to the defense all materials provided to Probation. Mr. Worthing also has a constitutional right to *Brady* materials contained in a presentence report, including "material in a probation file that bears on the credibility of a significant witness." *United States v. Alvarez*, 358 F.3d 1194, 1207 (9th Cir. 2004). The Court has enlisted the services of three probation officers who are together preparing presentence reports for dozens of defendants. Although Mr. Worthing has received 302s related to his FBI interview and post-plea debrief, he has received no other materials from either the government or Probation.

In his February 1, 2018 probation interview, U.S. Probation indicated that it had received 320s relevant to other defendants' participation in the overarching bid-rigging scheme, but would not disclose the degree to which it intended to rely on those materials in preparing Mr. Worthing's presentence report. In all likelihood, the prosecution has disclosed to Probation a large amount of material related to the bid-rigging scheme at issue in this case, including materials specifically pertaining to each of the many defendants involved in the scheme. None of these materials, on which Probation will inevitably rely in authoring its presentence report, have been turned over to Mr. Worthing, despite the government not having denied that it disclosed these materials to Probation to assist them in their efforts.

The materials Mr. Worthing has requested from the government bear directly on his sentencing hearing, at which he should be permitted to present arguments regarding, for example, imperfect entrapment. The government insists on opposing any continuance of sentencing, yet has refused to turn over the materials Mr. Worthing requires to prepare for that sentencing. The government is obligated to disclose the requested materials, and Mr. Worthing continues to seek their disclosure accordingly.

## VI.

## **CONCLUSION**

Mr. Worthing's discovery request is not a mere fishing expedition, but a particular effort to obtain those materials he needs to properly argue his motion to withdraw his plea and prepare for his March 21, 2018 sentencing. Notably, if this Court denies Mr. Worthing's discovery motion, it

bolsters his motion to withdraw his plea, as it would confirm that the only means by which Mr. Worthing had to obtain the materials necessary to analyze the wisdom of a plea was to proceed by way of indictment. If, on the other hand, the Court does as Mr. Worthing requests and grants his motion to compel the government's disclosure of necessary discovery, full and proper adjudication of Mr. Worthing's motion to withdraw his plea will be possible.

Dated: February 2, 2018                Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

By: /s/David J. Cohen
DAVID J. COHEN, ESQ.

Attorneys for Defendant **Matthew Worthing**