1   ANDREW J. MAST (CSBN 284070)
    GABRIEL R. MARTINEZ (CSBN 275142)
2   U.S. Department of Justice
    Antitrust Division
3   450 Golden Gate Avenue
    Box 36046, Room 10-0101
4   San Francisco, CA 94102
    Andrew.Mast@usdoj.gov
5   Telephone: (415) 934-5300
6
7   Attorneys for the United States
8
9                    UNITED STATES DISTRICT COURT
10                   NORTHERN DISTRICT OF CALIFORNIA
11                      SAN FRANCISCO DIVISION
12

13   UNITED STATES OF AMERICA            )   No. CR 12-00300 CRB
                                         )
14              v.                       )
                                         )   **UNITED STATES' RESPONSE TO**
15   MATTHEW WORTHING,                   )   **DEFENDANT'S MOTION TO**
                                         )   **WITHDRAW HIS PLEA**
16              Defendant.               )
                                         )   Hearing Date: March 2, 2018
17                                       )   Time: 11:00 a.m.
                                         )   Courtroom 6
18                                       )
19   ────────────────────────────────
20
21
22
23
24
25
26
27
28

No. CR 12-00300 CRB
U.S.' RESP. TO DEF'S. MOT. TO WITHDRAW HIS PLEA

1

2

## TABLE OF CONTENTS

I.     INTRODUCTION ..............................................................................................1

II.    BACKGROUND ..............................................................................................1

III.   ARGUMENT ....................................................................................................3

    A.  Defendant's Motion To Withdraw His Plea Is Not Timely And Shows Merely A
        Change Of Heart ........................................................................................4

        1.    Defendant has not learned any new information that justifies the length
             of delay in filing his motion to withdraw.......................................4

        2.    The timing and circumstances of defendant's motion show defendant
             is seeking withdrawal of his plea for improper purposes. ...................6

    B.  Defendant Was Represented By Competent Counsel And Received Substantial
        Benefits From His Plea Agreement ............................................................7

    C.  The Government And This Court Would Be Prejudiced If Defendant Is Permitted
        To Withdraw His Plea..............................................................................10

    D.  Defendant's Proffered Reasons For Withdrawing His Guilty Plea Do Not Satisfy
        His Burden of Showing A Fair And Just Reason For Withdrawal.....................12

        1.    The mail fraud charges are not structurally deficient and do not create
             a fair and just reason for withdrawing defendant's plea......................12

        2.    Defendant's Rule 11 colloquy does not provide a fair and just reason
             for withdrawal ............................................................................15

        3.    The information is not multiplicitous ..............................................21

        4.    Defendant's other purported defenses fail to establish a fair and just
             reason for withdrawal ..................................................................24

IV.    CONCLUSION.............................................................................................25

# <u>TABLE OF AUTHORITIES</u>

Cases

*Arnold v. United States,*
   336 F.2d 347 (9th Cir. 1964) ........................................................................... 23

*Ball v. United States,*
   470 U.S. 856 (1985) ......................................................................................... 23

*Bradshaw v. Stumpf,*
   545 U.S. 175 (2005) .................................................................................. 16, 24

*Eggleston v. United States,*
   798 F.2d 374 (9th Cir. 1986) ............................................................................. 7

*Hamling v. United States,*
   418 U.S. 87 (1974) ........................................................................................... 12

*INS v. St. Cyr,*
   533 U.S. 289 (2001) ........................................................................................... 6

*Tollett v. Henderson,*
   411 U.S. 267 (1973) .................................................................................... 8, 24

*United States v. Alvarez,*
   835 F.3d 1180 (9th Cir. 2016) ......................................................................... 20

*United States v. Arellano-Gallegos,*
   387 F.3d 794 (9th Cir. 2004) ........................................................................... 20

*United States v. Avila,*
   733 F.3d, 1259 (10th Cir. 2013) ...................................................................... 21

*United States v. Banks,*
   467 F. App'x 468 (6th Cir. 2012) ..................................................................... 18

*United States v. Barker,*
   514 F.2d 208 (D.C. Cir. 1975) ........................................................................... 4

*United States v. Baty,*
   980 F.2d 977 (5th Cir. 1992) ........................................................................... 21

*United States v. Bethany,*
   569 F. App'x 447 (7th Cir. 2014) ..................................................................... 18

*United States v. Bohonus,*
   628 F.2d 1167 (9th Cir. 1980) ......................................................................... 12

*United States v. Bonilla,*
   *579 F.3d 1233 (11th Cir. 2009)* ....................................................................... 23

*United States v. Broce,*
    488 U.S. 563 (1989) .................................................................................... 22, 24, 25

*United States v. Bushert,*
    997 F.2d 1343 (11th Cir. 1993) ................................................................... 21

*United States v. Chavez-Reyes,*
    621 Fed. Appx. 508 (9th Cir. 2015) ............................................................. 4, 9

*United States v. Cochrane,*
    985 F.2d 1027 (9th Cir. 1993) ..................................................................... 23

*United States v. Dominguez-Benitez,*
    542 U.S. 74 (2004) ....................................................................................... 16

*United States v. Doyle,*
    981 F.2d 591 (1st Cir. 1992) ........................................................................ 5

*United States v. Durham,*
    178 F.3d 796 (6th Cir. 1999) ........................................................................ 5

*United States v. Ensminger,*
    567 F.3d586 (9th Cir. 2009) ........................................................................ 4, 6, 14

*United States v. Garcia,*
    401 F.3d 1008 (9th Cir. 2005) ..................................................................... 6

*United States v. Holden,*
    806 F.3d 1227 (9th Cir. 2015) ..................................................................... 12

*United States v. Hyde,*
    520 U.S. 670 (1997) ..................................................................................... 3

*United States v. James,*
    980 F.2d 1314 (9th Cir. 1992) ..................................................................... 12, 14

*United States v. Jeronimo,*
    398 F.3d 1149 (9th Cir. 2005) ..................................................................... 21

*United States v. Kendall,*
    665 F.2d 126 (7th Cir. 1981) ....................................................................... 14

*United States v. Klinger,*
    128 F.3d 705 (9th Cir. 1997) ....................................................................... 22

*United States v. Laws,*
    420 F. App'x 611 (7th Cir. 2011) ................................................................ 20

*United States v. Lynn,*
    636 F.3d 1127 (9th Cir. 2011) ..................................................................... 23

*United States v. Ma,*
    290 F.3d 1002 (9th Cir. 2002) ..................................................................... 16

*United States v. Markee*,
   425 F.2d 1043 (9th Cir. 1970) .................................................................. 14

*United States v. Martinez*,
   518 F. App'x 559 (9th Cir. 2013) .............................................................. 20

*United States v. Mayweather*,
   634 F.3d 498 (9th Cir. 2010) ...................................................................... 4

*United States v. McTiernan*,
   546 F.3d 1160 (9th Cir. 2008) ................................................................. 7, 9

*United States v. Morales-Bravo*,
   650 Fed. Appx. 530 (9th Cir. 2016) ......................................................... 4, 9

*United States v. Morales-Escobedo*,
   367 F. App'x 804 (9th Cir. 2010) .............................................................. 20

*United States v. Navarro-Flores*,
   628 F.2d 1178 (9th Cir. 1980) ................................................................. 5, 7

*United States v. Nostratis*,
   321 F.3d 1206 (9th Cir. 2003) .................................................................... 5

*United States v. Odedo*,
   154 F.3d 937 (9th Cir. 1998) ..................................................................... 16

*United States v. Ortega-Ascanio*,
   376 F.3d 879 (9th Cir. 2004) .................................................................... 4, 6

*United States v. Perez-Cisneros*,
   461 F. App'x 564 (9th Cir. 2011) .............................................................. 19

*United States v. Pugh*,
   668 F. App'x 273 (9th Cir. 2016) .............................................................. 20

*United States v. Richardson*,
   588 F.2d 1235 (9th Cir. 1978) .................................................................. 23

*United States v. Rios-Ortiz*,
   830 F.2d 1067 (9th Cir. 1987) ............................................................... 4, 10

*United States v. Santiago*,
   229 F.3d 313 (1st Cir. 2000) ....................................................................... 5

*United States v. Santos*,
   481 F. App'x 346 (9th Cir. 2012) .............................................................. 20

*United States v. Schmidt*,
   373 F.3d 100 (2d Cir. 2004) ........................................................................ 4

*United States v. Sgarlat*,
   705 F.Supp.2d 347 (D.N.J. 2010) ............................................................... 7

*United States v. Showalter,*
   569 F.3d 1150 (9th Cir. 2009) ............................................................. 4, 7, 24

*United States v. Sims,*
   822 F.Supp. 1308 (N.D. Ill. 1993) ........................................................... 7

*United States v. Stoddard,*
   111 F.3d 1450 (9th Cir. 1997) ............................................................... 22

*United States v. Urbina-Robles,*
   817 F.3d 838 (1st Cir. 2016) ................................................................. 20

*United States v. Valdez,*
   585 F. App'x 656 (9th Cir. 2014) ........................................................... 20

