1    DAVID J. COHEN, ESQ.
     California Bar No. 145748
2    ALEXANDER P. GUILMARTIN, ESQ.
     California Bar No. 30676
3    **BAY AREA CRIMINAL LAWYERS, PC**
     300 Montgomery Street, Suite 660
4    San Francisco, CA 94104
     Telephone:  (415) 398-3900
5
     Attorneys for Defendant **Matthew Worthing**
6

7

8
                    IN THE UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                         SAN FRANCISCO DIVISION
11

12
     UNITED STATES OF AMERICA,          )    Case No. 3:12-cr-00300-CRB
13                                       )
                Plaintiff,               )    **MR.   WORTHING'S   REPLY   TO**
14                                       )    **RESPONSE   TO   MOTION   TO**
     v.                                  )    **WITHDRAW PLEA**
15                                       )
     MATTHEW WORTHING,                   )
16                                       )    Date:   March 2, 2018
                Defendant.               )    Time:  11:00 a.m.
17   _____)    Ctrm.:  6

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3 TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4 I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5 II.     DEFICIENCY IN THE MAIL FRAUD CHARGES REQUIRES
        WITHDRAWAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
6
        A.    The Mail Fraud Charges Are Deficient. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
7       B.    The Government's Opposition to Mr. Worthing's Motion Is An
              Arbitrary and Capricious Decision Amounting to Vindictive Prosecution. . . . . . 12
8
9 III.    DEFICIENCY IN THE COURT'S PLEA COLLOQUY REQUIRES
        WITHDRAWAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10       A.    The Court's Failure to Advise Mr. Worthing of His Appellate Waiver
              Requires Withdrawal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
11       B.    The Court's Failure to Advise Mr. Worthing of the Charges or Their
              Maximum Penalties Requires Withdrawal. . . . . . . . . . . . . . . . . . . . . . . . . 15
12       C.    The Remaining Colloquy Deficiencies, While Rendered Surplusage
              by the Deficiencies Described Above, Are Neither Minor Nor
13             Technical. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14 IV.    MULTIPLICITY OF CHARGES REQUIRES WITHDRAWAL. . . . . . . . . . . . . . . . . 17

15       A.    Improper Multiplicity of Charges Presents a Fair and Just Reason
              for Withdrawal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
16       B.    The Charges in the Information Are Multiplicitous. . . . . . . . . . . . . . . . . . . . 19

17 V.     LACK OF SPECIFICITY OF CONSPIRACY CHARGES REQUIRES
        WITHDRAWAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
18
19 VI.    THE GOVERNMENT'S OFFER TO AGREE TO A PLEA WITHDRAWAL
        ACTED AS AN IMPLICIT CONCESSION OF THE INVALIDITY OF MR.
        WORTHING'S PLEA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
20
21 VII.   LEGAL AND FACTUAL DEVELOPMENTS REQUIRE WITHDRAWAL. . . . . . . . 24

22 VIII.  MR. WORTHING'S MOTION TO WITHDRAW HIS PLEA IS NOT
        UNTIMELY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
23 IX.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

24

25

26

27

28

2

## <u>TABLE OF AUTHORITIES</u>

<u>Case Law</u>                                                                   <u>Page(s)</u>

*Boykin v. Alabama*
    395 U.S. 238 (1969)..................................................... 9

*Brady v. Maryland*
    373 U.S. 83 (1963)..................................................... 9

*Campbell v. Marshall*
    769 F.2d 314 (6th Cir. 1985)............................................ 25

*Class v. United States*
    2018 U.S. LEXIS 1378 at 12 (Feb. 21, 2018)......................... 9, *passim*

*Cleveland v. United States*
    531 U.S. 12 (2000)..................................................... 10

*Eller v. EquiTrust Life Ins. Co.*
    778 F.3d 1089 (9th Cir. 2015).......................................... 10

*Ferrara v. United States*
    384 F.Supp. 2d 384 (D. Mass. 2005)..................................... 25

*Jacobson v. United States*
    503 U.S. 540 (1992).................................................... 26

*Loughrin v. United States*
    134 S.Ct. 2384 (2014)................................................. 10

*Mabry v. Johnson*
    467 U.S. 504 (1984).................................................... 18

*Silva v. U.S. Bancorp*
    2011 U.S. Dist. LEXIS 152817 at 3 (C.D. Cal. Oct. 6, 2011)........... 21

*Tapia v. Wells Fargo Bank, NA*
    2015 U.S. Dist. LEXIS 102837 at 2 (C.D. Cal. Aug. 4, 2015)......... 21

*Thomas v. United States*
    290 F.2d 696 (9th Cir. 1961)....................................... 9, *passim*

*United States v. Alvarez*
    835 F.3d 1180 (9th Cir. 2016).......................................... 17

*United States v. Angela Ruiz*
    241 F.3d 1157 (9th Cir. 2001).......................................... 22

*United States v. Arellano-Gallegos*
    387 F.3d 794 (9th Cir. 2004)...................................... 13, *passim*

*United States v. Arqueta-Ramos*
    730 F.3d 1133 (9th Cir. 2013).......................................... 16

*United States v. Baramdyka*
    95 F.3d 840 (9th Cir. 1996)............................................ 22

# TABLE OF AUTHORITIES

**Case Law**                                                                    **Page(s)**

*United States v. Baty*
    980 F.2d 977 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Becerra*
    992 F.2d 960 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Broce*
    488 U.S. 563 (1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Bushert*
    997 F.2d 1343 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Cecil*
    608 F.2d 1294 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Curtis*
    506 F.2d 985 (10th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Dayton*
    592 F.2d 253 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Doty*
    2016 U.S. Dist. LEXIS 122321 at 19 (D. Nev. Mar. 1, 2016).. . . . . . . . . . . . . . . . . . . 19

*United States v. Ensminger*
    567 F.3d 587 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Garcia*
    698 F.2d 31 (1st Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Gurolla*
    333 F.3d 944 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Johnson*
    130 F.3d 1420 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Jones*
    472 F.3d 1136 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Josten*
    704 F.Supp. 841 (N.D. IL1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. King*
    713 Supp.2d 1207 (D. Haw. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Klinger*
    128 F.3d 705 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, *passim*

*United States v. Martinez*
    518 F. App'x 559 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Case Law</u>                                                                      <u>Page(s)</u>

3

*United States v. McTiernan*
4      546 F.3d 1160 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, *passim*

5 *United States v. Morales-Escobedo*
     367 F. App'x 804 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
6

*United States v. Nance*
7      533 F.2d 699 (D.C. Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 *United States v. One 1985 Mercedes*
     917 F.2d 415 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
9

*United States v. Pena*
10      314 F.3d 1152 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 *United States v. Perez-Cisneros*
     461 F. App'x 564 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
12

*United States v. Pugh*
13      668 F.App'x 273 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14 *United States v. Santos*
     481 F. App'x 346 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
15

*United States v. Smith*
16      60 F.3d 595 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17 *United States v. Stoddard*
     111 F.3d 1450 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, *passim*
18

*United States v. Swafford*
19      512 F.3d 833 (6th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

20 *United States v. Valdez*
     585 F. App'x 656 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
21

