1    DAVID J. COHEN, ESQ.
     California Bar No. 145748
2    ALEXANDER P. GUILMARTIN, ESQ.
     California Bar No. 30676
3    **BAY AREA CRIMINAL LAWYERS, PC**
     300 Montgomery Street, Suite 660
4    San Francisco, CA 94104
     Telephone:  (415) 398-3900
5
     Attorneys for Defendant **Matthew Worthing**
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   UNITED STATES OF AMERICA,          )    Case No. 3:12-cr-00300-CRB
                                        )
13                Plaintiff,            )    **MR.   WORTHING'S   MOTION   TO
                                        )    COMPEL   DISCOVERY   FOR**
14   v.                                 )    **SENTENCING**
                                        )
15   MATTHEW WORTHING,                  )    Date:   March 14, 2018
                                        )    Time:  1:30 p.m.
16                Defendant.            )    Ctrm.:  6
                                        )
17   ──────────────────────────────

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.       INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.      PROCEDURAL STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.     DISCOVERY HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

         A.      Materials in the Government's Possession. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         B.      Materials Mr. Worthing Has Requested be Produced. . . . . . . . . . . . . . . . . . . . 9
         C.      Materials Mr. Worthing or Counsel Have Reviewed (or Been
                 Informed of the Contents of) from Other Sources. . . . . . . . . . . . . . . . . . . . . 10
         D.      Materials Produced by the Government. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.      THE GOVERNMENT'S DISCOVERY OBLIGATIONS DO NOT CEASE
         AT THE ENTRANCE OF A GUILTY PLEA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.       RULE 16 IS NOT EXTINGUISHED BY A GUILTY PLEA. . . . . . . . . . . . . . . . . . . 12

VI.      THE MATERIALS MR. WORTHING HAS REQUESTED ARE
         RELEVANT TO SENTENCING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.     MR. WORTHING IS ALSO ENTITLED TO MATERIALS RELIED UPON
         BY PROBATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VIII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

**<u>Case Law</u>**                                                                                           **<u>Page(s)</u>**

3

*Brady v. Maryland*
    373 U.S. 83 (1963).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

4

*Brown v. Borg*
    951 F.2d 1011 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5

6

*Campbell v. Marshall*
    769 F.2d 314 (6th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7

*Dennis v. United States*
    384 U.S. 855 (1966).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8

9

*Jacobson v. United States*
    503 U.S. 540 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10

*Miller v. Angliker*
    848 F.2d 1312 (2d Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11

12

*Rewis v. United States*
    401 U.S. 808 (1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13

*Sanchez v. United States*
    50 F.3d 1448 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

14

15

*Smith v. Baldwin*
    510 F.3d 1127 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

16

*United States v. Alvarez*
    358 F.3d 1194 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17

18

*United States v. Armstrong*
    517 U.S. 456 (1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19

*United States v. Brown*
    250 F.3d 811 (3d Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20

21

*United States v. Chen*
    605 F.2d 433 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22

*United States v. Cooper*
    983 F.2d 928 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

23

24

*United States v. Feeney*
    501 F.Supp. 1324 (D.Colo. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

25

*United States v. McClelland*
    72 F.3d 717 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26

27

*United States v. Mikaelian*
    168 F.3d 380 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28

# TABLE OF AUTHORITIES

<u>**Case Law**</u>                                                                                  <u>**Page(s)**</u>

*United States v. Nagra*
    147 F.3d 875 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Plunk*
    153 F.3d 1011 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Ruiz*
    536 U.S. 622 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, *passim*

*United States v. Severson*
    3 F.3d 1005 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Valenzuela*
    2009 U.S. Dist. LEXIS 64070 (C.D. Cal. July 14, 2009). . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Weintraub*
    871 F.2d 1257 (5th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*White v. United States*
    858 F.2d 416 (8th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>**Statutes and Regulations**</u>

*Federal Rules of Criminal Procedure*

    *Rule 16*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, *passim*
    *Rule 16(a)(1)(C)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, *passim*
    *Rule 16(a)(1)(E)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, *passim*
    *Rule 16(a)(1)(E)(i)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, *passim*
    *Rule 16(a)(1)(E)(ii)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, *passim*

DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 30676
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Matthew Worthing**