*United States v. Vasquez-Valasco,*
   471 F.2d 294 (9th Cir. 1973) ............................................................. 4, 10

*United States v. Villalobos,*
   333 F.3d (9th Cir. 2003) ....................................................................... 15

*United States v. Vonn,*
   535 U.S. 55 (2002) ............................................................................... 16

*United States v. Watson,*
   582 F.3d 974 (9th Cir. 2009) ................................................................. 21

*United States v. Wei Lin,*
   2013 WL 12170305 (D. N. Mar. Is. Nov. 13, 2013) ................................. 8

*United States v. Wessells,*
   936 F.2d 165 (4th Cir. 1991) ................................................................. 21

*United States v. Woods,*
   335 F.3d 993 (9th Cir. 2003) ................................................................. 14

*United States v. Yamashiro,*
   788 F.3d 1231 (9th Cir. 2015) ................................................................. 5

Statutes

15 U.S.C. § 1 ............................................................................................. 2
18 U.S.C. § 1341 ..................................................................................... 12
18 U.S.C. § 1349 ................................................................................. 12, 13

Rules

Fed. R. Crim. P. 7 ................................................................................... 12
Fed. R. Crim. P. 11 ......................................................................... *passim*
Fed. R. Crim. P. 12 ............................................................................ 5, 22
Fed. R. Crim. P. 32 .................................................................... 4, 9, 10
U.S.S.G. § 2B1.1 ................................................................................ 8, 9
U.S.S.G. 5K1.1 ....................................................................................... 9

1

## I.   <u>INTRODUCTION</u>

2   Defendant Matthew Worthing's request to withdraw a guilty the plea he freely entered five-and-

3   a-half years ago should be rejected.  The timing and circumstances of the request demonstrate that the

4   reasons he now proffers are mere pretexts and that the motion is motivated by a change of heart or,

5   perhaps, recognition that the government may seek a custodial sentence.  But neither of these reasons is

6   a permissible basis for withdrawal of a guilty plea.  Moreover, defendant's representation by competent

7   counsel who did not—as defendant now claims—give inadequate or ineffective advice in connection

8   with the plea agreement and guilty plea, the lack of a claim of actual innocence, and the prejudice to the

9   government and the court from withdrawal at this late date all weigh heavily against permitting the

10   defendant to withdraw his guilty plea.  In any event, defendant's purported reasons for withdrawing his

11   guilty plea do not provide a fair and just reason for permitting the withdrawal.  His claim that his fraud

12   charges are inadequately pleaded lacks merit.  His arguments concerning his Rule 11 colloquy do not

13   establish that the plea was not entered knowingly and voluntarily.  And his claims that he has a defense

14   based on multiplicity, entrapment, or supposedly tainted evidence are untimely, lack merit, and

15   otherwise do not provide a basis to withdraw his plea.

16   Accordingly, as explained more fully below, defendant's motion to withdraw his plea should be

17   denied.

18

## II.   <u>BACKGROUND</u>

19   In October 2009, the government learned of extensive bid-rigging conduct occurring at public

20   real estate foreclosure auctions in San Francisco and San Mateo counties.  *United States v. Giraudo, et*

21   *al.*, 14-CR-534 CRB, Dkt. 236 at 3.  In January 2011, after an extended covert investigation, the

22   government executed search warrants, issued dozens of grand jury subpoenas and interviewed dozens of

23   subjects.  *Id.* at 10.  Among the subjects interviewed was Mr. Worthing, who voluntarily submitted to an

24   interview and confessed to participating in bid-rigging conduct at the auctions.  Dkt. 61, Exhibit A,

25   Declaration of John L. Williams ("Williams Decl.") ¶ 2.  His interview was memorialized in an FBI 302

26   report.  Declaration of Andrew J. Mast, Exhibit A (1/11/11 302, NDRE-FBI-I-000245).

27   Shortly thereafter, defendant retained counsel, John Williams, an experienced white collar

28   defense attorney.[1]  Williams Decl. ¶ 3.  According to Mr. Williams, between August 2011 and March

---

[1] According to the California State Bar Association website, after graduating from Stanford University

2012, the government described to counsel the contents of the FBI 302 report documenting his client's January 2011 interview, as well as the statements from multiple sources who implicated him. *See id.* at ¶¶ 4-5. The government also indicated that it possessed a detailed ledger documenting unlawful agreements at the auction and shared a list of 12 rigged properties connected to defendant. *Id.* at ¶ 5. In addition to the specific evidence the government shared with counsel, the government implied it had a substantial amount of additional evidence inculpating defendant, including recordings. *Id.*

Upon the advice of counsel, defendant entered a plea agreement, agreeing to cooperate with the government's investigation and to plead guilty to two counts of conspiracy to rig bids in violation of 15 U.S.C. § 1 and two counts of conspiracy to commit mail fraud in violation of 18 U.S.C. 1349. *Id.* at ¶ 8; Plea Agreement (Dkt. 8). On June 20, 2012, he appeared before this Court and pleaded guilty, acknowledging that he committed the charged offenses. *See* Dkt. 9. At his plea hearing, defendant indicated that he had a bachelor's degree and stated under oath that he discussed the charges against him and plea agreement with his counsel and that he was fully satisfied with the representation of his attorney. Worthing Plea Hr'g, June 20, 2012, Tr. 3:9-4:11. He indicated that he read and understood the terms of his plea agreement and that the factual basis for the offenses in the plea agreement was true and correct. Worthing Plea Hr'g, June 20, 2012, Tr. 4:-10; 8:22-7. This Court found the defendant to be fully competent and aware of the nature of the charges against him, and that the defendant entered his guilty pleas were knowing and voluntary. Worthing Plea Hr'g, June 20, 2012, Tr. 9:15-22.

Pursuant to his cooperation obligation, on July 16, 2012, defendant was interviewed by the government while accompanied by his attorney. Declaration of Andrew J. Mast, Exhibit B. (7/16/2012 302 NDRE-FBI-I-0014330). During this interview, defendant described the unlawful conduct he engaged in at the foreclosure auctions. *Id.* As the government pursued a case against other individuals involved, defendant and the government agreed to continue his sentencing hearing until the case proceeded to trial, or otherwise resolved, so defendant could continue to cooperate and the government could assess the value of his cooperation. *See, e.g.,* Dkt. 17, 22, 26, 29, 33, 35, 37, 41, 44.

In October 2014, the grand jury charged five individuals (the "*Giraudo* defendants") with bid rigging and mail fraud in connection with real estate auctions in San Mateo and San Francisco which

//

Law School, John L. Williams was admitted to practice law in California in January 1969. Mr. Williams has no record of disciplinary or administrative actions during his nearly fifty years of practice.

1    proceeded before this Court.  The grand jury also charged other individuals (the "East Bay defendants")

2    with bid rigging and mail fraud in connection with real estate auctions in Alameda and Contra Costa,

3    which proceeded before the Honorable Chief District Judge Phyllis J. Hamilton.  *United States v.*

4    *Galloway et al.,* 2016 U.S. Dist. LEXIS 24735 (N.D. Cal. August 15, 2016); *United States v. Florida et*

5    *al.*, 2016 U.S. Dist. LEXIS 99913 (N.D. Cal. Jul. 26, 2016); *United States v. Marr et al.*, 2016 U.S. Dist.

6    LEXIS 96172 (N.D. Cal. Jul. 22, 2016).

7         Both the case proceeding against the *Giraudo* defendants and the cases against the East Bay

8    defendants involved significant pretrial litigation.  The *Giraudo* defendants filed a motion to suppress

9    non-consensual recordings, which the Court granted on August 1, 2016; however, the defendants'

10   motion to suppress further evidence as tainted was denied on July 18, 2017.  *See* 14-CR-534 CRB, Dkt.

11   150 and 248.  The East Bay defendants filed a motion to dismiss the mail fraud charges, which Judge

12   Hamilton granted on August 15, 2016.  Rather than file a superseding indictment to cure what Judge

13   Hamilton determined to be a defect in the indictment, the government elected to pursue the bid-rigging

14   charges alone.  The government likewise dismissed the mail fraud-charges against the *Giraudo*

15   defendants and offered to re-enter plea agreements with the various cooperating defendants who had

16   previously pleaded guilty to bid rigging and mail fraud so long as they agreed to again plead guilty to

17   bid rigging.  *See* Dkt. 46.  Defendant declined that offer.

18        Judge Hamilton presided over four trials, and, upon reassignment, Judge Donato presided over

19   one.  In total, nine of the ten defendants tried were convicted.  To date, Judge Hamilton has sentenced 50

20   defendants.  At each of these sentencing hearings, the government recommended a custodial sentence.

21        After the Court denied the *Giraudo* defendants' motion to suppress further evidence, they all

22   pleaded guilty to bid-rigging charges.[2]  This Court has scheduled sentencing for the 23 defendants

23   charged in this case for March 21, 2018.  On January 17, 2018, more than five-and-a-half years after

24   entering his guilty plea, defendant moved to withdraw it.