*United States v. Villalobos*
22      333 F.3d 1070 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23 *United States v. Watson*
     582 F.3d 974 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, *passim*
24

*United States v. Wessells*
25      936 F.2d 165 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26 *United States v. Yefsky*
     994 F.2d 885 (1st Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

27

28

# TABLE OF AUTHORITIES

## Case Law
Page(s)

*Walsh v. Nev. Dep't of Human Res.*
471 F.3d 1033 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wayte v. United States*
470 U.S. 598 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Statutes and Regulations

*Federal Rules of Criminal Procedure*

11(b)(1)(G). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
11(b)(1)(H). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, *passim*
11(b)(1)(N). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
11(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1  DAVID J. COHEN, ESQ.
   California Bar No. 145748
2  ALEXANDER P. GUILMARTIN, ESQ.
   California Bar No. 30676
3  **BAY AREA CRIMINAL LAWYERS, PC**
   300 Montgomery Street, Suite 660
4  San Francisco, CA 94104
   Telephone:  (415) 398-3900
5
   Attorneys for Defendant **Matthew Worthing**
6

7

8
                IN THE UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10
                   SAN FRANCISCO DIVISION
11

12
   UNITED STATES OF AMERICA,          )    Case No. 3:12-cr-00300-CRB
13                                     )
              Plaintiff,               )    **MR.  WORTHING'S  REPLY  TO**
14                                     )    **RESPONSE   TO   MOTION   TO**
   v.                                  )    **WITHDRAW PLEA**
15                                     )
   MATTHEW WORTHING,                   )
16                                     )    Date:   March 2, 2018
              Defendant.               )    Time:  11:00 a.m.
17  _____   )    Ctrm.: 6

18                              **I.**

19                        **INTRODUCTION**

20         It is inaccurate to say that the government opposes the withdrawal of Mr. Worthing's plea.

21  It has in fact already extended an offer to agree to allow Mr. Worthing to do so, evidently because

22  it acknowledges that Mr. Worthing should not be prosecuted for fraud. *See* doc. no. 45 ["Like the

23  *Giraudo* defendants and defendants before Judge Hamilton, the United States no longer intends to

24  pursue mail-fraud charges against the above-captioned defendants."]. What the government opposes

25  is the withdrawal of Mr. Worthing's plea *in this manner*, without an assurance that Mr. Worthing

26  will immediately re-plead to the government's preferred charging document. For that reason, it

27

28

1 claims that Mr. Worthing, unlike every other defendant in the case, should not be permitted an

2 opportunity to withdraw his plea.

3     To make that argument, the government denies the illegality of the charging document to

4 which Mr. Worthing pled, contending that the mail fraud charges are proper and that the dual counts

5 are not multiplicitous. It does not address Mr. Worthing's remaining arguments regarding a lack of

6 specificity, nor does it fully address Mr. Worthing's arguments regarding the factual and legal

7 developments that have transpired since the entry of his plea. And although the government

8 acknowledges deficiencies in the Court's plea colloquy, it argues Mr. Worthing's plea was

9 knowingly and intelligently entered, and for that reason, should not be withdrawn.

10     Of course, Mr. Worthing need not show that his plea was involuntary, just as he need not

11 show that he will not benefit from its withdrawal (as the government implies he must by its

12 contention that the reasons Mr. Worthing has proffered for his withdrawal are "pretextual"). To

13 justify withdrawal of his plea, Mr. Worthing need only present a "fair and just reason" (Fed. R. Crim.

14 P. 11(d)(2)), which cannot be defeated by the government's cry of "prejudice" in the form of the self-

15 evident need to reinstate prosecution following a withdrawal. A fair and just reason for withdrawing

16 a plea may exist even where " the plea is otherwise valid," (*United States v. McTiernan*, 546 F.3d

17 1160, 1167 (9th Cir. 2008)), and may "include inadequate Rule 11 plea colloquies, newly discovered

18 evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist

19 when the defendant entered his plea." *United States v. Ensminger*, 567 F.3d 587, 590-91 (quoting

20 *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007)); *see also McTiernan*, 546 F.3d at 1167

21 (same).

22     The government is forced to acknowledge the existence of many of the defects in the plea,

23 information, or proceedings. What it consistently turns to is its claim that these defects and

24 circumstances do not present a fair and just reason for Mr. Worthing to withdraw his plea. It also

25 consistently fails to provide authority to substantiate that position, instead turning to post-conviction

26 cases in which appeals or collateral attacks were denied, rather than referring to pre-sentencing

27 withdrawal cases, in which a "generous" and "liberal" standard applies. *McTiernan*, *supra*, 546 F.3d

28

at 1167. Even this Court has fallen into that tempting trap of reliance on inapposite case law; during the February 9, 2018 hearing on Mr. Worthing's motion to compel discovery, it referenced *Thomas v. United States*, 290 F.2d 696 (9th Cir. 1961). *Thomas*, a per curiam decision predating the current standard for withdrawal of a guilty plea,[1] did not involve a plea withdrawal at all, but rather, a 28 U.S.C. § 2255 habeas petition. The petitioner, who had plead guilty, requested habeas relief on the basis of an asserted illegal search, and the Court denied the petition. *Id*. at 697. This case sheds no light on the merits of Mr. Worthing's claims, and like several of the cases cited by the government, has nothing to do with the question of whether any of the many arguments Mr. Worthing has raised constitutes a fair and just reason to permit withdrawal of his plea.[2]

In fact, Mr. Worthing has presented several fair and just reasons, some of which Courts have already recognized as warranting withdrawal of a guilty plea. These reasons, which include the illegality of the information (due to its multiplicity and lack of specificity) and the inadequacy of the Court's plea colloquy, exist separate and apart from the assistance that was provided by plea counsel, and they can be analyzed without consideration of whether counsel rendered effective (or even exemplary) assistance. The government may well wish to punish Mr. Worthing for refusing to abide by its chosen course of action for other, related defendants; tellingly, its response lacks any real opposition to Mr. Worthing's arguments that its actions in doing so are capricious and unlawful. But the government's dissatisfaction with Mr. Worthing's refusal to accept its preferred procedure has no bearing on the merits of Mr. Worthing's arguments in support of his motion. Mr. Worthing should be permitted to withdraw his plea for all of the reasons outlined in his moving papers.

---

[1] *Thomas* also predates entirely the dramatic 1975 revisions to Fed. R. Crim. P. 11, *Boykin v. Alabama*, 395 U.S. 238 (1969), *Brady v. Maryland*, 373 U.S. 83 (1963), and nearly every case cited by Mr. Worthing in his papers.

[2] Even though he has not yet been sentenced and is not raising his claims on appeal, Mr. Worthing notes that the mere fact of his guilty plea still would not bar some of his claims on appeal. Claims going to the propriety of the prosecution are "consistent with [a defendant's] knowing, voluntary, and intelligent admission that he did what the indictment alleged," and thus are cognizable on direct appeal following a plea. *Class v. United States*, No. 16-424, 2018 U.S. LEXIS 1378, at *12 (Feb. 21, 2018).