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 3:12-cr-00300-CRB |
| ) | |
| Plaintiff, ) | **MR. WORTHING'S MOTION TO COMPEL DISCOVERY FOR SENTENCING** |
| ) | |
| v. ) | |
| ) | |
| MATTHEW WORTHING, ) | Date: March 14, 2018 |
| ) | Time: 1:30 p.m. |
| Defendant. ) | Ctrm.: 6 |
| ) | |

**I.**

**INTRODUCTION**

Mr. Worthing presently moves to compel discovery related to sentencing, in anticipation of his sentencing on March 21, 2018. This Court has already ordered the government turn over all materials relied upon by Probation, as well as materials impeaching individuals relied upon by Probation. Having received a draft probation report, Mr. Worthing has requested the government comply with that order. Despite this, the government has refused to do so, turning over a limited selection of materials that do not satisfy its obligation.

So too has Mr. Worthing requested a broader class of materials from the government: all *Brady* materials necessary for Mr. Worthing's sentencing. For its part, the Court has not yet ruled on Mr. Worthing's entitlement to this category of discovery. Nonetheless, the government has again

refused to comply in full, providing only a limited selection of materials that do not encompass the array of discovery to which Mr. Worthing is entitled in order to adequately prepare for sentencing.

Accordingly, Mr. Worthing moves both to compel the production of (1) materials relied upon by Probation (as already ordered by the Court); (2) *Giglio* impeachment materials related to individuals relied upon by Probation (as already ordered by the Court); and (3) *Brady* materials necessary for sentencing, as required by law (but not yet ruled upon by the Court).

## II.

### PROCEDURAL STATEMENT OF FACTS

On June 20, 2012, Matthew Worthing entered guilty pleas to all four counts of a four count information, all pursuant to a negotiated plea agreement. Doc. no. 9. Sentencing is set for March 21, 2018.

Mr. Worthing filed a motion to compel discovery on February 2, 2018. Doc. no. 74. Therein, he moved to compel discovery "relevant to his motion to withdraw his plea" as well as discovery "relevant to sentencing." *Ibid*. On February 9, 2018, the parties appeared before the Court on the motion. Doc. no. 81. At the hearing, the Court acknowledged Mr. Worthing's entitlement to, and ordered the production of, all materials relied upon (or impeaching individuals relied upon) by Probation in its presentence report:

> MR. COHEN: One is under the local rule, which says everything Probation relied on in their report should be produced to us. But even more importantly –
>
> THE COURT: I agree with that.
>
> MR. COHEN: And even more important –
>
> THE COURT: Okay. You don't have to argue that. You're right. . . .
>
> THE COURT: So, in other words, let's see what the probation department relies on in terms of sentencing of Mr. Worthing. Let's see what it is. And if there's something that they've relied on that is cited to, in any manner relied on, we'll take it from there. Because I think you're right. I think your defendant cannot be sentenced in a vacuum. That is to say based upon information that you don't have access to. . . .
>
> THE COURT: If, in fact, the probation department relies on Jones, Jones being an informant, saying X about your client, relies on it, and the Government has information which would be deemed *Brady* material about Jones, I think you are entitled to that.

> Because anything that casts doubt on the credibility of an individual who is supplying information to the Government – I mean, to the probation department, which you then are responsible for, I would – I would permit. And that's fine.

Doc. no. 84 - 2/9/18 TX, 14:16-22; 15:19-16:1; 16:25-17:7.

The Court was clear, however, that its ruling denying discovery was limited only to Mr. Worthing's request to compel discovery relevant to his motion to withdraw his plea. The Court specifically declined to address any other discovery relevant to sentencing, which it did not consider to be before it:

> THE COURT: But we have to take this one step at a time. And your question – you have posited it as information you need prior to your motion to withdraw the plea. And as to that, I'm denying it for the reasons stated. . . .
>
> MR. COHEN: But the imperfect entrapment argument is a sentencing argument that's been recognized by the guidelines of the Ninth Circuit. The Government has, in their papers, said that to the extent that imperfect entrapment is an issue we would be entitled to discovery on it.
>
> MR. MAST: Well, Your Honor --
>
> MR. COHEN: I'm sorry. I'm sorry.
> So I don't think that it's correct to deprive us of information in the Government's possession that's relevant to an argument that we would --
>
> THE COURT: Remember, we are dealing with the argument today about the motion to withdraw the plea. Okay? Fine.
> Okay. Thank you, Mr. Cohen.