25                            **III.    ARGUMENT**

26        A defendant has no absolute right to withdraw an accepted guilty plea.  *United States v. Hyde*,

27   520 U.S. 670 (1997).  A defendant "may withdraw a plea of guilty," which has already been accepted,

28   //

---

[2] Three of the *Giraudo* defendants pleaded pursuant to a plea agreement with the government.  Two
pleaded guilty without a plea agreement

1   only if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P.

2   11(d)(2)(B).  The burden is on defendant to make this showing.  *United States v. Rios-Ortiz*, 830 F.2d

3   1067, 1069 (9th Cir. 1987).  This court has broad discretion in reviewing this motion.  *United States v.*

4   *Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009).

5          In the Ninth Circuit, fair and just reasons include "inadequate Rule 11 plea colloquies, newly

6   discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did

7   not exist when the defendant entered his plea."  *United States v. Mayweather*, 634 F.3d 498, 504 (9th

8   Cir. 2010).  When evaluating a defendant's motion to withdraw his plea, a court should consider the

9   timing and circumstances of the defendant's motion to withdraw, whether the government will suffer

10  prejudice from withdraw, and whether the defendant has asserted actual innocence.  *Ensminger*, 567

11  F.3d at 591 (timing and circumstances); *United States v. Vasquez-Valasco*, 471 F.2d 294, 294 (9th Cir.

12  1973) (prejudice); *see United States v. Morales-Bravo*, 650 Fed. Appx. 530, 532 (9th Cir. 2016) (actual

13  innocence).

14         A change of heart is not a fair and just reason for withdraw.  *Ensminger*, 567 F.3d at 593.  And

15  "a [d]efendant's claim that he did not see all the government's cards before pleading guilty does not

16  entitle him to withdraw his plea." *United States v. Showalter*, 569 F.3d 1150, 1155-56 (9th Cir. 2009)

17  (citing with approval *United States v. Schmidt,* 373 F.3d 100, 102 (2d Cir. 2004)).  A defendant claiming

18  ineffective assistance of counsel as a basis to withdraw a plea must first establish that they received

19  erroneous or inadequate legal advice, and a defendant that substantially benefits from a plea agreement

20  cannot meet this threshold.  *United States v. Chavez-Reyes*, 2014 U.S. Dist. LEXIS 101377 (C.D. Cal.

21  July 9, 2014), *aff'd*, 621 Fed. Appx. 508, 509-510 (9th Cir. 2015).

22     **A.    Defendant's Motion To Withdraw His Plea Is Not Timely And Shows Merely A
23             Change Of Heart**

24          1.   Defendant has not learned any new information that justifies the length of delay in filing
25               his motion to withdraw.

26         When a defendant has "long delayed his withdrawal motion, and has had the full benefit of

27  competent counsel at all times, the reasons given to support withdrawal must have considerably more

28  force."  *See United States v. Ortega-Ascanio*, 376 F.3d 879, 886 (9th Cir. 2004) (quoting *United States*

1   *v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975)); *see also* Fed. R. Crim. P. 32 Advisory Committee Note

2   (1983).  Accordingly, "[b]ecause the timing of a defendant's attempted plea withdrawal is highly

3   probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is

4   fair and just."  *United States v. Doyle,* 981 F.2d 591, 595 (1st Cir. 1992).

5          Here, defendant pleaded guilty on June 20, 2012.  His motion to withdraw was not filed until

6   January 17, 2018, more than five-and-a-half years after his guilty plea.  Defendant argues that this

7   substantial delay is justified because of newly discovered information, specifically the existence of

8   recordings subsequently suppressed by this Court, and a decision issued by another court dismissing

9   mail fraud charges.  *See* Dkt. 61, at 36-40.  But neither of these events justifies such a lengthy delay.

10          This Court issued its Order Suppressing Electronic Surveillance on August 1, 2016 (14-CR-534

11   CRB, Dkt 150).  And Judge Hamilton issued her Order dismissing fraud charges on August 15, 2016

12   (14-CR-607 PJH, Dkt 139).  Both events occurred nearly a year-and-a-half before defendant filed his

13   motion to withdraw his plea.  Nor does the government's use of informants in this case provide any

14   justification for defendant's delay.  Defendant's former counsel understood that the government relied

15   on informants and the government described, in detail, its use of informants in briefing related to the

16   suppression litigation exactly 19 months ago.  (Williams Decl. ¶ 5; U.S.' Opp. to Defs.' Post H'rng Br.

17   In Support of Mot. to Suppress, Dkt. 144 (June 17, 2016).)  Likewise, his vague references to additional

18   discovery and new statements do not justify the lengthy delay.  Defendant has not indicated when he

19   obtained this information or otherwise explained how it justifies such a substantial delay in filing his

20   motion to withdraw.  Furthermore, Federal Rule of Criminal Procedure 12 required defendant to make

21   any suppression motion before pleading.  *See* Fed. R. Crim. P. Advisory Committee Note (1974)

22   ("[O]bjections to evidence on the ground that it was illegally obtained must be raised prior to trial.").

23   Defendant's motion to withdraw should be denied as untimely.  *See United States v. Navarro-Flores*,

24   628 F.2d 1178, 1184 (9th Cir. 1980) (three-month delay too long), *United States v. Nostratis*, 321 F.3d

25   1206, 1211 (9th Cir. 2003) (two-year delay too long); *United States v. Yamashiro*, 788 F.3d 1231, 1237

26   (9th Cir. 2015) (one-year delay too long), *see also United States v. Santiago*, 229 F.3d 313, 318 (1st Cir.

27   2000) (nine-month delay too long); *United States v. Durham*, 178 F.3d 796, 798-799 (6th Cir. 1999)

28   (seventy-seven-day delay basis for denial of motion).

1

2  **2.** The timing and circumstances of defendant's motion show defendant is seeking withdrawal of his plea for improper purposes.

3   The timing, circumstances, and contents of defendant's motion demonstrate that his purported

4 reasons for withdrawal are insincere.  The reasons he offers were known long before he filed his motion,

5 *see supra*, 5-6.  Moreover, he acknowledges that the government offered him the opportunity to

6 withdraw his plea to bid rigging and fraud upon re-entering a plea agreement to bid rigging charges

7 only.[3]  Dkt. 61 at 14.  The notion that defendant is seeking to withdraw his plea because of allegedly

8 deficient fraud charges is belied by the circumstances.

9   Thus, this case is readily distinguishable from *United States v. Ortega-Ascanio*, 376 F.3d 879

10 (9th Cir. 2004) (Breyer, J., sitting by designation).  In *Ortega-Ascanio,* the Ninth Circuit held that a

11 defendant should have been permitted to withdraw his guilty plea to a charge of illegal re-entry after the

12 intervening Supreme Court decision, *INS v. St. Cyr*, 533 U.S. 289 (2001), effectively invalidated

13 defendant's prior deportation, thereby precluding the illegal re-entry charge for which defendant

14 pleaded.  *Ortega-Ascanio*, 376 F.3d at 882.  The court excused the defendant's nine-month delay in

15 filing his motion to withdraw because there was "nothing in the record that suggest[ed] anything other

16 than *St. Cyr* motivated [the defendant] to file his motion to withdraw."  *Id.* at 886.  Here, defendant's

17 fraud convictions, which defendant contends (incorrectly) are structurally deficient, *see infra*, 12-15,

18 plainly are not the *bona fide* basis for his motion to withdrawal because he has been offered, and has

19 declined, to accept the dismissal of mail-fraud charges for which he previously pleaded guilty.  *Cf.*

20 *United States v. Garcia,* 401 F.3d 1008 (9th Cir. 2005) (delay not a basis to deny motion to withdraw

21 when "no suggestion or indication on the record that [defendant's] reasons for withdrawal were not bona

22 fide, or that the government suffered great prejudice as a result of [defendant's] delay").

23   It is clear that the defendant has had a change of heart.  But a "change of heart—'even a good

24 faith change of heart'—is not a fair and just reason" for a defendant to withdraw his plea.  *Ensminger*,

25 567 F.3d at 593.

26 //

27

28 [3] Contrary to defendant's contentions, the government has not implicitly acknowledged that the defendant's plea is void.  The government' position has been consistent: after Judge Hamilton dismissed fraud charges in a similar case against a group of indicted defendants, the government elected not to pursue mail fraud charges against the cooperating defendants in the related cases so long as those defendants agreed to accept responsibility for their bid-rigging conduct.

No. CR 12-00300 CRB     6
U.S.' RESP. TO DEF'S. MOT. TO WITHDRAW HIS PLEA

1    Perhaps the change of heart is motivated by the prospect of a custodial sentence.  At this time, 50

2    defendants have been sentenced by Judge Hamilton for their participation in bid rigging conspiracies

3    occurring in Alameda and Contra Costa counties.  The United States has recommended a custodial

4    sentence in every instance.  Many defendants have in fact received custodial sentences, including

5    sentences as high as 21 months.  But learning that the government plans to seek a custodial sentence is

6    "not valid grounds to grant permission to withdraw a plea."  *United States v. McTiernan*, 546 F.3d 1160,

7    1166 (9th Cir. 2008); *see United States v. Navarro-Flores*, 628 F.2d 1178, 1184 (1980).