## II.

## DEFICIENCY IN THE MAIL FRAUD CHARGES REQUIRES WITHDRAWAL.

The mail fraud counts to which Mr. Worthing pled were insufficiently pleaded in the information. This conclusion has already been reached by Judge Hamilton, and it must likewise be reached here. For its part, the government offers no arguments on this issue that were not already presented to Judge Hamilton, and cites no authority for its contention that its basic tracking of the language of the statute is sufficient to identify with specificity the offense charged. And it misunderstands the impact of Judge Hamilton's ruling; it is not merely the ruling by Judge Hamilton that itself provides the fair and just reason for the withdrawal of Mr. Worthing's plea, it is the logic and sound legal reasoning contained therein, which existed even before it was put to the precise words Judge Hamilton used. That is, Mr. Worthing has presented a fair and just reason for withdrawal because the mail fraud charges against him are plainly insufficient and unspecific, and that reason exists independently of Judge Hamilton's similar ruling or the adequacy of the assistance of plea counsel.

The government also fails to absolve itself of the implication of capriciousness that follows its opposition to Mr. Worthing's request to do just what the government had previously offered to permit.

### A.      The Mail Fraud Charges Are Deficient.

The government does not deny that it has failed to identify any affirmative misrepresentation, non-disclosure, or duty to disclose. It also does not deny that even if Mr. Worthing were to guess at the misrepresentation or non-disclosure it was alleging, it has failed to identify any theory of materiality under which the statements would fall. Instead, it resorts to citation to general legal tenets in order to claim that it need not identify any of these things.

The government is incorrect. As Mr. Worthing explained, with full legal authority, in his motion, an affirmative misrepresentation or non-disclosure is required to sustain a conviction for mail fraud. *Eller v. EquiTrust Life Ins. Co.*, 778 F3d 1089, 1092 (9th Cir. 2015); *see also Cleveland v. United States*, 531 U.S. 12, 26 (2000); *Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014).

1   The government must allege what that misrepresentation or non-disclosure consisted of, not merely

2   allege that one occurred. *See United States v. Nance*, 533 F.2d 699, 700 (D.C. Cir. 1976); *United*

3   *States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974) (cited with approval in *United States v. Cecil*,

4   608 F.2d 1294, 1297 (9th Cir. 1979); *United States v. Josten*, 704 F.Supp. 841, 842 (N.D. IL1989);

5   *see also United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993). Because the government did not

6   allege a specific misrepresentation or non-disclosure (or any acts amounting to such), it has failed

7   to do that which it is required to do, and the resulting information is deficient for that reason.

8        Likewise, the government argues that its failure to incorporate the bid-rigging counts is not

9   fatal to the information. It is unclear how the government hopes to argue the mail fraud counts stand

10  on their own, without reference to the bid-rigging counts, while simultaneously arguing that the

11  nature of the misrepresentations (or non-disclosures) involved in the fraud counts can be inferred

12  from the bid-rigging counts. What is clear is that either way, the information is deficient. The fraud

13  charges cannot stand on their own, as they fail to allege with any degree of specificity any

14  misrepresentation or non-disclosure. Without incorporation of the bid-rigging counts, this Court can

15  look no farther, and the government has no remedy for its insufficiently pled charges. The

16  government is necessarily unable to suggest any scheme to defraud without reference to the overall

17  bid-rigging scheme, and Mr. Worthing could not possibly be convicted of the fraud with which he

18  is charged without also being convicted of the bid-rigging conspiracy which is also charged, but not

19  incorporated.

20       As the Supreme Court just recently made clear, the issue of a structurally deficient charge

21  is one that Mr. Worthing would be able to raise on appeal. *See Class v. United States*, No. 16-424,

22  2018 U.S. LEXIS 1378, at *12 (Feb. 21, 2018) [recognizing cognizability on appeal of claims

23  "consistent with [a defendant's] knowing, voluntary, and intelligent admission that he did what the

24  indictment alleged"]. The fact that Mr. Worthing's claim would be cognizable on appeal (and is one

25  a Court in this district recognized as sufficient to warrant dismissal) naturally leads to the conclusion

26  that this claim must also present a fair and just reason for withdrawal; it is not one that Mr. Worthing

27  waived or otherwise lost his right to pursue by virtue of his plea.

28

1

2

**B.**     <u>The Government's Opposition to Mr. Worthing's Motion Is an Arbitrary and Capricious Decision Amounting to Vindictive Prosecution.</u>

3

4

The government, of course, knows everything posited above. Their feigned ignorance of the

5

law is a result of their desire to punish Mr. Worthing for not agreeing to their "re-plea" offer, an offer

6

they extended to every other related defendant. The government extended this offer "to achieve

7

parity with the defendants in similarly situated cases." Doc. no. 45. It also did so, as Mr. Worthing

8

explained in his motion, because it acknowledged there existed some infirmity in Mr. Worthing's

9

plea. Since the government made its offer, nothing has changed other than the litigation at issue. Mr.

10

Worthing's entitlement to "parity" is no different now than it was before, and the existence of a

11

defect in Mr. Worthing's plea would not have disappeared with the passage of time. Yet the

12

government has changed its position in regards to Mr. Worthing, distinguishing him from every other

13

defendant on the basis of nothing more than the fact that he has brought his own motion to withdraw

14

his plea. With arbitrariness and capriciousness, the government opposes Mr. Worthing doing exactly

15

that which it previously agreed to allow him to do. But the prosecutor is not the overseer of the

16

criminal process, and it does not get to pick and choose how a defendant's rights are vindicated.

17

Despite the government's claim that a structural defect in the fraud charges cannot present a fair and

18

just reason for withdrawal specifically because Mr. Worthing has rejected the government's

19

proposed "re-plea" procedure, a fair and just reason does not evaporate because the defendant does

20

not wish to remedy it in the precise manner that the government hopes to. Rather than create a clear

21

appealable issue (*see Class v. United States*, No. 16-424, 2018 U.S. LEXIS 1378, at *12 (Feb. 21,

22

2018)), the government should be seeking to resolve this legal contention below, and withdrawal is

23

the most efficient remedy by which to do so.

24

Mr. Worthing is entitled to a withdrawal of his plea. The government admitted as much when

25

it agreed to allow him to withdraw his plea. In a show of vindictiveness, the government has had a

26

change of heart. This Court need not be similarly swayed.

27

28

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

1

**III.**

2

**DEFICIENCY IN THE COURT'S PLEA COLLOQUY REQUIRES WITHDRAWAL.**

3      Of the advisements required by Rule 11, the record of the plea colloquy shows Mr. Worthing

4    was not properly advised as to six of them. The government admits the Court failed to provide all

5    of these advisements, though argues that five of them were inferred by other statements during the

6    hearing. It contends these litany of errors were all harmless, and posits the irrelevant argument that

7    Mr. Worthing's plea was voluntary despite the inadequate colloquy. Reference to both statutory and

8    case law shows that, contrary to the government's defenses, withdrawal of Mr. Worthing's guilty

9    plea is appropriate.