*Id*. at 17:10-13; 19:18-20:5.

## III.

## DISCOVERY HISTORY

On December 27, 2017, Mr. Worthing formally requested Rule 16 and *Brady* discovery from the government, which indicated its willingness to meet and confer regarding specific discovery materials on January 2, 2018. On January 16, 2018, Mr. Worthing made a specific, written discovery request to the government seeking a number of materials in their possession, including specifically materials related to the government's illegal, warrantless recordings. *See* Exhibit A - Discovery Request. On January 19, 2018, the government responded to Mr. Worthing's request, stating its position that Mr. Worthing was entitled to no Rule 16 discovery while also offering to provide

discovery related to Mr. Worthing's motion to withdraw his plea. When Mr. Worthing explained that all requested discovery was pertinent to his motion, the government agreed to disclose "the audio and video recordings that the government identified as capturing Mr. Worthing, or otherwise pertaining to Mr. Worthing," as well as "302s related to the recordings that refer to a statement made by Mr. Worthing."

On January 31, 2018, the government turned over four CDs containing approximately 47 hours and 29 minutes of audio and video recordings. The CDs included recordings of real estate auctions spanning from April 13, 2010 to January 6, 2011[1], as well as four brief outgoing calls to an unidentified individual. The CDs did not contain any 302s related to any of the recordings, nor any identifying information regarding the recordings. Because this audio involves multiple, frequently inaudible and unidentified speakers, Mr. Worthing has thus far been unable to parse useful information from it. Mr. Worthing has instead enlisted transcription services, at great personal expense, in order to obtain the information on the CDs in a usable form.

Prior to this January 31, 2018 disclosure, the only discovery the government had ever produced to Mr. Worthing were 302s related to his initial interview with the FBI and his post-plea debrief with the government, as well as a spreadsheet of transactions that formed the basis for the volume of commerce stipulated in the plea agreement.

Following this Court's February 9, 2018 order to the government to produce the materials relied upon by Probation in its report, on February 13, 2018, United States Probation provided a draft presentence investigation report, in which it described a number of materials it "in any manner relied on" in its investigation.[2] Pursuant thereto, on February 13, 2018, Mr. Worthing requested additional discovery from the government in the form of materials relied upon by Probation in its draft report. *See* Exhibit B - Second Discovery Request. On February 15, 2018, the government responded to Mr.

---

[1] An additional 71 minutes of audio recording appears to relate to a January 11, 2011 transaction. However, the year of this recording is not specifically identified as it is in others.

[2] Mr. Worthing does not attach the presentence investigation report, a private document, to his current motion. However, it is available for the Court's reference, and at its request, from United States Probation, as necessary to decide the issues presented herein.

Worthing's request, largely denying his entitlement to the materials he had requested. *See* Exhibit C - Discovery Response. The government did produce four 302s: a January 11, 2011 interview with Laith Salma; a July 2, 2012 interview with Laith Salma; an October 2, 2009 interview with "Ash" (presumably Ashton Gurjal); and a January 12, 2011 interview with Mohammed Rezaian. The government has produced no additional discovery since February 15, 2018.

In effect, there are four "universes" of discovery at issue, even smaller in scope than the last.

## A.     Materials in the Government's Possession

The largest group of materials is, of course, those in the government's possession. This includes all materials collected by the government in connection with its investigation and prosecution of at least 85 defendants across the Northern and Eastern Districts of California. This would include both the materials to which some of those defendants are entitled, and the materials to which no defendant is entitled. Only the government knows the true scope of these materials. Probation, however, describes these materials as including, at a minimum:

> (1) witness interviews and testimony, (2) audio/video recordings made by cooperating sources and an undercover agent; (3) pay/owe ledgers made by the co-conspirators to track money paid or owed pursuant to payoff agreements, including a comprehensive set of payoff records maintained on the BlackBerry and computer of Mohammed Rezaian, a major player in the San Francisco and San Mateo conspiracies; and (4) miscellaneous documents including internal record-keeping spreadsheets and emails from co-conspirators documenting payoff agreements.

*See* Exhibit B.