8    Nor should defendant be permitted to withdrawal his guilty plea based on his reassessment of the

9    case against him in light of the acquittal of a defendant charged in a case involving similar conduct

10   before Judge Hamilton.  *See United States v. Sims*, 822 F.Supp. 1308, 1316 (N.D. Ill. 1993) ("Although

11   this passage of time [of two-and-a-half months] is not dispositive, its coincidence closely on the heels of

12   the acquittal of codefendant" counsels against finding a fair and just reason for withdrawal); *see also*

13   *Showalter*, 569 F.3d at 1156 ("[B]elief that government had a weaker case than he originally thought

14   does not constitute a fair and just reason to withdraw his guilty plea.").

15   **B. Defendant Was Represented By Competent Counsel And Received Substantial Benefits
     From His Plea Agreement**

16

17   "Erroneous or inadequate legal advice may constitute a fair and just reason for plea withdrawal,"

18   *McTiernan*, 546 F.3d at 1167.  But before such withdrawal is permitted, a defendant must establish his

19   "counsel's representation fell below an objective standard of reasonableness, and any deficiencies in

20   counsel's performance [were] prejudicial to the defense."  *Eggleston v. United States,* 798 F.2d 374, 376

21   (9th Cir. 1986).  Prejudice requires showing that proper legal advice could have motivated a reasonable

22   person in defendant's position not to have pleaded guilty.  *McTiernan*, 546 F.3d at 1167.

23   Here, defendant contends his counsel was ineffective for his failure to seek pre-indictment

24   discovery from the government.  But a defendant is not entitled to criminal discovery before an

25   indictment is filed, and defendant's counsel was not ineffective for failing to request it.[4]  *See United*

26   *States v. Sgarlat,* 705 F.Supp.2d 347, 355 (D.N.J. 2010); *Showalter*, 569 F.3d at 1155-56 (failure to "see

27   //

28

---

[4] Indeed, the government entered into pre-indictment plea agreements with seventeen other defendants
in this case, all represented by experienced and capable counsel.  The government did not produce
discovery in any of those cases.

1   all government's cards before pleading guilty does not entitle [defendant] to withdraw his plea").

2   Notably, in the declaration of defendant's prior counsel submitted with defendant's motion, counsel

3   does not indicate that he failed to advise his client about when he was entitled to discovery and

4   advantages and disadvantages of pleading early, without the benefit of full discovery.[5]   Moreover, at

5   defendant's plea hearing, the defendant indicated he discussed the charges and case with his attorney

6   and was satisfied with his legal representation.  Worthing Plea Hr'g, Jun. 20, 2012, Tr. 3:18-4:4.

7         Defendant cannot establish ineffectiveness by showing "that his counsel in retrospect may not

8   have correctly appraised the constitutional significance of certain historical facts," or that "if counsel

9   had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional

10   infirmity in the proceedings." *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973).  Indeed, "[o]ften the

11   interests of the accused are not advanced by challenges that would only delay the inevitable date of

12   prosecution, or by contesting all guilt." *Id.*  This is particularly apparent here, where defendant

13   confessed to criminal conduct when first approached by the FBI, and then learned of additional

14   inculpatory evidence through plea negotiations with the government.

15         Moreover, defendant's former counsel successfully negotiated a favorable settlement for his

16   client.  By pleading guilty early in the investigation, defendant had the opportunity to offer substantial

17   assistance to the government, and negotiated a stipulated volume of commerce and loss amount based on

18   the government's understanding of the evidence it had developed at the time it entered the plea

19   agreement with defendant.  Indeed, defendant's stipulated volume of commerce was set at $917,987, just

20   below Sentencing Guidelines' threshold of $1 million for a two-level increase in his offense level.  Plea

21   Agreement at ¶ 9 (Dkt. 8); *see* U.S.S.G. § 2R1.1(b)(2)(A) (two-point upward adjustment for volume of

22   commerce above $1 million).  Defendant's stipulated fraud loss was $96,500, below the $120,000

23   threshold for a two-level increase in his offense level.  *Compare* U.S.S.G. §2B1.1(b)(E) *with* §

24   2B1.1(b)(F).[6]  By agreeing to plead guilty when he did, the defendant avoided the prospect that his

25   offense level could be increased if additional evidence implicated him in the purchase of an additional

26

27   [5] The Declaration of David Cohen, which was attached as Exhibit B to defendant's motion was
     submitted to the Court *ex parte* and under seal.  The government is not in a position to respond to its
28   contents and it should not be used in considering the merits of defendant's motion.  *See United States v.
     Wei Lin*, 2013 WL 12170305 at *5 (D. N. Mar. Is. Nov. 13, 2013).

[6]  Although the fraud loss table has been adjusted, the 2012 Edition to the Sentencing Guidelines were
applicable at the time defendant entered his plea.

1   rigged property.  The defendant thus received a substantial benefit from pleading when he did, given that
2   13 defendants pleaded guilty after him would have likely implicated him in additional bid-rigging
3   conduct that would have affected his Guidelines calculation.  Moreover, defendant benefitted from a
4   two-level reduction in his offense level for acceptance responsibility under U.S.S.G. § 3E1.1.  His total
5   offense level under his plea agreement is 13.  This results in an advisory guidelines range of 12 to 18
6   months' imprisonment, before any offsetting adjustment for substantial assistance under U.S.S.G. §
7   5K1.1.  Because he pleaded guilty early, this represented a commensurate good deal for him.

8           In contrast, at the time defendant entered his plea the prospects of indictment and trial presented
9   a potentially far worse outcome.  By proceeding to trial, defendant would likely lose the two-level
10  reduction for acceptance of responsibility, and would not receive any downward departure based on
11  substantial assistance.  Moreover, defendant would not be protected by his stipulated volume of
12  commerce or fraud loss, and thus if he were implicated in rigging even one additional property, he
13  would face a two-level increase under U.S.S.G. § 2R1.1(b)(2)(A) and U.S.S.G. § 2B1.1(b)(F).  Taken
14  together, these adjustments increase his offense level to 17, which essentially doubles his guidelines
15  range to 24 to 30 months' imprisonment, without any potential for a substantial assistance departure.
16  Accordingly, defendant has not established that he received inadequate or erroneous legal advice.  On
17  the contrary, his initial counsel obtained a favorable outcome.  *See Chavez-Reyes*, 621 Fed. Appx. at
18  509-10 (demonstrably favorable plea not "a just reason why [defendant] must be allowed to withdraw
19  his plea").

20          It is also worth noting that defendant has not asserted actual innocence.  The Advisory
21  Committee notes to Fed. R. Crim. P. 32 make clear that "[w]hether the movant has asserted his legal
22  innocence is an important factor to be weighed."[7]  And while the Ninth Circuit has proscribed that a
23  "failure to proclaim innocence should not count against" a defendant seeking to withdraw his plea,
24  *McTiernan*, 546 F.3d at 1168, courts may consider evidence of guilt in assessing whether a defendant
25  who was advised to plead guilty received proper advice.  *See Morales-Bravo*, 650 Fed. Appx. at 532.

26          Here, during a non-custodial interview with the FBI, defendant confessed that he had both paid
27  other bidders not to submit competing bids and been paid by others not to bid against them, usually
28  //

---

[7] The language of Rule 32 on withdrawals of pleas was transferred to Fed. R. Crim. P. 11 in 2002.  Fed.
R. Crim. P. 11 Advisory Committee Note (2002).

1   $1,000 on each occasion.  Mast Decl., Exhibit A. (1/11/11 302, NDRE-FBI-I-000247).  He also admitted
2   that payoffs to other bidders not to bid was improper, saying "I'm sure that's illegal."  *Id.* at NDRE-FBI-
3   I-000246.

4          In his motion to withdraw, defendant does not cast doubt on the veracity of his confessions
5   during his initial interview, at his plea hearing in open court, or when he was interviewed pursuant to his
6   plea agreement.  Rather, he admits to bid rigging in his motion but contends that he has a defense based
7   on tainted evidence or entrapment.  Similarly, he does not contend that his admissions to the factual
8   basis of his fraud charges are inaccurate.  Instead, he claims that the Information should be dismissed
9   because it failed to incorporate the bid-rigging allegations into the fraud charges.  Thus, while
10  defendant's failure to proclaim innocence does not preclude him from establishing a fair and just reason
11  for withdrawal, the absence of a claim asserting innocence does not help him.

12  **C.  The Government And This Court Would Be Prejudiced If Defendant Is Permitted To
13      Withdraw His Plea**

14         The government is not required to show prejudice in order for the Court to deny a defendant's
15  motion to withdraw his plea.  *Rios-Ortiz*, 830 F.2d at 1069.  Indeed, the Advisory Committee Notes
16  specify that requiring the government to demonstrate prejudice when there is not a sufficient reason
17  justifying withdrawal would turn the rule on its head, noting that "there is no reason to view pleas [. . .]
18  as merely 'tentative,' subject to withdrawal before sentence whenever the government cannot establish
19  prejudice."  Fed. R. Crim. P. 32 Advisory Committee Note (1983).  However, "[p]rejudice to the
20  government is one factor to be considered by the district court in its evaluation of the merits of the
21  defendant's motion to withdraw his plea."  *Vasquez-Valasco*, 471 F.2d at 294.