10   **A.      The Court's Failure to Advise Mr. Worthing of His Appellate Waiver Requires
          Withdrawal.**

11

12       Fed. R. Crim. P. 11(b)(1)(N) requires the Court advise a defendant of "the terms of any plea-

13    agreement provision waiving the right to appeal or to collaterally attack the sentence." Contrary to

14    the government's argument, the fact that Mr. Worthing's plea agreement contained a "provision

15    waiving the right to appeal or to collaterally attack the sentence" is not a reason to ignore the Court's

16    noncompliance with Rule 11(b)(1)(N), but a *prerequisite* to that provision's application. Rule

17    11(b)(1)(N) only applies where a defendant's plea agreement contains an appellate waiver provision,

18    and it specifically requires a Court provided with such an agreement to ensure the defendant

19    understands the substantial right he is waiving.

20       The government cites no fewer than nine cases recognizing the importance of a proper

21    appellate waiver advisement during the plea colloquy, all of which made clear that once a defendant

22    is sentenced, his waiver cannot be enforced where the Court's colloquy was inadequate. The

23    government suggests that the repeated provision of this dramatic, post-conviction remedy implies

24    that the less dramatic, pre-sentencing remedy of withdrawal of a plea is not appropriate. This

25    argument is plainly spurious, as every case cited involved a post-conviction challenge to the plea

26    colloquy, rather than pre-sentencing motion to withdraw.[3]

27

28   [3] *See United States v. Arellano-Gallegos*, 387 F.3d 794 (9th Cir. 2004) [defendant's appeal heard because
     appellate waiver was invalid]; *United States v. Pugh*, 668 F. App'x 273 (9th Cir. 2016) [relying on

1    A waiver of appellate rights is not a mere "minor or technical" portion of a defendant's plea,

2    and the fact that Mr. Worthing was not properly advised as to his appellate waiver cannot simply be

3    ignored, as the government would have it be. By entering this plea pursuant to this specific plea

4    agreement, Mr. Worthing sacrificed a fundamental constitutional right. Rule 11(b)(1)(N) exists in

5    order to ensure a defendant making such a sacrifice does so with full knowledge of what he is doing,

6    and guarantees that the Court, rather than the government or counsel, specifically advises him of the

7    nature of that waiver. The government may suspect that Mr. Worthing's former counsel adequately

8    explained all of the terms of the plea agreement. But it does not know that is the case, and

9    importantly, that is not what Rule 11 requires in any event. An appellate waiver, and a defendant's

10   full knowledge of it, is a substantial right; Rule 11(h) by its language forbids such a Court's failure

11   to advise of such a "substantial right" from being considered harmless error. And the Court will only

12   have the option to satisfy itself as to a defendant's knowledge of an advisement by looking to the

13   plea agreement where there is also something else in the record to corroborate a belief of the

14   defendant's knowledge. *See United States v. Arellano-Gallegos*, 387 F.3d 794, 796-97 (9th Cir.

15   2004) [presence of advisement of appellate waiver in plea agreement did not cure Court's failure to

16   advise on the record]; *United States v. Villalobos*, 333 F.3d 1070, 1074 (9th Cir. 2003).

17   Because the Court did not advise Mr. Worthing of the appellate waiver in his plea agreement,

18   its plea colloquy was inadequate and Mr. Worthing must be permitted to withdraw his plea

19   accordingly.

20

21

22

23   *Arellano-Gallegos* for same]; *United States v. Valdez*, 585 F. App'x 656 (9th Cir. 2014) [relying on

24   *Arellano-Gallegos* for same]; *United States v. Martinez*, 518 F. App'x 559 (9th Cir. 2013) [relying on
     *Arellano-Gallegos* for same]; *United States v. Santos*, 481 F. App'x 346 (9th Cir. 2012) [relying on

25   *Arellano-Gallegos* for same]; *United States v. Morales-Escobedo*, 367 F. App't 804 (9th Cir. 2010) [relying
     on *Arellano-Gallegos* for same]; *United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009) [defendant's

26   appeal waived because ambiguous comment by plea judge did not invalidate appellate waiver]; *United States*

27   *v. Bushert*, 997 F.2d 1343, 1353 (11th Cir. 1993) [defendant's appeal heard because appellate waiver was
     not knowing and voluntary]; *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) [same]; *United States*

28   *v. Wessells*, 936 F.2d 165 (4th Cir. 1991) [same].

**B.      The Court's Failure to Advise Mr. Worthing of the Charges or Their Maximum Penalties Requires Withdrawal.**

It is clear from the record of Mr. Worthing's plea that he was not advised of either "the nature of each charge" (as required by Rule 11(b)(1)(G)) nor the "maximum possible penalty" stemming from those omitted charges (as required by Rule 11(b)(1)(H)). The government responds to this inadequacy of the plea colloquy by essentially asking it be ignored, in clear contravention of the law.

The government argues that the Court's failure to advise Mr. Worthing of the maximum penalties for two of the four counts to which  he pled was harmless, citing an unpublished, post-conviction appellate opinion that analyzed an inadequate colloquy under plain error review, one that should have little application here. *See United States v. Perez-Cisneros*, 461 F. App'x 564, 565-66 (9th Cir. 2011). More telling, however, is the fact that the government cites no case, and does not even attempt to argue, that a court's failure to advise a defendant of the nature of charges altogether is harmless error. Rather, such a fundamental defect in the plea colloquy clearly rises to the level of reversible error, and no party argues otherwise. In his moving papers, Mr. Worthing pointed to a number of opinions holding that a court's failure to advise as to the full and complete nature of every charge to which a defendant was pleading constituted reversible error. *See*, *e.g.*, *United States v. Villalobos*, 333 F.3d 1070, 1073 (9th Cir. 2003) [reversing for failure to advise as to proper burden of proof on drug quantity].

Rather than futilely argue that a court's failure to advise a defendant of the nature of the charges is harmless error, the government instead makes three equally unavailing points: (1) the government's and clerk's reference to "four counts," (2) the Court's reference to the plea agreement, and (3) the lack of a declaration from Mr. Worthing. None of these facts cure the colloquy's deficiency. That the prosecutor (when addressing the Court) described Mr. Worthing as being "charged with four counts" and the clerk thereafter asked for a plea to "Counts One Through Four" is plainly insufficient to constitute an advisement of the "nature of each charge." That Mr. Worthing's plea agreement listed the four counts to which he was pleading is likewise of no consequence, as the Ninth Circuit has rejected the notion that a description of the charges in a plea agreement is insufficient to satisfy the requirement that the Court advise a defendant of the nature

1   of the charges during the oral plea colloquy. *United States v. Smith*, 60 F.3d 595 (9th Cir. 1995)

2   [prosecutor's recitation of the factual basis for the plea, the plea agreement itself, and the defendant

3   and counsel's recitations that they had discussed the nature of the charges with one another was

4   insufficient]; *United States v. Pena*, 314 F.3d 1152, 1156 (9th Cir. 2003) ["Merely asking Pena

5   whether he had read the plea agreement and asking his attorney whether the attorney, not Pena,

6   understood and agreed with the elements of the offense is insufficient."]; *United States v. Marifat*,

7   No. 2:11-CR-0039 WBS, 2017 U.S. Dist. LEXIS 62023, at *4 (E.D. Cal. Apr. 24, 2017) [plea

8   agreement's advisement of right to subpoena witnesses combined with "court's intuition" that

9   defendant knew of his right was insufficient where defendant was not advised of his right on the

10  record of the plea hearing]. And there exists no requirement that Mr. Worthing attest to his

11  misunderstanding of his plea in order to be able to withdraw it; to the contrary, it is the government's

12  burden to show Mr. Worthing understood his plea in order to oppose such a motion:

> But it is not her burden to show that she would not have pled guilty absent the Rule 11 error; it is the government's burden to show that she *would* have pled guilty absent the error. *See id.*; *Jimenez-Dominguez*, 296 F.3d at 866 ("The harmless error standard, *which imposes the burden upon the government* to show that the error had no effect on the defendant's substantial rights, applies to any transgression of Rule 11 which was raised before the trial court." (emphasis added)); *see also* Fed. R. Crim. P. 11 advisory committee notes (explaining that "subdivision (h) should not be read as supporting extreme or speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards").