## B.     Materials Mr. Worthing Has Requested be Produced

This group of materials, listed in full detail in Mr. Worthing's discovery requests (*see* Exhibits A and B), refers to the discovery to which Mr. Worthing is constitutionally and statutorily entitled, including materials relevant to his sentencing. It is this group of materials that Mr. Worthing seeks to compel the disclosure of in the present motion. These materials include the stationary audio and video recordings the government illegally obtained, the body wire recordings obtained from undercover agents and informants, impeachment materials for government informants, materials related to the transactions to which Mr. Worthing is allegedly connected, and 302s related to all of the above subjects.

**C.**     **Materials Mr. Worthing or Counsel Have Reviewed (or Been Informed of the Contents of) from Other Sources**

This group of materials, smaller in scope than that which Mr. Worthing has requested disclosure of, includes documents and records that Mr. Worthing or his counsel have reviewed or been told of by sources other than the government. Mr. Worthing has been able to identify some of these materials by way of their public disclosure in other, related prosecutions. For example, On September 3, 2015, the government admitted the execution of these illegal recordings, with which this Court has become familiar through litigation by defendants in related cases.

Mr. Worthing, through counsel, has also had some opportunity to review various additional materials. For example, Mr. Worthing's previous counsel, Mr. Williams, learned of the existence of (and some of the contents of) two ledgers (alternatively referred to by the government at times as "pay-owe sheets") from individuals involved in the overarching bid-rigging conspiracy that detail many of the alleged transactions which the government has investigated.

**D.**     **Materials Produced by the Government**

Finally, there is the discovery the government has actually disclosed to date, which includes only: (1) 302s of Mr. Worthing's initial FBI interview and post-plea debrief with the government, (2) a spreadsheet showing Mr. Worthing's alleged transactions comprising the stipulated volume of commerce,(3) the 47:29 audio and video recordings identified above, and (4) the four 302s Mr. Worthing recently received on February 15. Unsurprisingly, this universe of discovery consists of the fewest materials.

**IV.**

**THE GOVERNMENT'S DISCOVERY OBLIGATIONS DO NOT CEASE AT THE ENTRANCE OF A GUILTY PLEA.**

"In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis v. United States*, 384 U.S. 855, 873 (1966). With this in mind, the federal legislature has crafted the discovery disclosure requirements of Federal Rule of Criminal Procedure 16, and the courts have crafted a constitutional right to exculpatory materials under *Brady v. Maryland*, 373 U.S. 83 (1963). The remedy for an

intentional *Brady* violation is dismissal of the indictment. *See United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993); *Brown v. Borg*, 951 F.2d 1011 (9th Cir. 1991); *United States v. Chen*, 605 F.2d 433, 435 (9th Cir. 1979).

A defendant can explicitly waive various discovery rights, including *Brady* and his right to discovery pursuant to Rule 16, in a plea agreement with the government. *United States v. Ruiz*, 536 U.S. 622, 633 (2002). By logical extension, in the absence of an explicit waiver, the plea itself does not function as one, and the government's discovery obligations do not terminate by virtue of the plea agreement being entered into. Mr. Worthing's plea agreement contained no waiver of any discovery rights. Consequently, he has waived none of his discovery rights, and his entry of a plea has not eliminated any of the discovery rights he had prior to his plea.

The Ninth Circuit has repeatedly recognized that the government's *Brady* obligations continue beyond the point of a guilty plea. *See*, *e.g.*, *United States v. Plunk*, 153 F.3d 1011 (1998) (recognizing *Brady*'s application to undisclosed impeachment information in the possession of a cooperating witness' attorney); *United States v. Mikaelian*, 168 F.3d 380 (1999). The Ninth Circuit has also specifically recognized that "a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *see also Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) (applying *Brady* in guilty plea context); *United States v. Nagra*, 147 F.3d 875, 882 (9th Cir. 1998) (same); *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (applying *Brady* to a motion to a motion to withdraw a plea); *White v. United States*, 858 F.2d 416, 422 (8th Cir. 1988); *Miller v. Angliker*, 848 F.2d 1312, 1319-20 (2d Cir. 1988); *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985).