22         In this case, the prejudice to the government if defendant is permitted to withdraw his plea would
23  be considerable.  First, the government has already expended a substantial amount of resources on this
24  case.  As this Court is aware, the government and the *Giraudo* defendants spent significant time
25  litigating defendants' motion to suppress stationary audio surveillance.  *See, e.g.*, 14-CR-534, Dkt. 248
26  at 1 ("In this criminal case, the sprawl of litigation about the alleged taint from the unlawful stationary
27  audio recording has approached that of the investigation itself.").  In total, the parties appeared for seven
28  days of hearings and submitted hundreds of pages of briefing.  Although the Court definitively found

1  that the government's stationary surveillance did not taint its investigation, defendant now indicates that

2  he desires to litigate issues surrounding taint specific to him.  The government should not be forced to

3  re-litigate these issues a second time when defendant could have filed his motion to withdraw as soon as

4  the government's stationary surveillance was identified in November 2015 in the *Giraudo* defendants'

5  motion to suppress.[8]  14-CR-534, Dkt. 58,

6    Second, all 23 defendants from this case are scheduled for sentencing on March 21, 2018.

7  Although the Court indicated that it does not intend to sentence all 23 defendants on that date, the Court

8  required all sentencing-related papers to be filed as if March 21, 2018 were the sentencing date.  The

9  Court chose a single sentencing date for all defendants recognizing the large number of participants

10  charged in the conspiracies and wanting to ensure that it adequately considers the relative culpability of

11  the various defendants.  This approach ensures consistency among the nearly two dozen defendants

12  convicted of participating in this broad conspiracy.  Moreover, by deferring sentencing until all of the

13  defendants have been convicted (or acquitted), the government can better analyze the substantial

14  assistance provided by each defendant.  If defendant is permitted to withdraw his plea, the government

15  will either have to speculate about the cooperation of expected witnesses at defendant's trial, or request

16  a further delay of sentencing for particular cooperating witnesses.

17    Finally, defendant pleaded guilty relatively early in the government's investigation—he was the

18  tenth to plead guilty, and pleaded more than two years prior to the indictment was filed against the

19  *Giraudo* defendants.  After defendant pleaded guilty, the government did not focus on building its case

20  against him.  Thus, many of the cooperating defendants who pleaded guilty after defendant were not

21  questioned about his participation in the conspiracies.  Now, more than five-and-a-half years after

22  defendant's plea, there is the potential that witnesses' memories may have faded.  Moreover, the

23  government's two primary case agents have either retired or been transferred within the FBI, the

24  government's undercover agent is scheduled to retire this summer, and a new grand jury would have to

25  //

26  //

27

28  [8] Defendant appears to presume that the Court would hold the government's use of stationary surveillance violative of the Fourth Amendment with respect to him.  But while the Court's conclusions regarding the defendant's *objective* expectation of privacy might carry over to a motion to suppress filed by him, its conclusions regarding defendant's *subjective* expectation of privacy might not.  Thus, another motion to suppress would expend considerable resources of the Court and government.

1   be presented with an indictment.  And of course, if defendant is permitted to withdraw his plea, he will

2   have to be tried, imposing clear burdens on the government and this Court.

3       **D.  Defendant's Proffered Reasons For Withdrawing His Guilty Plea Do Not Satisfy His
        Burden of Showing A Fair And Just Reason For Withdrawal**

4

5           The timing and circumstances of defendant's motion and the fact that he has been adequately

6   represented since January 2011 are each sufficient reasons to deny his motion.  Putting that aside, he still

7   fails to meet his burden because the reasons he does advance fail on the merits.

8           1.  <u>The mail fraud charges are not structurally deficient and do not create a fair and just
               reason for withdrawing defendant's plea.</u>

9

10          Any purported structural deficiency in the mail fraud charges cannot serve as a fair and just

11  reason for withdrawing the plea given that the government has already offered to dismiss those charges

12  for other reasons.  But on its merits, defendant's argument must fail because the information was

13  properly drafted.  An indictment or information must be a "plain, concise, and definite written statement

14  of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The purpose of an

15  indictment is to put defendants on notice of the crimes with which they have been charged.  *United*

16  *States v. James*, 980 F.2d 1314, 1316 (9th Cir. 1992).  Thus, an indictment or information is sufficient if

17  it "contains the elements of the offense charged and fairly informs a defendant of the charges against

18  which he must defend," and, "enables him to plead to an acquittal or conviction in bar of future

19  prosecutions of the same offense."  *United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir. 1980)

20  (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  An indictment must be "liberally

21  construed in favor of validity."  *United States v. Holden*, 806 F.3d 1227, 1233 (9th Cir. 2015) (quoting

22  *United States v. James*, 980 F.2d 1314, 1316 (9th Cir. 1992)).

23           Defendant was charged with and pleaded guilty to two counts of conspiracy to commit mail

24  fraud in violation of 18 U.S.C. § 1349.  Both mail-fraud charges allege the elements and adequately

25  enable the defendant to plead double jeopardy.

26          The Ninth Circuit Model Jury Instructions list the following elements for mail fraud under 18

27  U.S.C. § 1341:

28   //

(1) The defendant knowingly participated in a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises or a scheme or plan to defraud;

(2) The statements made or facts omitted as part of the scheme were material; that is they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

(3) The defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

(4) The defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.[9]

Here, the Information tracks these elements closely and provides more than enough information for defendant to plead double jeopardy. Specifically, the Information alleges "MATTHEW WORTHING and co-conspirators did willfully and knowingly combine, conspire, and agree with each other to violate Title 18, United States Code, Section 1341, namely, to knowingly devise and intend to devise and participate in a scheme and artifice to defraud beneficiaries, and to obtain money and property from beneficiaries by means of materially false and fraudulent pretenses, representations, and promises." Dkt. 1, ¶¶ 8, 20. "For the purpose of executing the scheme and artifice to defraud and attempting to do so, the defendant and co-conspirators knowingly used and caused to be used the United States Postal Service and private or commercial interstate carriers. Dkt. 1 ¶¶ 12, 24.

In addition to the allegations indicating defendant's conduct met the elements of mail fraud, the Information provides ample detail to put defendant on notice of the crimes for which he was charged. For example, it alleges that the objects of the conspiracies in San Mateo and San Francisco counties were to "acquire title to selected properties sold at public auctions" and "to make and receive payoffs, and to divert money to conspirators that would have gone to the beneficiaries." Dkt. 1 ¶¶ 9, 21. The Information also makes clear that defendant and co-conspirators "made materially false and misleading statements on records of public auctions that trustees relied upon to distribute proceeds from the public auction to the beneficiaries and convey title to properties sold at the public auction" and caused "the suppressed purchase price to be reported and paid to the beneficiaries." Dkt. 1 ¶¶ 11(f), (g), 23(e), (f).

//

//

_____

[9] Defendant was charged with, and pleaded guilty to, conspiracy to commit mail fraud, 18 U.S.C. § 1349. Defendant does not contest the sufficiency of the conspiracy allegations.

1    Defendant asserts that the government has not identified particular fraudulent transactions, has

2    not alleged the misrepresentations with sufficient specificity, and that the misrepresentations alleged in

3    the Information could not have influenced the beneficiaries' decisions to part with the properties that

4    were put up for auction.  Dkt. 61 at 7 and 10.  But an indictment does not have to "specify the theory

5    upon which those facts will be proved at trial" or explain "the evidence upon which the proof will rest."

6    *United States v. Markee*, 425 F.2d 1043, 1047-48 (9th Cir. 1970); *see also United States v. Kendall*, 665

7    F.2d 126, 135 (7th Cir. 1981) ("The defendant's constitutional right is to know the offense with which

8    he is charged, not to know the details of how it will be proved.").  This is especially true here because

9    the government need not prove any specific false statement in order to prove a scheme to defraud.

10   *United States v. Woods,* 335 F.3d 993, 997-98 (9th Cir. 2003). ("[A] defendant's actions can constitute a

11   scheme to defraud even if there are no specific false statements involved. . . . [T]he arrangement of the

12   words or the circumstances in which they are used may create an appearance which is false or deceptive,

13   even if the words themselves fall short of this.")

14   Likewise, the mail fraud charges alleged against the defendant do not require the bid-rigging

15   charges to be incorporated by reference when the fraud allegations put the defendant on notice of the

16   crimes for which he was charged.  The fraud allegations make clear that for the purpose of carrying out

17   the charged conspiracy, the defendant negotiated payoffs with other conspirators not to compete,

18   purchased properties at the public auctions at suppressed prices, made materially false and misleading

19   statements on records of public auctions, and paid conspirators monies that would have otherwise gone

20   to the beneficiaries.  Dkt. 1 ¶¶ 11, 23.  This provides sufficient notice to the defendant.  *See James*, 980

21   F.2d at 1316.  Therefore, the fact that defendant pleaded guilty to mail-fraud charges does not provide a

22   fair and just reason for him to withdraw his plea.