18  *United States v. Arqueta-Ramos*, 730 F.3d 1133, 1141-42 (9th Cir. 2013).

19      It is undeniable that the record of the plea hearing indicates the Court did not advise Mr.

20  Worthing of the full nature and consequences of the charges to which he was pleading, omitting

21  wholesale any explanation of two of the four counts. There are few Rule 11 colloquy violations that

22  might be considered more egregious. Withdrawal is required. *See* Fed. R. Crim. P. 11(h) [failure to

23  advise is only harmless error "if it does not affect substantial rights"].

24  **C.   The Remaining Colloquy Deficiencies, While Rendered Surplusage by the Deficiencies Described Above, Are Neither Minor Nor Technical.**

25      In addition to the noted fundamental deficiencies in the Court's Rule 11 colloquy, it also

26  failed to advise Mr. Worthing as to its obligation to impose a special assessment, the possibility of

27  restitution, and the penalty of perjury for defendant's false statements. The government admits the

28

Court never informed Mr. Worthing that it would be obligated to impose a special assessment, as it points only to the prosecutor's reference to a special assessment in the maximum possible penalty (while also arguing, when contending that the failure to fully recite the maximum possible penalty was harmless, that it was understood there was no chance the maximum penalty would ever be imposed upon Mr. Worthing). It also admits that the Court made no reference to restitution, with the only reference again coming in passing from the prosecutor. And it explicitly concedes that the Court never informed Mr. Worthing his statements were taken under penalty of perjury.

The government is unable to cite any authority that is either in-Circuit or published for its position that these deficiencies were harmless; although the government *does* rely on a Ninth Circuit case to argue that an absence of a reference to restitution in a plea colloquy is harmless error, its doing so is actively misleading, as that opinion premised its holding on the fact that the defendant stated on the record "I know I do have to pay restitution for the vehicle that was damaged. I know that for a fact, and I have no problem doing that." *United States v. Alvarez*, 835 F.3d 1180, 1188 (9th Cir. 2016). Courts *have* spoken to the materiality of restitution when such penalties were significant in amount. *United States v. Garcia*, 698 F.2d 31, 36 (1st Cir. 1983).

Because it is clear that the record of the Court's plea colloquy contains no reference to Mr. Worthing's appellate waiver nor an explanation of the nature of all charges, the Court's other errors in its colloquy are arguably rendered surplusage; withdrawal would be appropriate even if those other errors did not exist. The fact that those errors *do* exist speaks to the weight of the inadequacy of the plea colloquy, as it is replete with omissions and mischaracterizations that cannot be shrugged off as insignificant. Separate and apart from all of the other arguments Mr. Worthing has made in his motion, the deficiencies he has identified in the Court's plea colloquy are sufficient in and of themselves to warrant withdrawal.

## IV.

## MULTIPLICITY OF CHARGES REQUIRES WITHDRAWAL.

To justify the withdrawal of a plea, a defendant need only present a fair and just reason. The underlying illegality of the charging document must constitute such a fair and just reason, and in

1    addition to the arguments Mr. Worthing has presented regarding specificity, the information here is

2    also rendered invalid by the multiplicity of the charges contained therein. The information to which

3    Mr. Worthing pled contained two counts each of bid-rigging and mail fraud. These counts are

4    multiplicitous, and improper for that reason.

5    **A.     Improper Multiplicity of Charges Presents a Fair and Just Reason for Withdrawal.**

6            The government argues that the remedy for a multiplicitous information is not the withdrawal

7    of the plea, but the dismissal of the multiplicitous count(s). The cases cited by the government do

8    not stand for the proposition that multiplicity of charges cannot provide a fair and just reason for

9    withdrawal of a plea, nor do they even deal with plea withdrawals at all. Rather, both cases dealt

10   with post-conviction challenges to indictments, and both cases dismissed these attacks for different

11   reasons.

12           In *Broce*, the first case the government cites, the Supreme Court held that the defendants

13   could not raise for the first time in a collateral attack on their convictions a claim of multiplicity of

14   charges. The issue was settled by the simple principle that "[i]t is well settled that a voluntary and

15   intelligent plea of guilty made by an accused person, who has been advised by competent counsel,

16   may not be collaterally attacked." *United States v. Broce*, 488 U.S. 563, 571 (1989), quoting *Mabry*

17   *v. Johnson*, 467 U.S. 504, 508 (1984). *Broce* did not speak to withdrawal of pleas, did not hold that

18   the entry of a guilty plea eliminates any ability to raise the issue of multiplicity, and clearly did not

19   suggest that a defendant's plea to an illegal information must be maintained even where he seeks to

20   withdraw it prior to sentencing.

21           Similar only in its inapplicability, *Klinger*, also cited by the government, involved a

22   defendant who was convicted at trial and attempted to raise a multiplicity challenge for the first time

23   on appeal. The Ninth Circuit held that a defendant could not raise such a challenge for the first time

24   on appeal because his failure to raise it prior to his conviction by the jury acted as a waiver. *United*

25   *States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997). Like *Broce*, *Klinger* did not involve a motion

26   to withdraw a plea, and it did not address whether a guilty plea acted to prevent a defendant from

27

28

1   moving to withdraw that plea on the basis of the illegality of the information. Indeed, *Klinger* did

2   not involve a guilty plea at all.

3          Perhaps because it can identify no authority for the proposition that multiplicity can never

4   provide a fair and just reason for withdrawal of a plea, the government also argues that the question

5   of multiplicity is one for the jury, and that it follows therefrom that multiplicity cannot be addressed

6   in a motion to withdraw a plea (or, presumably, in any pretrial motion). This is simply incorrect.

7   Various Circuits, as well as district courts within this Circuit, have made clear that a multiplicity

8   challenge can be raised and resolved prior to trial (and the presentation of the facts to a jury). *See*,

9   *e.g.*, *United States v. Swafford*, 512 F.3d 833, 844-45 (6th Cir. 2008); *United States v. Johnson*, 130

10  F.3d 1420, 1426 (10th Cir. 1997); *United States v. Doty*, No. 2:15-cr-00133-LRH-PAL, 2016 U.S.

11  Dist. LEXIS 122321, at *19 (D. Nev. Mar. 1, 2016); *United States v. King*, 713 F. Supp. 2d 1207,

12  1218 (D. Haw. 2010). This makes sense, as even the government's own case recognizes that a

13  motion to dismiss for multiplicity must be raised pre-trial. *United States v. Klinger*, 128 F.3d 705,

14  708 (9th Cir. 1997); *see also United States v. Smith*, 424 F.3d 992, 1000 n.4 (9th Cir. 2005). A

15  similar issue, insufficient specificity of the charges, has been held to warrant withdrawal using a

16  more lenient standard than that applied to a specificity challenge raised on appeal. *United States v.*

17  *Dayton*, 592 F.2d 253, 256 (5th Cir. 1979).