Although the government has acknowledged *Brady*'s application in the sentencing context, it has argued, in reliance on *Ruiz*, that this same entitlement carries an exception for impeachment materials, which the government need not disclose. This is not what *Ruiz* held. Ruiz stands only for what the government quotes from its language: "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Ruiz*, *supra*, 536 U.S. at 633. *Ruiz* does not speak to the government's obligations *after*

a plea. And although *Ruiz* refers to impeachment materials, it does not provide any specific reason to distinguish between impeachment materials and the broader class of *Brady* materials. It is not at all clear, even in *Ruiz*, that there is any such distinction; *Ruiz* conducts its analysis pursuant to *Brady* and refers to "rights to exculpatory and impeachment information in *Brady* and *Giglio*" in conjunctive fashion (*Id*. at 631).

## V.

## RULE 16 IS NOT EXTINGUISHED BY A GUILTY PLEA.

Mr. Worthing also notes that it is not clear that Rule 16's discovery requirements could never apply at this stage of the proceedings, coming as they do after the government filed an information charging Mr. Worthing with criminal offenses. Mr. Worthing has identified no Ninth Circuit authority completely rejecting the application of Rule 16's requirements to post-plea proceedings.

In earlier filings, the government has argued that Rule 16(a)(1)(E), which requires the production of documents and objects "material to preparing the defense" (Rule 16(a)(1)(E)(i)) or which "the government intends to use . . . in its case-in-chief at trial" (Rule 16(a)(1)(E)(ii)), does not apply where a defendant has pled guilty. The only authority it cites for support of this proposition is *United States v. Armstrong*, 517 U.S. 456, 462 (1996), which it argues restricts the government's obligations under Rule 16(a)(1)(E)(i) to materials relevant to a defendant's "response to the Government's case in chief." *Armstrong*, however, is an eponymous Supreme Court case dealing with the availability of selective prosecution discovery ("*Armstrong* discovery"), not with the broad expanses of Rule 16. It held merely "that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id*. at 463. This, it said, was because "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Ibid*. *Armstrong* dealt with a very specific issue of the showing required for selective prosecution discovery, and has dictated the law on that specific issue for years. But it did not broadly

define those types of materials to which Rule 16 applies, nor did it serve to limit Rule 16's application to specific phases of a criminal prosecution.

The reason the government cites no biding authority restricting Rule 16's application is because none exists. It is not at all clear that documents "material to preparing the defense" are no longer subject to production after a defendant pleads guilty. Certainly, Mr. Worthing's "defense" has not ended, and materials remain relevant to his pursuit thereof. The Courts' repeated acknowledgments that *Brady* obligations extend to sentencing suggest that a defendant's defense does not end on the date he enters his guilty plea, but rather, that he continues to maintain an interest in defending his case until the date the Court actually sentences him. Similarly, the Supreme Court's acknowledgment in *United States v. Ruiz*, 536 U.S. 622 (2002) that a defendant may choose to waive his discovery rights in a plea agreement suggests that, in the absence of such a waiver, discovery rights are *not* terminated by the entry of a guilty plea just like the defendant's interest in defending his case is not terminated. Even if the "defense" referenced in Rule 16(a)(1)(E)(i) is limited to a "response to the government's case-in-chief," there is no reason discovery would become less "material to preparing the defense" simply by virtue of a defendant's plea.

Nor is it clear that materials "the government intends to use . . . in its case-in-chief at trial" need not be disclosed once a defendant enters a plea. It is evident that, if Mr. Worthing is successful in withdrawing his plea and chooses to proceed to trial, the government will use materials it has not yet produced to the defense. Of course, the possibility remains that a trial may not occur, either because Mr. Worthing does not succeed in withdrawing his plea or because he elects not to proceed to trial after having withdrawn his plea. But in every criminal case, there exists the possibility that a trial will not occur. That possibility does not serve to extinguish the government's discovery obligations in those circumstances, and it should not here. The government *does* intend to use the requested materials in its case-in-chief at trial; it simply *hopes* a trial will not be required.

While Rule 16's provisions are not the only sources for the government's discovery obligations, they are ones that should not be ignored. The government has not identified law restricting the scope of their statutory requirements, nor does the plain language of Rule 16 state that

one exists. To the extent that Rule 16 is not clear, the rule of lenity compels this Court resolve any ambiguity in favor of Mr. Worthing. *See Rewis v. United States*, 401 U.S. 808, 812 (1971). This Court should not infer the government's desire limits on its duties where one has not been specified.