23   Nor does Judge Hamilton's dismissal of fraud charges in cases arising from similar conduct

24   occurring in Alameda and Contra Costa provide a basis for defendant to withdraw his plea.  The

25   defendant's discovery of "a new non-binding legal authority to cite in a motion he could have filed

26   before pleading guilty, but chose not to bring" does not provide a fair and just reason justifying granting

27   a motion to withdraw a plea.  *Ensminger*, 567 F.3d at 594.  Moreover, Judge Hamilton's decision made

28   clear that the flaw in the indictment was not fatal to bringing fraud charges based on the facts of the

1   case.  Rather, Judge Hamilton found, in a different charging document, that because the fraud

2   allegations did not incorporate by reference the bid-rigging allegations, they were deficient.  That does

3   not provide a fair and just reason for defendant to withdraw his plea.

4           2. <u>Defendant's Rule 11 colloquy does not provide a fair and just reason for withdrawal.</u>

5           The record belies defendant's claim that the Rule 11 colloquy was deficient and thus a basis for

6   withdrawing his guilty plea.  Defendant entered his plea agreement and guilty plea voluntarily and

7   knowingly, and the purported deficiencies he now claims are non-existent or harmless.

8           Federal Rule of Criminal Procedure 11 provides that the court must address the defendant

9   personally in open court and inform the defendant of certain advisements before accepting a guilty plea.

10  Fed. R. Crim. P. 11 (b)(1).   The purpose of the advisements is to ensure that a defendant entered into a

11  knowing and voluntary plea agreement.  The defendant claims that this Court provided "no advisement

12  whatsoever," or a deficient advisement, for the six advisements prescribed by Rule 11(b)(1)(A), (G),

13  (H), (K), (L), and (N).  Dkt. 61 at 20 and 26.  Those advisements are:

14          (A)     the government's right, in a prosecution for perjury or false statement, to use against the
15                  defendant any statement that the defendant gives under oath;

16          (G)     the nature of each charge to which the defendant is pleading;

17          (H)     any maximum possible penalty, including imprisonment, fine, and term of supervised
18                  release;

19          (K)     the court's authority to order restitution;

20          (L)     the court's obligation to impose a special assessment; and

21          (N)     the terms of any plea-agreement provision waiving the right to appeal or to collaterally
                    attack the sentence.

22          Rule 11 advisements are "not to be read as requiring a litany or other ritual which can be carried

23  out only by word-for-word adherence to a set 'script.'"  Fed. R. Crim. P. 11 Advisory Committee Note

24  (1983).  And a deficient Rule 11 advisement is harmless error if it does not affect substantial rights.

25  Fed. R. Crim. P. 11(h).  Prior to sentencing, to establish that any error was harmless, the government

26  must show that "the defendant was aware of the rights at issues when he entered his guilty plea or that

27  the district court's Rule 11 error was simply minor or technical."  *United States v. Villalobos*, 333 F.3d

28  at 1074 (9th Cir. 2003) (internal quotation marks and citation omitted).[10]  "[E]ven when it may be

---

[10] To withdraw from a guilty plea post sentencing, the standard is clear error.  The purpose of the

1   concluded Rule 11 has not been complied with in all respects, it does not inevitably follow that the

2   defendant's plea of guilty [ ] is invalid and subject to being overturned by any remedial device then

3   available to the defendant." Fed. R. Crim. P. 11 Advisory Committee Note (1983).

4        As a preliminary matter, defendant incorrectly states that this Court is "constrained to the record

5   of the plea proceeding." Dkt. 61 at 33 (citing, *inter alia*, *United States v. Odedo*, 154 F.3d 937, 940 (9th

6   Cir. 1998)). Since *Odedo*, the Supreme Court and Ninth Circuit have clarified that "a reviewing court

7   may consult the whole record when considering the effect of any [Rule 11] error on substantial rights."

8   *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Ma*, 290 F.3d 1002, 1005 (9th Cir. 2002)

9   ("The whole record is to be taken into account when considering the effect of any Rule 11 error on a

10  defendant's substantial rights."). Accordingly, this Court may consider any evidence in the record,

11  including the plea agreement.

12            a. *Defendant repeatedly verified his knowledge of the plea terms.*

13        Here, defendant pleaded guilty pursuant to a plea and cooperation agreement with the United

14  States. Dkt. 8. That agreement sets forth each of the rights that defendant agreed to waive, including the

15  advisements defendant now complains were absent or deficient in his colloquy. *Id.* at ¶¶ 2, 5-7, 11, 12,

16  18. The signed agreement also states that defendant:

17      [R]eviewed all legal and factual aspects of this case with his attorney and is fully satisfied with
18      his attorney's legal representation. The defendant has thoroughly reviewed this Plea Agreement
        with his attorney and has received satisfactory explanations from his attorney concerning each
19      paragraph of this Plea Agreement and the alternatives available to the defendant other than
20      entering into this Plea Agreement. After conferring with his attorney and considering available
        alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea
21      Agreement.

22

23  Dkt. 8 ¶ 21; cf. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("Where a defendant is represented by

24  competent counsel, the court usually may rely on that counsel's assurance that the defendant has been

25  properly informed of the nature and elements of the charge to which he is pleading guilty.").

26      //

27      //

28  heightened standard is "to encourage timely objections and reduce wasteful reversals," and to "respect
    the importance of the finality of guilty pleas." *United States v. Dominguez-Benitez*, 542 U.S. 74, 82-83
    (2004). While the standard does not formally apply, the considerations are relevant to the defendant's
    motion, which he submitted five-and-a-half years after entering his plea.

1    On June 20, 2012, defendant entered his guilty plea during a comprehensive change of plea

2    hearing.  Dkt. 9.  During the plea proceedings, defendant was represented by retained counsel.  After

3    determining that the defendant was of sound mind and held a bachelor's degree, the Court made several

4    inquiries to determine if the defendant was knowingly entering into the plea agreement:

5    Court:        Are you fully satisfied with the representation given to you in this case by your
6                  attorney?

7    Defendant:    Yes.

8    Court:        There is a plea agreement in this case.  Did you have an opportunity to read and
9                  discuss the plea agreement with your lawyer before you signed it?

10   Defendant:    I did, your Honor.

11   Court:  Do you understand the terms of the plea agreement?

12   Defendant:  Yes, I do.

13   Worthing Plea Hr'g, Jun. 20, 2012, Tr. 3:8-4:11.
14

15   The Court made a finding on the record that defendant was "fully competent," that defendant

16   was "aware of the nature of the charges," and that "the pleas of guilty are knowing and voluntary pleas,

17   supported by an independent basis in fact containing each of the essential elements of the offenses." *Id*.

18   9:15-24.  Given defendant's repeated assurance that he understood the plea agreement, he cannot now

19   claim that he did not.  In fact, notably absent from defendant's motion is a declaration from defendant

20   asserting he entered his plea unknowingly.

21
22                      b. *Deviation from Rule 11(b)(1)(A)'s text was minor and technical.*

23   Defendant's contention that his Rule 11(b)(1)(A) advisement regarding perjury was fatally

24   deficient is mistaken.  The defendant was placed under oath, swearing that his answers would be "the

25   whole truth."  The Court then advised, "Mr. Worthing, you understand that you are under oath and you

26   must answer my questions truthfully?"  To which Mr. Worthing replied, "I do, Your Honor." *Id*. 2:1-

27   3:2. This variation of the advisement that did not specifically mention perjury was a minor or technical

28   error that did not affect substantial rights.  Defendant cites no case law in which a similar Rule

1   11(b)(1)(A) advisement warranted withdrawal, nor does he allege that defendant's substantial rights

2   were affected due to his subsequent perjury or prosecution for perjury.  Indeed, the Sixth Circuit has

3   held that a variation akin to this Court's advisement was harmless error in a post-sentencing appeal.

4   *United States v. Banks*, 467 F. App'x 468, 472 (6th Cir. 2012) (district court's advisement of "obligation

5   of truthfulness" without referencing possible penalties was "at most, harmless error").  And the Seventh

6   Circuit, pre-sentence, has held that a "failure to recite Rule 11(b)(1)(A)" during a plea colloquy was

7   "harmless."  *United States v. Bethany*, 569 F. App'x 447, 451 (7th Cir. 2014).

8                     c.   *Defendant was advised of the nature and maximum penalties of the charges.*

9           Defendant's next argument based on the Rule 11(b)(1)(G) and (H) advisements regarding the

10   nature and maximum penalties for his charges fares no better.  The crux of this argument is that he was

11   advised of the nature and maximum penalty for a single antitrust charge and a single fraud charge, but

12   not for both antitrust charges and both fraud charges.  Dkt. 61 at 21-22, 25-27.  His reasoning ignores

13   that the nature and maximum penalties are the same for each of the two antitrust charges as well as for

14   each of the two fraud charges.

15           His claim that he was "affirmatively mislead by the prosecutor into the notion that he was

16   pleading guilty to only two counts in total," Dkt. 61 at 26, is belied by the record.  To the contrary, the

17   prosecutor made abundantly clear that there were four counts, specifically making the point during the

18   colloquy:

19           [Prosecutor]:   Your Honor, the defendant is charged with four counts in the Information.