18  **B.     The Charges in the Information Are Multiplicitous.**

19         In his motion, Mr. Worthing noted that the government's information failed to satisfy three

20  of the five prongs in the *Arnold* test for multiplicity of conspiracy counts: "(3) the persons charged

21  as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to

22  have been violated." *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997). In its

23  opposition, the government likewise acknowledged that it had satisfied only two of the prongs of that

24  test, pointing to the fact that the "information alleges separate locations and time periods." The

25  government does not identify any of the unnamed co-conspirators, nor any other distinction between

26  the dual counts in the information. It does not rebut many of Mr. Worthing's specific arguments in

27  his motion, and fails to explain how it can be that each conspiracy was isolated to the county it

28

1   occurred in, yet still encompassed every transaction in that county and involved long-running

2   agreements between many people who were involved in multiple counties.

3        The government does somewhat confusingly state that "[a]ny suggestion by defendant that

4   the United States charged others with a single conspiracy based transactions in both San Francisco

5   *and* San Mateo, *see* Mot. 34-35, is unfounded." Doc. no. 78. It is unclear what exactly the

6   government means with this assertion, but it is abundantly clear that it has chosen to prosecute with

7   only a single bid-rigging count both (1) individuals who were involved in transactions in multiple

8   counties and (2) individuals who were involved in multiple transactions in a single county. As an

9   example with which this Court is undoubtedly familiar, Kevin Cullinane, as one of the "Big Five,"

10  was involved in dozens of transactions in both San Mateo and San Francisco Counties. Yet he was

11  charged with only one count of bid-rigging in San Mateo County. *See* 3:14-cr-00534-CRB-3, doc.

12  no. 1. Mr. Worthing, by contrast, was charged with two counts of bid-rigging, despite having no

13  greater involvement in either county than Mr. Cullinane. The arbitrariness of this charging decision

14  belies the fallacy in the government's choice to charge some defendants with multiple counts of bid-

15  rigging.

16       As Mr. Worthing argued in his motion, the fact that the government attempts to divide up

17  a single conspiracy into multiple counts by differentiating the charges by location does not eliminate

18  the improper multiplicity of the charging document. *See Stoddard*, *supra*, 111 F.3d at 1454-1456.

19  As the proceedings have progressed, it has become clear that the government is alleging a large,

20  overarching conspiracy, organized by the "Big Five," to rig real estate auctions in San Francisco and

21  San Mateo Counties. The information indicates this on its face, as it does not differentiate between

22  the two counts of bid-rigging in any way other than time and place. The multiplicity of these counts

23  provide Mr. Worthing a fair and just reason to withdraw his plea, so that he may ensure he is not

24  convicted unlawfully and in violation of double jeopardy.

25

26

27

28

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

20

**V.**

**LACK OF SPECIFICITY OF CONSPIRACY CHARGES REQUIRES WITHDRAWAL.**

In his motion to withdraw his plea, Mr. Worthing argued that the information's lack of specificity as to all counts warrants withdrawal, as the charges are premised on an insufficiently pleaded overarching conspiracy between unidentified individuals. In its response, the government neglects to address this argument entirely, effectively conceding Mr. Worthing's position. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to address issue in opposition deemed waiver); *Tapia v. Wells Fargo Bank, NA*, No. CV1503922DDPAJWX, 2015 U.S. Dist. LEXIS 102837, 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015) ("This contention is not addressed in the opposition. The Court therefore deems any objection to the motion to dismiss claims against Wachovia Mortgage waived."); *Silva v. U.S. Bancorp*, No. 5:10-CV-01854-JHN, 2011 U.S. Dist. LEXIS 152817, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("In addition, the Court finds that Plaintiff concedes his recordkeeping claim should be dismissed by failing to address Defendants' arguments in his Opposition."). Presumably, the government has not stated a reasonable opposition to Mr. Worthing's arguments because one does not exist. On this basis alone, withdrawal of Mr. Worthing's plea is warranted.

**VI.**

**THE GOVERNMENT'S OFFER TO AGREE TO A PLEA WITHDRAWAL ACTED AS AN IMPLICIT CONCESSION OF THE INVALIDITY OF MR. WORTHING'S PLEA.**

Just as it ignores Mr. Worthing's arguments regarding the insufficient specificity of the conspiracy allegations in the information, the government also fails to offer any substantial rebuttal to Mr. Worthing's argument that it has already implicitly conceded the correctness of Mr. Worthing's position. When the government offered to agree to allow Mr. Worthing to withdraw his plea, it acknowledged the invalidity of that plea. The government offers a rote denial that its offer was an acknowledgment of the plea's illegality, describing it instead as an act of spontaneous prosecutorial discretion. This claim is contradicted by the record. But as Mr. Worthing noted in his motion, even if the government were correct about the impetus for its offer, the plea withdrawals that have occurred in the related prosecutions (and the offer of which was extended to Mr. Worthing)

could not occur in a vacuum. Parties cannot simply stipulate to something unlawful, such as, for example, a waiver of the right to appeal an illegal sentence. *See United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996); *United States v. Angela Ruiz*, 241 F.3d 1157 (9th Cir. 2001); *United States v. Watson*, 582 F.3d 974, 977 (9th Cir. 2009). Rather, there needed to be a proper procedural vehicle by which the withdrawals could take place.

The government's offer to allow Mr. Worthing to withdraw his plea, like the plea withdrawals that were allowed for many related defendants, could be construed as either a stipulated withdrawal or a 28 U.S.C. §2255 habeas corpus petition. Perhaps the government's offered re-plea arrangement should be construed as a stipulated motion to withdraw pursuant to Rule 11(d). The question that follows is: what fair and just reason for withdrawal did the eighteen other defendants and the government all agree to? For its part, the Court had seemed to suggest that the fair and just reason warranting all of the withdrawn pleas was the fact that the withdrawals were to the defendants' benefit:

> THE COURT: And also there were some -- sort of what I'd call "rearranged pleas." The pleas to the charges, such as Mr. Worthing entered a plea, were withdrawn by the defendant; and a new plea of guilty was to different charges entered by that particular defendant. So that's the picture that I understand happened.
>
> Now, I further understand that those, quote, "rearranged pleas," if we can call it that --
>
> MR. MAST: Sure.
>
> THE COURT: -- were basically -- were for the convenience or to the benefit of the defendants; that is, it didn't enhance the potential sentence. What it did was it relieved them from the charge of fraud, and put it in a different context: A charge of bid rigging, whatever it was.
>
> MR. MAST: That's correct, Your Honor. Every defendant who re-entered a plea pled to bid ringing only. The Offense Level for every defendant either stayed the same or was lowered, in terms of the Guidelines.
>
> THE COURT: Okay. So it was all to their benefit.