## VI.

## THE MATERIALS MR. WORTHING HAS REQUESTED ARE RELEVANT TO SENTENCING.

Mr. Worthing makes the present discovery request specifically so that he may obtain materials relevant to, and necessary for, his sentencing. The government's *Brady* discovery obligations extend to materials that are "material either to guilt *or to punishment*." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (emphasis added). *Brady* itself was a sentencing case. *See United States v. Feeney*, 501 F.Supp. 1324, 1334 (D.Colo. 1980) ("[i]t is deserving of comment that *Brady v. Maryland* dealt only with punishment"). Various Circuits have vacated sentences on the basis of the government's failure to turn over materials relevant to sentencing. *See*, *e.g.*, *United States v. Weintraub*, 871 F.2d 1257 (5th Cir. 1989) (vacating for government's withholding of impeachment evidence relevant to drug quantity); *United States v. Severson*, 3 F.3d 1005 (7th Cir. 1993) (vacating and remanding for reconsideration of rulings on obstruction of justice and acceptance of responsibility enhancements due to *Brady* violation). As one Central District Court has described, materials relating "to the credibility of witnesses on whose testimony the probation department and the government rely in recommending a given sentence and/or on whose testimony aspects of the advisory guideline calculation are based" must be turned over to the defense prior to sentencing pursuant to *Brady* and *Giglio*. *United States v. Valenzuela*, No. CR 07-00011 MMM, 2009 U.S. Dist. LEXIS 64070, at *12 (C.D. Cal. July 14, 2009).

*Brady* extends to the materials Mr. Worthing has requested from the government here. Notably, in addition to the *Brady* entitlement to entrapment materials recognized in *Roviaro*, the Ninth Circuit has also recognized the availability of downward departures at sentencing for "imperfect entrapment." *United States v. McClelland*, 72 F.3d 717, 725 (9th Cir. 1995). *Brady*'s application to sentencing arguments would naturally extend to materials related to an "imperfect

entrapment" sentencing argument as well. And the fact that a defendant is alleged to have engaged in multiple transactions does not defeat his entrapment defense, let alone a claim of imperfect entrapment at sentencing; a defendant cannot lawfully develop a "disposition" during the course of dealing with the government, and thus an entrapment defense can only be defeated by the government's showing that the defendant harbored his predisposition to commit the crime *before* his subsequent transactions. *Jacobson v. United States*, 503 U.S. 540, 548-50 (1992).

The manner in which the government conducted its investigation here, including the fact that it had obtained the full cooperation of its two key informants and pen registers on the "Big Five" before any of the transactions Mr. Worthing is alleged to have been involved in took place (*see* 3:14-cr-00534-CRB, doc. no. 248), supports the inference that the government actively prolonged its investigation in an effort to create and then ensnare additional defendants. Mr. Worthing, it turns out, was not identified as a suspect until long after the government had obtained the information this very Court deemed sufficient to justify the prosecutions of Mr. Giraudo, *et al*. Mr. Worthing is not alleged to have been ensnared into the bid-rigging scheme until September of 2010, a mere four months before the investigation's (and scheme's) end. Mr. Worthing should be able to fully present this information in its appropriate context at sentencing, and to do so, Mr. Worthing must be provided the materials that show the contours of the government's investigation and the manner in which Mr. Worthing became targeted by it.

The government's related prosecutions of other participants in the overarching bid-rigging scheme are also relevant to Mr. Worthing's sentencing, and he is entitled to materials related to those prosecutions. The government, for example, has neglected to charge many defendants who participated in rigged auctions in multiple counties with only one bid-rigging count (while charging Mr. Worthing with two counts on the basis of a single alleged transaction in San Francisco County). Materials related to all of these other defendants go directly to sentencing disparity, an argument Mr. Worthing is entitled to make at his sentencing.