20   Worthing Plea Hr'g, Jun. 20, 2012, Tr. 5:21-22.

21           The clerk repeated the same point, and the defendant immediately thereafter pleaded guilty to the

22   four counts:

23

24           Clerk:          Matthew Worthing, how to you plead to Counts One Through Four of the
                             Information?

25

26           Defendant:      I plead guilty.

27           Clerk:          Pleas of guilty to Count One through [F]our of the Information have been entered,
                             Your Honor.

28   *Id*. 9:3-14.

1    Moreover, not only was defendant advised of the four counts, the Court also directed the

2    defendant to Paragraph Four of the plea agreement, asking if he had read that specific paragraph

3    "carefully," and if the paragraph's statements were true. *Id*. 8:22-9:7. Defendant replied that he had,

4    and they were. *Id*. 9:3-7. Paragraph Four contains substantial detail as to both counts of mail fraud and

5    both counts of bid rigging, and explains all four counts one by one. Dkt. 8 at 3-6. For defendant to now

6    claim that he was unaware that he was pleading to four counts speaks to the spuriousness of his

7    motion.[11]

8    In any event, while there was no error here, even the errors complained of would likely be

9    harmless because the sentence imposed on defendant will in all likelihood be well under the maximum

10   penalty. As the Advisory Committee Notes to Rule 11 explain, an error related to the maximum

11   sentence advisement is harmless where "the judge understated the maximum penalty somewhat, but the

12   penalty actually imposed did not exceed that indicated in the warnings." *See also United States v.*

13   *Perez-Cisneros*, 461 F. App'x 564, 566 (9th Cir. 2011) ("Because [the defendant's] sentence did not

14   exceed the 20 year maximum term of imprisonment he believed he faced when he pleaded guilty, the

15   Rule 11 errors committed by the district court did not affect his substantial rights."). Thus, even if there

16   were some error in the advisement of maximum penalties, as long as the Court's sentence is under the

17   stated maximum at the colloquy (ten years for bid rigging, thirty years for fraud), any error would be

18   harmless. Defendant's sentencing guidelines range is 12 to 18 months' imprisonment. *See* Dkt. 8, ¶ 10.

19                   d. *Defendant was advised of restitution and the special assessment.*

20   Defendant's argument that "the Court fail[ed] to advise Mr. Worthing of restitution [and] special

21   assessments" under Rule 11(b)(1)(K) and (L), Dkt. 61 at 34, is also unavailing. First, the defendant was

22   specifically advised of the $400 special assessment by the prosecutor during the colloquy (as well as the

23   initial appearance). "The maximum penalty is [. . .] a $100 special assessment per penalty totaling

24   $400." Worthing Plea H'rg, June 20, 2012, Tr. 6:2-8. Similarly, the prosecutor advised the defendant of

25   restitution. "[T]he maximum penalties are [. . .] a fine of not more than $1 million [. . .] and

26   restitution."[12] Worthing Plea H'rg, June 20, 2012, Tr. 6:9-15. Moreover, even if the advisements were

27   //

28   [11] Indeed, defendant does not support his motion to withdraw with a declaration stating that, at the time
     of his plea, he believed he was pleading to two counts rather than four.

     [12] As explained in the Advisory Committee Notes, Rule 11(b)(1)(L) "merely requires that the defendant
     be told of the court's power to order restitution. The exact amount or upper limit cannot and need not be

1   deficient, any error would be harmless.  *See United States v. Alvarez*, 835 F.3d 1180, 1188 (9th Cir.

2   2016) (post-sentence case holding failure to advise of restitution is harmless where defendant is advised

3   of a fine in excess of restitution); *see also United States v. Urbina-Robles*, 817 F.3d 838, 845 (1st Cir.

4   2016) (post-sentence holding that the defendant was not prejudiced by a failure to advise of the special

5   assessment and restitution); *United States v. Laws*, 420 F. App'x 611, 612 (7th Cir. 2011) (post-sentence

6   holding that failure to inform a defendant of the special assessment did not affect "substantial rights").

7                    e. *The plea agreement advised defendant of the appellate waiver.*

8              Defendant's final argument that the Rule 11(b)(1)(N) advisement regarding the appellate waiver

9   of the sentence was deficient also misses the mark.  The appellate waiver was referred to explicitly in

10  paragraph two of the signed plea agreement.  Specifically, the plea agreement makes clear that

11  defendant waived the right "to appeal the imposition of sentence against him," and the right to "file any

12  appeal, any collateral attack, or any other writ or motion [. . .] that challenges the sentence imposed by

13  the Court [. . .]."  Dkt. 8, ¶ 2.

14             Defendant cites *United States v. Arellano-Gallegos*, 387 F.3d 794 (9th Cir. 2004), for the

15  proposition that the court erred by not referencing the appellate waiver during the colloquy.  Dkt. 61 at

16  27-28.  However, even if the Court finds that it erred, a myriad of other Ninth Circuit cases, including

17  *Arellano-Gallegos*, have remedied this deficiency by declining to enforce the appellate waiver, not

18  overturning a pleaded conviction.  *Arellano-Gallegos,* 387 F.3d at 797 (declining to enforce the waiver

19  and proceeding to hear defendant's substantive claim); *United States v. Pugh*, 668 F. App'x 273 (9th

20  Cir. 2016) ("Because the district court did not discuss Martinez's waiver of his right to appeal his

21  conviction during the change of plea hearing, however, we decline to enforce the waiver as to the

22  conviction"); *United States v. Valdez*, 585 F. App'x 656, 657 (9th Cir. 2014) ("Because the district court

23  did not discuss Valdez's waiver of his right to appeal his sentence during the change of plea hearing,

24  however, we decline to enforce that waiver") (sentence affirmed); *United States v. Martinez*, 518 F.

25  App'x 559, 560 (9th Cir. 2013) (same, sentence affirmed); *United States v. Santos*, 481 F. App'x 346,

26  346–47 (9th Cir. 2012) (same, sentence affirmed); *United States v. Morales-Escobedo*, 367 F. App'x

27  804, 805 (9th Cir. 2010) (same, sentence affirmed).

28     //

---

stated at the time of the plea. Failure of a court to advise a defendant of the possibility of a restitution
order would constitute harmless error under subdivision (h) if no restitution were thereafter ordered."

No. CR 12-00300 CRB                                        20

U.S.' RESP. TO DEF.'S MOT. TO WITHDRAW HIS PLEA

1    The Ninth Circuit practice of non-enforcement of deficient waivers conforms to the practice in

2    other circuits.  The Eleventh Circuit elaborated on the appropriate remedy for a deficient appellate

3    waiver, holding that the remedy for an "unknowing and involuntary waiver is essentially

4    severance." *United States v. Bushert,* 997 F.2d 1343, 1353 (11th Cir. 1993) (following the non-

5    enforcement of waivers in *United States v. Baty,* 980 F.2d 977, 979 (5th Cir. 1992) and *United States v.*

6    *Wessells*, 936 F.2d 165, 168 (4th Cir. 1991)).  As the Eleventh Circuit explained, "[b]y imposing the

7    severance remedy, [the defendant] will get the benefit of the deal he thought he struck." *Bushert,* 997

8    F.2d at 1353.  Should the Court find any deficiency, the appropriate remedy would be severing the

9    appellate waiver to give the defendant the benefit he arguably believed he retained.

10    Defendant's reliance on *United States v. Avila*, 733 F.3d, 1259, 1263 (10th Cir. 2013) for the

11    proposition that that other circuits allow withdrawal of pleas for "incomplete understanding[s]" of an

12    appellate waiver, Doc. No. 61 at 38, is misplaced.  In *Avila*, the district court told the defendant during

13    his plea colloquy that he would "still have the right to an appeal," when, in fact, the defendant's

14    unconditional plea limited his appellate rights.  *Id.* at 1261.  The Tenth Circuit limited its holding to

15    allowing for withdrawal when "a district court materially misinforms a defendant" about their appellate

16    rights.  *Id.* at 1264.  Here, the Court did not misinform the defendant about his appellate rights.  And

17    even if the Court had misinformed the defendant, the remedy in the Ninth Circuit would be to not

18    enforce the appellate waiver.  *United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009) ("'[W]here a

19    judge advises a defendant, without qualification, that he or she has a right to appeal, the defendant will

20    be deemed to have such a right even though it was waived in the plea bargain.'" (quoting *United States*

21    *v. Jeronimo,* 398 F.3d 1149, 1153 n.2 (9th Cir. 2005)).

22    The entire record, including the timing of defendant's motion, reflects that defendant knowingly

23    and voluntarily entered his guilty plea and understood the terms of the plea agreement.  Any errors

24    during his Rule 11 colloquy were minor and technical, did not affect substantial rights, and do not justify

25    permitting defendant to withdraw his plea.

26                        3.    The information is not multiplicitous.

27    Defendant's claim that the two counts of bid rigging and two counts of mail fraud are

28    multiplicitous does not provide a fair and just reason to withdraw his guilty plea.  Defendant's claim is

1    untimely, incorrect, and would not result in withdrawal even if successful.