Doc. no. 57 (12/8/17 TX, 3:1-19). But of course, "withdrawal is beneficial to the defendant" cannot be a fair and just reason in and of itself to satisfy Rule 11(d); Mr. Worthing is confident no authority holds otherwise, and the government certainly has cited none. Even more absurd is the fact that the "fair and just reason" of "an offer of benefit" clearly extends to Mr. Worthing, who was offered the

benefit of a new plea to fewer charges. Thus the government must be arguing that the fair and just reason for withdrawal was actually "offer *and* acceptance of benefit," since that is the only distinction between Mr. Worthing and the other defendants. This stretches the bounds of all reason, and has no basis in law.

Might the other related defendants, the government, and the Court all agreed that withdrawal of their pleas was fair and just due to considerations of equanimity or Equal Protection? Perhaps so. Yet if that is the case, the question that naturally follows is why those very same considerations would not apply to Mr. Worthing. As Mr. Worthing noted in his motion, he remains similarly factually situated to the other defendants, and is in fact alleged to be less culpable than many (if not all) of them. The fair and just reason of equanimity, if it ever existed, did not spontaneously disappear. Likewise, Equal Protection concerns would continue to apply, and if the government were to now claim they have no force, it would be revealing the vindictiveness of its actions in these proceedings.[4]

Whatever the fair and just reason that justified the stipulated plea withdrawals for all of the related defendants (and would have justified Mr. Worthing's re-plea), in order to oppose Mr. Worthing's current motion, the government would need to identify that previous fair and just reason and then explain why it does not apply in the present proceedings. The government has not done so because it cannot do so.

On the other hand, rather than to a stipulated withdrawal, the re-pleading scheme may have instead been pursuant to a §2255 habeas petition. If that is the case, the government's opposition fares no better. The granting of habeas petitions for the related defendants specifically requires an illegality in their pleas. Thus, the government's offer of withdrawal also acted as an admission that there existed illegality in Mr. Worthing's plea. The government does not address this point, and thus provides a similar concession: Mr. Worthing must be allowed to withdraw his plea.

---

[4] Claims of selective or vindictive prosecution are themselves premised on tenets of Equal Protection. *See Wayte v. United States*, 470 U.S. 598, 608 (1985); *United States v. One 1985 Mercedes*, 917 F.2d 415, 420 (9th Cir. 1990).

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

**VII.**

**LEGAL AND FACTUAL DEVELOPMENTS REQUIRE WITHDRAWAL.[5]**

The government makes only a fleeting attempt to counter the effect of the many factual and legal discoveries and developments that have occurred since Mr. Worthing entered his plea. It spends a great deal of time arguing that Mr. Worthing's prior plea counsel rendered effective assistance, missing the fact that the adequacy of Mr. Williams' assistance has little bearing on the force of Mr. Worthing's primary arguments. Despite its claims of Mr. Williams' foresight and good sense, it ignores the fact that Mr. Williams himself has provided a declaration attesting to the fact that he would not have counseled Mr. Worthing to plead guilty if he knew the information that has since been uncovered. What this declaration confirms is that which is eminently evident from the materials that have been produced to Mr. Worthing. Any counsel might have proceeded in the way Mr. Williams did in light of the information he had at the time. But *no* counsel would have advised Mr. Worthing to plead guilty if they had known of the government's misconduct in its investigation and the other information that has since surfaced. Any counsel, including Mr. Williams, would have instead insisted on obtaining discovery, whether by agreement with the government or an initiation of prosecution by indictment. It is in that way that counsel would have preserved Mr. Worthing's ability to challenge the charges and evidence against him, a challenge that it has since become clear is entirely proper and necessary.

As to most of Mr. Worthing's specific contentions, the government elects to pass. It does not, for instance, directly argue that the discovery of outrageous government misconduct (also affecting the admissibility of its evidence and impeachability of its witnesses) does not provide a fair and just reason for plea withdrawal. This is likely because the government's "serious dereliction" in the form of misconduct renders a guilty plea unintelligent:

---

[5] Mr. Worthing has moved to compel discovery necessary to substantiate some of the arguments related to factual and legal developments. Doc. no. 74. His motion was denied (doc. no. 81), and Mr. Worthing now moves, in conjunction with the present filing, to reconsider his motion to compel discovery. Mr. Worthing incorporates by reference his arguments and claims in his Motion to Reconsider Order Denying Mr. Worthing's Motion to Compel Discovery.

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

> Where, as in the instant case, the government withholds material information that negates guilt, even competent counsel cannot adequately advise a defendant and the court cannot properly conclude that "there is nothing to question the accuracy and reliability of the defendant's admissions." Thus, there was a compelling reason for the Supreme Court to have expressly excepted from the general rule of *Brady v. United States* cases, such as this one, that involve misrepresentation or other government misconduct that undermines the ability of a defendant to plead guilty "intelligently" and the ability of the court to evaluate the truthfulness of his plea. . . .
>
> Rather, Ferrara's claim [of governmental misconduct resulting from the withholding of *Brady*] goes to the heart of his counsel's ability to advise Ferrara adequately whether to plead guilty; Ferrara's ability to assess intelligently that advice; and the court's ability to evaluate the truthfulness of his plea.

*Ferrara v. United States*, 384 F. Supp. 2d 384, 416 (D. Mass. 2005) (citations omitted); *see also Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985) ["the Supreme Court did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes constitutional muster as knowing and intelligent"]. And a claim of governmental misconduct, alleging as it does the government's inability to constitutionally prosecute a defendant regardless of the illegality of his conduct, is cognizable at *any* time, even for the first time on appeal. *See Class v. United States*, No. 16-424, 2018 U.S. LEXIS 1378, at *14-15 (Feb. 21, 2018) [even a valid guilty plea does not relinquish a claim going to the government's power to prosecute, rather than guilt].

Here, it is not disputed that the government engaged in serious misconduct during its investigation of this case. As this Court has described, the government, in full possession of a bounty of evidence and with full access to a great deal more, decided to institute a blatantly illegal and warrantless scheme by which it employed hidden microphones to record over 200 hours of audio, "capturing the conversations of anyone who entered or exited the employee entrance of the courthouse [...] [r]egardless of whether that person was a defendant, a county employee, an attorney, a judge, or a member of the public." *See* 3:14-cr-00534-CRB, doc. no. 150. Some of these illegal recordings constitute evidence against Mr. Worthing, and all of them are a result of the government's unlawful and outrageous misconduct. That Mr. Williams did not know of this illegality on the part of the government was not the result of his "ordinary error," but of the government's own "serious dereliction." *Ferrara, supra*, 384 F. Supp. 2d at 415-16.

1    Nor does the government include in its opposition any argument that the discovery of an

2    entrapment defense cannot act as a fair and just reason to support a defendant's withdrawal of his

3    plea. When making a prima facie case for entrapment, "[o]nly slight evidence will create the factual

4    issue necessary to get the defense to the jury, even though the evidence is weak, insufficient,

5    inconsistent, or of doubtful credibility." *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003),

6    quoting *United States v. Becerra*, 992 F.2d 960, 963 (9th Cir. 1993). And the fact that a defendant

7    is alleged to have engaged in multiple transactions does not defeat his entrapment defense, as a

8    defendant cannot lawfully develop a "disposition" during the course of dealing with the government,

9    and thus an entrapment defense can only be defeated by the government's showing that the defendant

10   harbored his predisposition to commit the crime *before* his subsequent transactions. *Jacobson v.*

11   *United States*, 503 U.S. 540, 548-50 (1992).