1

2

3

**VII.**

**MR. WORTHING IS ALSO ENTITLED TO MATERIALS RELIED UPON BY PROBATION.**

4

5

6

7

8

9

10

Mr. Worthing is entitled to all materials that Probation has relied upon in its preparation of a presentence report. Under Criminal Local Rule 32-3(b) and (c), the government is required to disclose to the defense all materials provided to Probation. Mr. Worthing also has a constitutional right to *Brady* materials contained in a presentence report, including "material in a probation file that bears on the credibility of a significant witness." *United States v. Alvarez*, 358 F.3d 1194, 1207 (9th Cir. 2004). As noted above, this Court acknowledged Mr. Worthing's entitlement to these materials during the February 9, 2018 discovery hearing.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

In Mr. Worthing's February 1, 2018 probation interview, U.S. Probation indicated that it had received 320s relevant to other defendants' participation in the overarching bid-rigging scheme, but would not disclose the degree to which it intended to rely on those materials in preparing Mr. Worthing's presentence report. After reviewing the draft probation report, it has become clear that Probation was provided a bounty of materials by the government, all of which allowed it to provide specific, detailed background information about the overarching bid-rigging scheme and the participants therein. Indeed, much of this background information was not available in Mr. Worthing's 302s, and appears to have come from Probation's exhaustive review of all of the materials it was provided in connection with its investigation. Although the government has recently produced four 302s, these 302s do not provide all of the details referenced in the report. Mr. Worthing has received no materials, for example, indicating that payoffs ranging "between $5,000 and $30,000 per property," with some "payoffs as large as $150,000." This information presumably comes from the pay-owe ledgers known to be in the government's possession that it has never disclosed to Mr. Worthing. So too does the probation report rely on information provided by "two brothers" (presumably Rajiv and Ashton Gurjal), despite the fact that Mr. Worthing has received no 302s or other information related to Rajiv Gurjal, and only one short document of notes of a single interview with Ashton Gurjal.

28

Mr. Worthing made a detailed discovery request on February 13, 2018, wherein he cited specifically Probation's reliance on a number of materials. *See* Exhibit B. For the sake of brevity, Mr. Worthing does not repeat those same contentions here, but incorporates by reference those arguments and notes for the Court that the government has refused to turn over nearly all of the materials Mr. Worthing requested in his February 13 letter.

In its most recent response to Mr. Worthing's discovery request, the government has attempted to avoid turning over the requested materials by arguing that, although the probation report references statements by case agents and informants, it does not *rely* on those statements in a way that pertains to Mr. Worthing. This is a thin distinction indeed. Mr. Worthing is set to be sentenced in reliance upon the information Probation provides to the Court in its report. That report, as it currently stands, identifies individuals on whom it relies in communicating its understanding of Mr. Worthing's offense. That an informant, for example, never specifically named Mr. Worthing does not mean his statements were of no relevance to Probation, especially where it specifically cites that informant when relaying information.

Equally unavailing is the government's assertion, in its informal response to Mr. Worthing, that Probation's listing of materials that constitute the evidence of the offense does not mean Probation relied on those materials, or even had access to them. Of course, it is unclear how Probation would be able to describe the evidence against Mr. Worthing without reviewing it in one form or another. The government's argument here is merely a continuation of what it has spuriously claimed all along: the government can turn over massive amounts of material to a handful of Probation officers tasked with preparing reports for dozens of defendants involved in a single conspiracy, and then need only turn over a small portion of those materials to each defendant himself. This is an underhanded subversion of the government's discovery obligations, which exist in the context of presentence reports in order to ensure a criminal defendant is not sentenced without full access to the materials being used against him. Mr. Worthing should be allowed an opportunity to refute *all* of the evidence Probation has relied upon in crafting its understanding of the offense and in developing its recommended sentence, not only the evidence that the government declares most

on point. This entitlement extends to materials impeaching those individuals on whom Probation has relied, whether it is agreements with (as well as payments to and interviews of) government informants or misconduct (including illegal recordings in this case) conducted by investigating agents.

### VIII.

### CONCLUSION

On February 9, 2018, this Court declined to address Mr. Worthing's requests for discovery relevant to sentencing. Having received a draft of the presentence investigation report, Mr. Worthing now moves specifically for the materials he needs to prepare for his March 21, 2018 sentencing hearing. Mr. Worthing is entitled to the disclosure of this discovery, constituting as it does *Brady* materials as well as materials which United States Probation relied on in drafting its report for the Court. Mr. Worthing respectfully requests this Court grant his motion to compel the production of the requested materials, which are described in full detail in the attached exhibits. *See* Exhibits A and B.

Dated: February 28, 2018                    Respectfully submitted,

                                            **BAY AREA CRIMINAL LAWYERS, PC**

                                            By: /s/David J. Cohen
                                            DAVID J. COHEN, ESQ.
                                            Attorneys for Defendant **Matthew Worthing**