2         Federal Rule of Criminal Procedure Rule 12 (b)(3) lists motions that must be raised by pretrial

3    motion.  These motions include multiplicity.  Fed. R. Crim. P. 12(b)(3)(B)(ii).  The Advisory Committee

4    Notes to Rule 12 explain that "[t]his rule, while requiring the motion to be made before pleading, vests

5    discretionary authority in the court to permit the motion to be made within a reasonable time thereafter."

6    Here, in 2012 the defendant knowingly and voluntarily waived indictment to proceed by information,

7    and without objection pleaded guilty to the information charging two counts of bid rigging and two

8    counts of mail fraud.  Dkt. 7, 8 and 9.  Any "reasonable time thereafter" has long since passed.  The

9    Supreme Court denied a similar argument in *United States v. Broce,* 488 U.S. 563, 571 (1989);

10        When respondents pleaded guilty to two charges of conspiracy on the explicit premise of two
11        agreements which started at different times and embraced separate objectives, they conceded
          guilt to two separate offenses.  Respondents had the opportunity, instead of entering their guilty
12        pleas, to challenge the theory of the indictments and to attempt to show the existence of only
13        one conspiracy in a trial-type proceeding. They chose not to, and hence relinquished that
          entitlement. In light of *Beachner,* respondents may believe that they made a strategic
14        miscalculation. Our precedents demonstrate, however, that such grounds do not justify setting
          aside an otherwise valid guilty plea.

15

16   *see also United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997), as amended (Nov. 18, 1997)

17   (finding defendant waived his multiplicity challenge by not bringing the claim before trial).

18        Even were defendant's motion timely, the counts in the information are not multiplicitous.  To

19   determine whether two conspiracy counts charge the same offense, courts look to the following five

20   factors, though no single factor controls:  (1) the differences in the periods of time covered by the

21   alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons

22   charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged

23   to have been violated.  *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997).  Here, the

24   information alleges separate locations and time periods for two bid-rigging conspiracies (public auctions

25   in San Mateo from September 2010 to January 2011 and in San Francisco during September 2010).  The

26   information alleges that each conspiracy included unnamed co-conspirators, and multiple co-

27   conspirators have pleaded to a single San Francisco *or* a single San Mateo conspiracy.  Any suggestion

28   by defendant that the United States charged others with a single conspiracy based transactions in both

1  San Francisco *and* San Mateo, *see* Mot. 34-35, is unfounded.[13]  Also, each conspiracy had separate

2  objects, as the properties that were rigged at each county auction pertained to those separate counties.

3      Additionally, at the pleading stage, the government need not prove its allegations.  "An

4  indictment must provide the essential facts necessary to apprise a defendant of the crime charged; it need

5  not specify the theories or evidence upon which the government will rely to prove those facts." *United*

6  *States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993).  And any factual arguments concerning

7  multiplicity would require determination by jury, and the defendant waived a jury trial by pleading

8  guilty.  "Where it may not be said that a plea of former jeopardy either does or does not lie as a matter of

9  law from a comparison of the two indictments, then the issue should be submitted to the jury under

10  appropriate instructions." *Arnold v. United States*, 336 F.2d 347, 351 (9th Cir. 1964); *see also United*

11  *States v. Richardson*, 588 F.2d 1235, 1241 (9th Cir. 1978) ("Appellants point out that both conspiracy

12  counts alleged the same overt acts and identical coconspirators. This does indeed suggest one agreement

13  rather than two, but is not sufficient to establish that fact as matter of law. The question whether there

14  was but one agreement remained one of fact for the jury and was resolved against appellants by the

15  verdict.") (internal citation omitted); *see also* Ninth Circuit Model Jury Instruction 8.22, Multiple

16  Conspiracies.

17      Defendant has failed to establish multiplicity.  But even if the information were multiplicitous, it

18  would not permit him to withdraw his plea.  Where a court finds multiplicity in a charging document

19  after a verdict, it may dismiss the multiplicitous conviction without dismissing the charging

20  document.  *See Ball v. United States*, 470 U.S. 856, 865 (1985) (directing the district court to enter

21  judgement on only one statutory offense if a jury returned a guilty verdict to two counts based on the

22  same single act); *U.S. v. Lynn*, 636 F.3d 1127, 1139 (9th Cir. 2011) (multiplicitous indictment remedied

23  by vacating one conviction and remanding for resentencing on other); *U.S. v. Bonilla*, 579 F.3d 1233,

24  1246 (11th Cir. 2009) (multiplicitous indictment remedied by vacating multiplicitous

---

25  [13]      San Mateo only coconspirators include: Gary Anderson (CR 11-00795 CRB); Patrick Campion

26  (CR 11-00796 CRB); Kevin Cullinane (14-cr-00534); Abraham Farag (CR 14-00534); Florence Fung
   (CR 13-00805 CRB); Troy Kent (CR 11-00800 CRB); Henri Pessah (CR 11-00802 CRB); Laith Salma

27  (CR 11-00801 CRB); and Robert Williams (CR 13-00388 CRB).

28      San Francisco only coconspirators include: Kuo Chang (CR 13-00670); James Doherty (CR 11-
   00797); Lydia Fong (CR 12-00301 CRB); Keith Goodman (CR 11-00798 CRB); and Craig Lipton (CR
   11-00799 CRB);

1    convictions).  Here, if the charges were multiplicitous (which they are not), the remedy would be

2    dismissing of one of the two mail-fraud and bid-rigging convictions, not permitting defendant to

3    withdraw his plea.

4          4.   Defendant's other purported defenses fail to establish a fair and just reason for
                withdrawal.

5

6          Defendant's remaining claims fare no better.  Defendant second guesses his plea because a

7    defendant in a similar case was acquitted at trial.  But this has no bearing on defendant's case.  "[A]

8    plea's validity may not be collaterally attacked merely because the defendant made what turned out, in

9    retrospect, to be a poor deal." *Bradshaw*, 545 U.S. at 186; *see also Broce*, 488 U.S. at 572 ("[A]

10   voluntary plea of guilty intelligently made in the light of the then applicable law does not become

11   vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").[14]

12         Likewise, defendant contends that the Court's Order suppressing non-consensual audio

13   recordings, the government's use of informants, and new statements provide fair and just reasons to

14   withdraw his plea.  However, these arguments rely heavily on an *ex parte* declaration that the

15   government has not seen and therefore cannot fully respond to.  *See* Dkt. 61, Exhibit B, Decl. of David

16   Cohen.  Additionally, the "new statements" defendant relies upon are from defendant's father and

17   business partner.  But a new statement from a witness does not provide a basis for withdrawal from a

18   guilty plea when that witness was known to defendant at the time of the plea.  *Showalter*, 569 F.3d at

19   1157.

20         Moreover, these purported defenses miss the import and consequence of a guilty plea.  "When a

21   criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which

22   he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional

23   rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267–68.  Subsequent

24   developments that may have had an effect on a defendant's case are irrelevant:

25   //

26   //

27   //

28   ─────────────────────────────
     [14] Defendant also contends that his circumstances are similar to those of Barry Heinser, a defendant charged in a case before Judge Hamilton, but whose case was subsequently dismissed. *See* Dkt. 61 at 40. This is a curious comparison.  The charges against Mr. Heisner were dismissed because he passed away before being sentenced.  *See* 12-CR-00084 PJH (Dkt. 46-1 and 47).

1    "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent

2    attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on

3    given facts." *Broce*, 488 U.S. at 572 (quotation omitted).

4            Here, defendant's former counsel indicated that the government implied that it had obtained

5    evidence through informants and wires.  Williams Decl. at ¶ 5.  Thus, counsel was aware of the potential

6    evidence and its sources, but likewise recognized that waiting to develop defenses would have come at a

7    potential cost of not being able to offer substantial assistance for the cooperation agreement.  And the

8    Supreme Court has made clear that "[o]ur decisions have not suggested that conscious waiver is

9    necessary with respect to each potential defense relinquished by a plea of guilty."  488 U.S. at 573.

10   Accordingly, the Court's suppression Order, the use of informants, and the new statements alleged by

11   defendant do not provide a basis for defendant to withdraw his plea.

12                          **IV.     CONCLUSION**

13           Defendant's motion to withdraw his plea is strikingly untimely.  If defendant's basis for

14   withdrawal were deficient mail fraud charges, supposedly tainted evidence, or an inadequate Rule 11

15   colloquy, this motion would have been filed years ago.  Instead, the timing and circumstances of

16   defendant's motion show that he has had a change of heart.  But a change of heart is not a fair and just

17   reason permitting him to withdraw his plea.  Moreover, withdrawal would cause significant prejudice to

18   the government at this late stage.  Regardless, defendant's purported reasons for withdrawal fail on the

19   merits.  For the foregoing reasons, defendant's motion to withdraw his plea should be denied and this

20   matter should proceed to sentencing set for March 21, 2018.

21

22

23

24                                               Respectfully submitted,

25   DATED: February 7, 2018            _____/s/_____
                                         ANDREW J. MAST
26                                       U.S. Department of Justice
                                         Antitrust Division
27

28