12   The manner in which the government conducted its investigation here, including the fact that

13   it had obtained the full cooperation of its two key informants and pen registers on the "Big Five"

14   before any of the transactions Mr. Worthing is alleged to have been involved in took place (*see* 3:14-

15   cr-00534-CRB, doc. no. 248), supports the inference that the government actively prolonged its

16   investigation in an effort to create and then ensnare additional defendants. Mr. Worthing, it turns out,

17   was not identified as a suspect until long after the government had obtained the information this very

18   Court deemed sufficient to justify the prosecutions of Mr. Giraudo, *et al*. Mr. Worthing is not alleged

19   to have been ensnared into the bid-rigging scheme until September of 2010, a mere four months

20   before the investigation's (and scheme's) end. This information, which Mr. Worthing discovered

21   long after his plea, fundamentally altered his understanding of the case against him, just as Mr.

22   Worthing's prior counsel has attested new information has changed his perception of the plea.

23                                        **VIII.**

24   **MR. WORTHING'S MOTION TO WITHDRAW HIS PLEA IS NOT UNTIMELY.**

25   The government begins its opposition to Mr. Worthing's motion where it might be expected

26   to end: with a series of complaints that it does not like how Mr. Worthing has chosen to proceed.

27   Perhaps out of recognition of the merits of Mr. Worthing's legal contentions, the government

28

---

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

complains that Mr. Worthing entered his plea voluntarily, that Mr. Worthing's stated reasons for withdrawal are pretextual, that Mr. Worthing waited too long before moving to withdraw his plea, and that the government will be prejudiced by having to prosecute Mr. Worthing anew. None of these are reasons to deny a defendant's motion to withdraw his plea, and accordingly, the Court should give none of them weight in its considerations.

There is no requirement that a defendant moving to withdraw his plea shows it was involuntary, just as there is no requirement that the Court analyze his proffered reasons for "pretext." Notably, Mr. Worthing is sacrificing a great deal in making this motion, as the government has suggested it now intends to proceed on mail fraud charges against him and potentially withdraw any §5K consideration,[6] and Mr. Worthing would be losing at least two additional levels of Guidelines relief as a result of his withdrawal (*see* calculations under U.S.S.G. §§ 2R1.1 and 2X1.1, resulting in a two-level higher guidelines range under the mail fraud guidelines than the bid-rigging guidelines). That Mr. Worthing has moved to withdraw his plea despite these harms suggests Mr. Worthing's true motive for withdrawal is the illegality of the plea, which he simply believes he cannot proceed upon. Mr. Worthing is not simply seeking some escape clause on the eve of sentencing. Rather, it is because Mr. Worthing's challenges to the legality of plea are meritorious that he has moved to withdraw that plea.

Of course, Mr. Worthing similarly need not show that withdrawal will not require the government to restart its prosecution. This is for good reason. Withdrawal of a plea *always* requires the government begin its prosecution anew, and the government's fears of litigating motions and conducting a trial are no more persuasive here than they would be in any other case. The fact that the government has repeatedly alleged that there is no non-frivolous argument to be made regarding taint, entrapment, or any other legal defense suggests the government is lying about either the lack of a defense or the resources that will be consumed by a renewed prosecution. In any event, the

---

[6] On the basis of the §5K motions made for a variety of defendants in Oakland, Mr. Worthing estimates the government likely would have moved for a 35% reduction in his sentencing range, assuming the prosecutors in San Francisco value parity in sentencing.

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

1    government's desire not to engage in further proceedings and the litigation that will result from an

2    indictment cannot reasonably defeat a defendant's otherwise justified withdrawal of his plea.

3         It is particularly audacious that the government blames Mr. Worthing for the time that has

4    elapsed since the taking of his guilty plea and whatever effects that passage of time may have on the

5    government's case at trial. Mr. Worthing did not immediately seek an agreement with the

6    government only to delay a resolution for years thereafter. Rather, that was the manner in which the

7    government chose to proceed, delaying sentencing for dozens of defendants time and time again

8    while it continued its prosecutions of others. It was the government who wished to enjoy the

9    efficiencies of a global sentencing, and it was the government who prolonged Mr. Worthing's case

10   to this date. Undoubtedly, had Mr. Worthing sought years of time to prepare for sentencing over the

11   government's objection, his requests would have been denied. Mr. Worthing is not to blame for any

12   prejudice caused by the passage of time, as it was not his decision for that time to pass as it did.[7]

13        The government attempts to characterize Mr. Worthing's reason for withdrawing his plea as

14   a flippant "change of heart" or spontaneous fear of a custodial sentence. According to the

15   government, these motivations are improper, and, when coupled with the fact that Mr. Worthing's

16   motion comes years after his plea was entered, they provide sufficient reason for this Court to deny

17   Mr. Worthing's motion. Apart from the irrelevancy of Mr. Worthing's motives, the government fails

18   to note the clear impetus for Mr. Worthing's request, which does not come as a result of some

19   impromptu panic. Rather, Mr. Worthing first made the parties aware of his desire to seek a

20   withdrawal of his plea in the fall of last year, soon after two events occurred: (1) Mr. Worthing

21   retained new counsel, counsel who did not represent him during his plea and whom he had not

22   consulted until 2017, and (2) the government offered to agree to a withdrawal of Mr. Worthing's

23   plea. Thus, it was not Mr. Worthing's mind that changed, but the government's, which it indicated

24   in its September 11, 2017 filing. Doc. no. 45. The government has offered no explanation for why

25

26   [7] Mr. Worthing notes that the government complains it will suffer a difficult trial because it "did not focus
27   on building its case against" Mr. Worthing after he entered his plea. This argument seems to be an admission
     on behalf of the government that it knowingly pursued a prosecution against a citizen without the evidence
28   it believed it needed to obtain a conviction.

1    it waited a year after Judge Hamilton's ruling to adopt her reasoning and extend its offers to all

2    defendants. But whatever its motives, it was the government's offer, which roughly coincided with

3    the point in time at which current counsel was first consulted, that changed the circumstances of Mr.

4    Worthing's case, prompting him to reassess his plea and determine whether it was lawful and

5    whether the situation necessitated withdrawal.

6                                                    **IX.**

7                                           **CONCLUSION**

8            Mr. Worthing has presented a number of fair and just reasons in support of his motion to

9    withdraw his plea. The government has failed to adequately address these justifications for

10   withdrawal, and has not explained why its opposition is not arbitrary and capricious.

11          Mr. Worthing respectfully requests this Court grant his motion to withdraw his plea.

12   Dated: February 21, 2018                    Respectfully submitted,

13                                                **BAY AREA CRIMINAL LAWYERS, PC**

14                                               By: /s/David J. Cohen
                                                 DAVID J. COHEN, ESQ.

15                                               Attorneys for Defendant **Matthew Worthing**

16

17

18

19

20

21

22

23

24

25

26

27

28

Mr. Worthing's Reply to Response to Motion to Withdraw Plea
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB