# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Francisco Venue

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **Docket No.:   0971 3:12CR00300-001 CRB** |
| **MATTHEW  WORTHING** | ) | |
| | ) | |

**Prepared for:**  The Honorable Charles R. Breyer
Senior United States District Judge

**Prepared by:**  Lenene  Williams
U.S. Probation Officer
San Francisco, CA
Work: (415) 436-7117
Fax:   (415) 581-7429
Lenene_Williams@canp.uscourts.gov

**Department of Justice Antitrust Division**
Andrew Jon Mast
450 Golden Gate Avenue
San Francisco, CA 94102
(415) 934-5300
Andrew.Mast@usdoj.gov

**Defense Counsel**
David J. Cohen  (Retained)
Bay Area Criminal Lawyers, PC
300 Montgomery Street  Suite 660
San Francisco, CA 94104
(415) 398-3900
djcohen@bayareacrimlaw.com

**Sentence Date:**  April 26, 2018 1:30 PM

**Offense:**

**Count 1** :
Bid Rigging
15 U.S.C. § 1
Not more than 10 years imprisonment/3 years supervised release/$1,000,000 fine
(Class C Felony)

**Count 2**:
Conspiracy to Commit Mail Fraud
18 U.S.C. § 1349
Not more than 30 years imprisonment/ 5 years supervised release/$1,000,000 fine
(Class B Felony)

Date Report Prepared:  February 13, 2018          Date Report Disclosed: April 12, 2018

Re:  Worthing, Matthew (40861)                                                Page 2

**Count 3**:
Bid Rigging
15 U.S.C. § 1
Not more than 10 years imprisonment/3 years supervised
release/$1,000,000 fine
(Class C Felony)

**Count 4**:
Conspiracy to Commit Mail Fraud
18 U.S.C. § 1349
Not more than 30 years imprisonment/5 years supervised
release/$1,000,000 fine
(Class B Felony)

**Release Status:**     Cited and released on May 17, 2012, on his own recognizance without
U.S. Pretrial Services supervision.

**Detainers:**     None.

**Related Cases:**     Gary Anderson  - 0971 11 CR00795-1
Patrick  Campion - 0971 11CR00796-1
James Doherty - 0971 11 CR 00797-1
Keith Goodman - 0971 11 CR 00798-1
Craig Lipton - 0971 11 CR 00799-1
Troy Kent - 0971 11 CR 00800-1
Laith Salma - 0971 11 CR 00801-1
Henri Pessah - 0971 11 CR 00802-1
Lydia Fong - 0971 12 CR00301-1
Norman Montalvo - 0971 12 CR 00785-1
Gilbert Chung - 0971 13 CR 00069-1
Mohammed Resaian - 0971 13 CR00246-1
Robert Williams - 0971 13 CR 00388-1
Daniel Rosenblat - 0971 13 CR 00587-1
Kua Hsuan Chuck Chang - 0971 13 CR 00670-1
Michael Navone - 0971 13 CR 00804-1
Florence Fung - 0971 13 CR00805-1
Joseph Giraudo - 0971 14 CR 00534-1
Raymond A Grisnell - 0971 13 CR00534-2
Kevin B Cullinane - 0971 13 CR 00534-3
James F Appendrodt - 0971 13 CR 00534-4
Abraham S. Farag - 0971 14 CR 00534-5

Re:  Worthing, Matthew (40861)                                                      Page 3

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | April 30, 1979 |
| **Age:** | 38 |
| **Race:** | White |
| **Hispanic Origin:** | Hispanic origin |
| **Sex:** | Male |



| | |
|---|---|
| **SSN#:** | 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 |
| **FBI#:** | 596723PD1 |
| **USM#:** | 17281-111 |
| **State ID#:** | N/A |
| **ICE#:** | N/A |
| **PACTS#:** | 40861 |

| | |
|---|---|
| **Education:** | Bachelor's Degree |
| **Dependents:** | 2 |
| **Citizenship:** | U.S. Citizen |
| **Immigration Status:** | U.S. Citizen |
| **Country of Birth:** | United States |
| **Place of Birth:** | Palo Alto, California |

| | |
|---|---|
| **Legal Address:** | 144 Edgehill Drive<br>San Carlos, California 94070 |

| | |
|---|---|
| **Residence Address:** | 144 Edgehill Drive<br>San Carlos, California 94070 |

| | |
|---|---|
| **Alias(es):** | Worthing, Matthew Lonergan |

| | |
|---|---|
| **Alternate IDs:** | None. |

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and  federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

Re:  Worthing, Matthew (40861)                                                                 Page 4

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.    On April 26, 2012, a Four-Count count Information was filed in the Northern District of California, charging the defendant, Matthew Worthing, with a violation of 15 U.S.C. § 1 – Bid Rigging (Counts One and Three), and a violation of 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud (Counts Two and Four).

2.    On June 20, 2012, Worthing pled guilty to Counts One through Four of the Information. Judgment and Sentencing are currently set for April 26, 2018, at 1:30 p.m., before the Honorable Charles R. Breyer, Senior United States District Judge.

3.    The written Plea Agreement, filed pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, is enclosed for the Court's review. According to the Plea Agreement, the defendant and the Government agree to the following Sentencing Guidelines calculations: As to Counts One and Three Base Offense Level 12, pursuant to USSG §2R1.1(a), a one-level increase pursuant to USSG § 2R1.1(b)(1) because the conduct involved agreement to submit non-competitive bids. As to Counts Two and Four: Base Offense Level 7, pursuant to USSG § 2X1.1(a) (incorporates base offense level from Guideline for substantive offense, USSG § 2B1.1(a)(1), an eight-level increase pursuant to USSG § 2B1.1(b)(1)(E) because the combined loss amount is more than $95,000, but less than $150,000. According to USSG § 3D1.3(a), the combined offense level is the highest offense level between two subgroups. The parties agree that the offense level to be applied is the offense level for the subgroup consisting of Counts Two and Four, which results in a combined offense level of 15. Further, the parties agree a two-level reduction pursuant to USSG § 3E1.1, for Acceptance of Responsibility is applicable, resulting in a Total Adjusted Offense Level of 13. The parties have not reached an agreement regarding the defendant's Criminal History Category. The undersigned officer is in agreement with the proposed guideline calculations as set forth in the Plea Agreement.

4.    Worthing initially appeared before the Honorable Laurel Beeler, U.S. Magistrate Judge, on May 17, 2012, charged with the instant offense. Worthing was ordered released on his own recognizance without Pretrial Services supervision. Worthing has met his obligations of release and has attended all required hearings.

5.    All defendants in the related cases have pled guilty to their relevant charging documents and are scheduled to be sentenced on March 21, 2018.

### The Offense Conduct

6.    The following information was provided by the Department of Justice Antitrust Division, which included investigative reports prepared by the Federal Bureau of Investigation (FBI). Further details were provided by the case agent.

### Background

7.   The Northern District of California investigation began in October 2009, when two brothers brought the Government information regarding bid rigging in San Mateo County, California. They reported that other bidders demanded payments in order to refrain from bidding at public auctions involving residential properties. One brother's first experience was a demand from Joseph Giraudo that he pay $5,000 so that Giraudo and his group would stop bidding. Giraudo told him "We want this property," and "you have to pay $5,000," or "we will bid this up." The brothers agreed to the payoff.

8.   According to the brothers, a core group of bidders dominated the auctions and were at the center of the bid rigging conduct. Other witnesses described this group of bidders as the "Big Five," consisting of Joseph Giraudo, Kevin Cullinane, Ray Grinsell, Daniel Rosenbledt, and Mohammed Rezaian. Giraudo was described as the "King" of this group.

9.   The FBI immediately began an undercover operation to investigate these allegations, which rapidly corroborated the conduct reported by the cooperating sources. The conspiracies in San Mateo and San Francisco counties operated the same way. Instead of competing at the public auction, the conspirators, either before or during the auction, agreed not to bid against each other for certain properties. When an agreement was not reached in advance of the auction, the conspirators frequently bid in increments of $100 in order give themselves time to negotiate a bid-rigging agreement during the auction without significantly raising the price of the home. Payoffs, which were made in cash, were due approximately 14 days after the auction when the purchaser received the deed from the trustee.

10.  Pursuant to these agreements, one member of the conspiracy was designated to win the auction, while others refrained from bidding in exchange for a cash payoff. The amount of the payoff varied depending on how many conspirators participated in the payoff agreement and on the expected profit from the resale of the property. These payments typically ranged between $5,000 and $30,000 per property. However, there were some larger payoffs, including payoffs as large as $150,000. By suppressing competition, the conspirators were able to acquire properties at the public auction for the lowest possible price – sometimes only a penny over the opening bid. "Losing" bidders enriched themselves with payoffs.

11.  Suppressing prices at the auctions is not only a violation of the federal Sherman Act, but contrary to the detailed public process established by California Civil Code §2924. This process was designed to maximize the auction price paid for foreclosed properties. Conversely, concerted bid suppression depresses auction prices and reduces the money that can be returned to lending institutions (if the lender retained the mortgage in its portfolio), investors (if the mortgage was securitized), and the homeowner (if the auction price exceeds the amount owed).

12.  Resale of bid-suppressed properties was profitable. According to one witness, when he asked Giraudo why he did not retire, Giraudo said, "If you could go to Las Vegas and win 90% of the time, would you stop?" Likewise Rezaian stated that purchasing

properties at the rigged auctions was like "money on trees." Although bid suppression was profitable, there is no requirement that the government show that conspirators make a profit from their unlawful activities.

13.    The investigation went overt on January 11, 2011, with the execution of 15 search warrants. Following the execution of the search warrants, more than 100 grand jury subpoenas for documents were issued and hundreds of witness interviews were conducted. To date, there have been over 60 guilty pleas in the investigation, 23 of which pertain to the San Mateo and San Francisco conspiracies.

14.    The evidence in the investigation of bid rigging in San Mateo and San Francisco counties consists primarily of the following: (1) witness interviews and testimony, (2) audio/video recordings made by cooperating sources and an undercover agent; (3) pay/owe ledgers made by the co-conspirators to track money paid or owed pursuant to payoff agreements, including a comprehensive set of payoff records maintained on the BlackBerry and computer of Mohammed Rezaian, a major player in the San Francisco and San Mateo conspiracies; and (4) miscellaneous documents including internal record-keeping spreadsheets and emails from co-conspirators documenting payoff agreements.

**Matthew Worthing's Conduct**

15.    Worthing is charged with participating in the San Mateo County bid-rigging and mail fraud conspiracies from September 2010 to January 2011, and participating in the San Francisco bid-rigging and mail-fraud conspiracies in or about September 2010. Specifically, the defendant was involved in nine total transactions (one in San Francisco and eight in San Mateo), for which he received six payoffs totaling $15,000 and made payoffs for three properties totaling $22,500.

16.    Worthing worked as a commercial real estate broker in the Bay Area from 2002 to 2009. In 2009, Worthing began working for his father's real estate company, Worthing Capital, and in February 2010 he started attending property auctions in San Francisco County. Beginning in April 2010, Worthing began attending auctions in San Mateo County.

17.    Worthing first became involved in the bid-rigging conspiracies in August 2010 during the auction for 2307 Hacienda Street in San Mateo. Worthing attended the auction with his father's business partner, Vince Sakowski. During the auction, Sakowski was speaking to co-conspirator Kevin Cullinane and instructed Worthing to stop bidding. Sakowski later explained that they would be paid either $6,000 or $6,500 for agreeing not to bid on the property. About 10 days later, Worthing received an envelope filled with cash from co-conspirator Mo Rezaian, of which $3,000 was Worthing's share. After that property, Worthing began entering into payoff agreements on his own.

18.    Worthing also paid others to refrain from bidding. For example, on October 1, 2010, Worthing attended an auction for 6 Santa Ana Avenue, Daly City. Worthing, along with a business partner, agreed to pay Rezaian and four others $2,000 each to stop bidding. Worthing then purchased the property.

Re:  Worthing, Matthew (40861)                                                                                    Page 7

19.   Worthing received approval from his senior partners (John Worthing and Vince Sakowski) who were aware and approved of all of his transactions and shared in all payoffs as well as responsibility for making payoffs.

20.   Worthing's plea agreement reflects his participation in rigging nine properties in San Mateo and San Francisco counties, and a volume of commerce of $917,987. The volume of commerce does not reflect the bid-rigging agreements that Worthing made in which he received payoff money. Worthing accepted payoffs not to bid in six instances, in which a total of $69,000 in payoff money was distributed to Worthing and his co-conspirators. Worthing received $15,000 of this payoff money for agreeing not to bid on six properties.

### Victim Impact

21.   The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense.

22.   Due to all of the defendants' involvement in the instant offense, each of them arguably made a larger amount of money at a loss and restitution owed to the bank due to the lower sale margins through auction purchases. However, it would be impossible to determine or essentially predict what a property would have auctioned off for without the involvement of the defendants.

23.   The government recommends a restitution amount of $15,000. This represents the amount of payoff money that Worthing personally received during the conspiracy. The victims entitled to restitution in this case are primarily the mortgage holders of the rigged properties. Some of these mortgages were securitized and sold as investments in pension or other retirement plans. In some circumstances the auction price for the home exceeded the homeowner's mortgage and the homeowner would be a victim of the offense. The Government is still finalizing a list of victims and their addresses, and it will be provided prior to sentencing.

### Adjustment for Obstruction of Justice

24.   The probation officer has no information indicating the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

25.   The defendant entered a guilty plea and was cooperative with the probation officer. He immediately answered questions from the FBI when he was first contacted in January of 2011. During the presentence investigation, the defendant advised that he accepts what he did was wrong, he is sorry he did it, and he takes responsibility for his unintelligent actions.

Re: Worthing, Matthew (40861)                                                                 Page 8

### Offense Level Computation

26.    In accordance with the Supreme Court Decision in **United States v. Booker**, the following guideline calculations are no longer binding but advisory. Therefore, they must be considered by the sentencing court together with other sentencing goals. The current United States Sentencing Commission, 2016 Guidelines Manual, is being used as there are no ex post facto issues. USSG §1B1.11(a).

27.    Pursuant to USSG §3D1.2(b), counts are grouped together when they involve the same victim or two or more acts are transactions connected by a common criminal objective or constituting part of a common scheme or plan. Therefore, Counts 1 through 4 are grouped for guideline purposes.

### Count Group 1: Bid Rigging and Mail Fraud

28.    **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 1349 is USSG §2X1.1. Pursuant to §2X1.1(a), 2B1.1 is referenced when determining the offense level. The base offense level is 7. USSG §§2X1.1(a) and 2B1.1(a)(1).    **7**

29.    **Specific Offense Characteristics:**  Pursuant to USSG § 2B1.1(b)(1)(E), an eight-level increase is applicable if the combined loss amount is more than $95,000, but less than $150,000. Specifically, the loss amount attributed to the defendant and agreed upon in the Plea Agreement is $96,500, thus, an eight-level increase is appropriate.    **+8**

30.    **Victim Related Adjustment:** None.    **0**

31.    **Adjustment for Role in the Offense:** None.    **0**

32.    **Adjustment for Obstruction of Justice:** None.    **0**

33.    **Adjusted Offense Level (Subtotal):**    **15**

34.    **Greater of the Adjusted Offense Levels Above:**    **15**

35.    **Chapter Four Enhancement:** None.    **0**

36.    **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a).    **-2**

37.    **Total Offense Level:**    **13**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

38.    Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following criminal history category calculation to be advisory.

**Juvenile Adjudication(s)**

39.    None.

**Adult Criminal Conviction(s)**

40.    None.

**Criminal History Computation**

41.    The criminal convictions above result in a subtotal criminal history score of zero.

42.    The total criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.

**Other Criminal Conduct**

43.    None.

**Pending Charges**

44.    None.

**Other Arrests**

45.    None.

## PART C. OFFENDER CHARACTERISTICS

46.    The following information was provided by the defendant during the presentence investigation interview. Personal information provided by the defendant was verified by the defendant's wife, Alyssa Worthing. A home investigation was conducted on March 1, 2018.

**Personal and Family Data**

47.    Matthew Lonegran Worthing was born on April 30, 1979, in Palo Alto, California, to the marital union of John Worthing, age 71, and Margaret "Peggy" Worthing (nee: Lonegran), age 69, both of whom reside in Atherton, California. Mr. Worthing is an investment real estate broker who founded Worthing Capital and Mrs. Worthing is a homemaker. The defendant has two younger sisters who both reside in San Francisco, California. Katherine Worthing, age 37, is a real estate agent, and Erin Worthing, age 34, is a property manager for CBRE Group, Inc. Worthing's family is aware of the instant offense and they remain supportive.

48.    The defendant was raised in the Bay Area and with the exception of the four years he spent away at college, he has remained in the area. He reported having an enjoyable childhood, as he was positively supported and all of his material needs were met. He

explained that his father worked outside of the home and his mother was a homemaker, but the two shared in parenting duties. Smaller disciplinary issues were handled by his mother, and any larger issues were tackled jointly by both parents, who ascribed to the mantra of "firm but fair." Worthing explained that discipline consisted of "time-outs" and "being grounded."

49.     The defendant described a close-knit family in which he and his siblings attended the same school from kindergarten through eighth grade. The family also extensively traveled together. Worthing recalled getting his first passport approximately age ten and taking his first international trip to Europe. Later, the defendant was able to spend the second semester of his sophomore year of high school in London, where he resided with extended family members. In addition to a childhood full of travel, Worthing participated in baseball, basketball, and rugby. He explained that he was required to participate in community service as part of his curriculum, and he consistently performed more than the minimum required hours.

50.     As an adult, the defendant reported he has continued his involvement in community service by intermittently volunteering at St. Edmunds Children's Home. He has provided charitable donations to the Agnews Developmental Center, Ronald McDonald House, the St. Charles Parish, and various others organizations. As a father to two small children, he spends his leisure time watching his children participate in gymnastics, dance, and soccer.

51.     The defendant met his wife, Alyssa Worthing (nee: Reeck), at a wedding in 2005. She moved to San Francisco from Minnesota in 2007, and the two were married in Winona, Minnesota on October 3, 2009. The two have two minor children: Lily Annemargaret Worthing, age five, and Leo Evin Worthing, age one. The defendant described a strong family unit. He related that he and Alyssa are best friends and activity partners. Their relationship is "full of love" and free of emotional and physical abuse. The defendant related that a key component of his future involves continuing to be happily married.

52.     During an interview with Mrs. Worthing, she described the defendant as being a very good person who enjoyed a stable upbringing. She explained the defendant has a good sense of humor that makes him well liked by everyone. Mrs. Worthing also described the defendant as being a good father who is very "hands on."

53.     A home inspection was conducted on March 1, 2018, at 144 Edgehill Drive, in San Carlos, California. The 2,570 square foot two story home has a total of four bedrooms and three bathrooms located on a 6,270 square foot lot. The downstairs area has a formal dining room and open kitchen connected to the living room, along with one bedroom and bathroom.  The moderately sized back yard is accessible through a sliding glass door in the living room. The upstairs consists of three bedrooms, two bathrooms and a laundry room. The home also has an attached two car garage. The defendant purchased the home while it was still under construction in May of 2015, for $1,615,000.

54.     Regarding the future, the defendant plans to continue to work with his father's business so that he can support his family. He explained that he is not required to be licensed to

continue his current role, so that will not be an obstacle for him. However, he did acknowledge that disclosing his conviction to potential investors may make business a little more difficult for him. Further, he is already unable to bank at some institutions as a result of the instant offense.

55.     Since the offense occurred approximately eight years ago, the defendant has been able to start a family and successfully earn a living in the field of real estate investment. As such, he explained that there would not be much the probation office would need to do to help him.

### Physical Condition

56.     The defendant is a Caucasian male who stands five feet and nine inches tall, weighs 168 pounds, and has hazel eyes and dark brown hair. He does not have any distinguishing marks, scars, or tattoos. He did not report any physical ailments or allergies.

### Mental and Emotional Health

57.     The defendant declined to discuss his mental and emotional health status on the advice of counsel.

58.     According to the defendant's wife, aside from the stress brought on by the instant offense, he does not have any mental or emotional health issues.

### Substance Abuse

59.     The defendant declined to discuss his substance abuse history on advice of counsel.

### Educational, Vocational and Special Skills

60.     During his primary years, the defendant attended Catholic schools. He graduated from Bellarmine College Preparatory School in 1997. The defendant provided a photograph of his diploma indicating he graduated from Villanova University in Villanova, Pennsylvania, in 2001 (verified).

61.     Worthing is able to speak, read, and write his native language of English. He does not have any martial arts, firearms, or weapons training, and does not have any specialized skills.

### Employment Record

62.     The defendant provided a summary of his employment history but declined to provide salary information.

|     | Start Date | End Date | Employer | Gross/Other Monthly Income | Hours/ Week |
|-----|------------|----------|----------|----------------------------|-------------|
| 63. | 2010 | Present | Worthing Capital | Unknown | Unknown |

|  |  |  | Menlo Park, California |  |  |
|---|---|---|---|---|---|

The defendant is self-employed and is a partner. This company was started by his father John Worthing and Vince Sakowski in approximately 1990 (verified). The defendant purchases and resells residential properties. Worthing advised he is paid by taking a draw.

| 64. | 2008 | 2009 | Skyline Pacific Properties San Francisco, California | Unknown | Unknown |
|---|---|---|---|---|---|

The defendant was employed in real estate acquisitions (verified). His employment with company was verified via Accurint. He was paid based on a commission structure, and reportedly left this position due to a downturn in the economy.

| 65. | 2001 | 2007 | BT Commercial Real Estate | Unknown | Unknown |
|---|---|---|---|---|---|

The defendant was employed as a real estate broker. He reportedly left this position to get into acquisitions. This employment was not verified as this company has since closed.

### Financial Condition: Ability to Pay

66. The defendant declined to provide signed Net Worth and Monthly Cash Flow statements, and declined to provide income verification. The following is an estimation of the value of the defendant's home according to Zillow and Redfin.

### Assets

| Residence | 144 Edgehill Drive, San Carlos, CA | $2,245,645.00 |
|---|---|---|

**Total Assets** $2,245,645

**Total Net Worth** $2,245,645

**Total Monthly Cash Flow** Unknown

### Analysis

67. Pursuant to USSG § 5E1.2, "The court shall impose a fine in all cases, except where the defendant establishes he is unable to pay and is not likely to become able to pay any

fine." Because the defendant has declined to provide his financial information, he has not proved that he is unable to or will become unable to pay any fine. The defendant is employed full-time, is represented by retained counsel, and has at least one known substantial asset. As such, it appears that the defendant would be capable of paying a substantial fine, in addition to restitution, if ordered.

## PART D. SENTENCING OPTIONS

68.     Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following guideline provisions to be advisory.

### Custody

69.     **Statutory Provisions:** The maximum term of imprisonment on Counts 1 & 3 are 10 years. 15 U.S.C. § 1. This offense is a Class C felony. 18 U.S.C. § 3559(a)(3). The maximum term of imprisonment on Counts 2 & 4 are 30 years. 18 U.S.C. § 1349. This offense is a Class B felony. 18 U.S.C. § 3559(a)(2).

70.     **Guideline Provisions:** Based upon a total offense level of 15 and a criminal history category of I, the guideline imprisonment range is 18 months to 24 months. Because the guideline range falls into Zone D of the Sentencing Table, the minimum term must be satisfied by a sentence of imprisonment. USSG §5C1.1(f).

### Supervised Release

71.     **Statutory Provisions:** The Court may impose a term of supervised release of not more than three years on Counts 1 & 3. 18 U.S.C. § 3583(b)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d). The Court may impose a term of supervised release of not more than five years on Counts 2 & 4. 18 U.S.C. § 3583(b)(1). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised

release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

72.    **Guideline Provisions:** Since the offenses for Counts 1 & 3 are Class C Felonies, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d). Since the offenses for Counts 2 & 4 are Class B Felonies, the guideline range for a term of supervised release is 2 years to 5 years. USSG §5D1.2(a)(1). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

### Probation

73.    **Statutory Provisions:** Counts 1 & 3: The defendant is eligible for not less than one nor more than five years probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 USC § 3563(a)(2). Counts 2 & 4: The defendant is ineligible for probation because the offense is a Class B Felony. 18 U.S.C. § 3561(a)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 USC § 3563(a)(2).

74.    **Guideline Provisions:** Counts 2 & 4: The defendant is ineligible for probation because the offense is a Class B Felony. USSG §5B1.1(b)(1). Count 4: The defendant is ineligible for probation because the offense is a Class B Felony. USSG §5B1.1(b)(1). Since the

applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2).

**Fines**

75.    **Statutory Provisions:** Counts 1 - 4: The maximum fine is $1,000,000. 18 U.S.C. §§ 3571(b) and 15 U.S.C. § 1.

76.    Counts 1 - 4: A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

77.    **Guideline Provisions:** The fine range for this offense is $4,000 to $1,000,000. If the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by the statute. USSG §§5E1.2(c)(3), (c)(4) and (h)(1).

78.    **Guideline Provisions:** Pursuant to USSG § 2R1.1, the fine range for an individual convicted of an antitrust crime is one to five percent of the volume of commerce, but not less than $3,000. As such, the corresponding fine range for the defendant is $9,179 to $45,899.  USSG §§ 5E1.2(c)(3), (c)(4) and (h)(1).

79.    Costs of prosecution shall be imposed on the defendant as required by statute. USSG 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG 5E1.2(d)(7) and 18 U.S.C. 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides the following monthly cost data:

|  | **Bureau of Prisons Facilities** | **Community Correction Centers** | **Supervision by Probation Officer** |
|---|---|---|---|
| Daily | $88.00 | $71.00 | $11.00 |
| Monthly | $2,665.00 | $2,174.00 | $341.00 |
| Annually | $31,976.00 | $26,083.00 | $4,097.00 |

**Restitution**

80.    **Statutory Provisions:** Pursuant to 18 U.S.C. § 3663(a)(1)(A), restitution in the total amount of $14,500 may be ordered in this case. Restitution, as set forth below, is due and owing to the following victims:

| **Victim** | **Amount** |
|---|---|
| Bayview Loan Servicing, LLC | $4,000 |
| CitiMortgage | $2,500 |
| Ocwen Loan Servicing | $2,000 |

| Wells Fargo | $4,500 |
| Provident Funding Associates, LP | $2,000 |
| Total | $14,500 |

81.    **Guideline Provisions:** Restitution may be ordered in this case. USSG §5E1.1.

**Forfeiture**

82.    **Statutory Provisions:** Forfeiture is not an issue.

83.    **Guideline Provisions:** Forfeiture is not an issue.

**Denial of Federal Benefits**

84.    **Statutory Provisions:** None.

85.    **Guideline Provisions:** None.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

86.    The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

87.    Presentation of information in this section does not necessarily constitute a recommendation by the probation officer for a sentence outside the applicable advisory guideline range.

88.    Per 18 U.S.C. § 3553(a)(6), when imposing a sentence, the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  This factor shall be considered for possible consideration for a sentence below the advisory guidelines range.

89.    The parties advised the probation officer of the defendant's intent to withdraw his guilty plea to the Mail Fraud counts and only plead guilty to the Bid Rigging counts. If the Court permits the defendant to do so, the Base Offense Level would be 12 pursuant to USSG § 2R1.1, with a one-level enhancement pursuant to USSG § 2R1.1(b)(1), and a two-level reduction pursuant to USSG § 3E1.1, resulting in a Total Adjust Offense Level of 11.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Lenene  Williams
        U.S. Probation Officer

Approved:

Catheryn  Grier
Supervisory U.S. Probation Officer

**ADDENDUM TO THE PRESENCE REPORT**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**UNITED STATES V. MATTHEW WORTHING, DKT. 0971 3:12CR00300-001 CRB**

The United States Probation Officer certifies that the presentence investigation report, including any revisions thereof and this addendum, has been disclosed to the defendant's counsel for discussion with the defendant, and to counsel for the Government, pursuant to Crim. L.R. 32-5 and FRCrimP 32(g).

## <u>OBJECTIONS</u>

### <u>By the Government</u>

1.      A written response has been received from the Government, which is in compliance with Crim. L.R. 32-4(b) and (c). There are no objections to the presentence report.

### <u>By the Defendant</u>

2.      A written response has been received from the defense counsel, which is in compliance with Crim. L.R. 32-4(b) and (c).

3.      **<u>Objection Number One:</u>** Defense counsel objects to the $15,000 in restitution owed as indicated by the government, and previously agreed to in the Plea Agreement by the defendant. Defense counsel asserts the defendant did not receive, and thus does not owe a payoff in the amount of $1,500 to Wells Fargo. Defense counsel further asserts the defendant did not receive, and thus does not owe a payoff in the amount of $4,000 to Bayview Loan Servicing LLC. It is the defense counsel's position that the total amount of restitution is $9,500.

Re:  Worthing, Matthew (40861)

4.      **Probation Officer's Response:**   The probation officer reviewed the investigative material that was provided by the government, along with the Plea Agreement signed by the defendant, and relied on this information for the determination of the restitution amounts owed and the victims the amounts are owed to. Further, defense counsel did not provide material to refute the claim that the amount should be less.

5.      As such, the objection remains unresolved.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Lenene Williams
        U.S. Probation Officer

Approved:

Catheryn Grier
Supervisory U.S. Probation Officer

SENTENCING RECOMMENDATION

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
UNITED STATES V. MATTHEW WORTHING, DKT. 3:12CR00300-1 CRB

**TOTAL OFFENSE LEVEL**          15
**CRIMINAL HISTORY CATEGORY**     I

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | Cts. 1 & 3 : 10 years<br>Cts. 2 & 4: 30 years | 18 months to 24 months | Not Recommended |
| **SUPERVISED RELEASE:** | Cts. 1 & 3 : 3 years<br>Cts.  2 & 4: 5 years | Cts. 1 & 3: 1 year to 3 years<br>Cts. 2 & 4: 2 years to 5 years | Not Recommended |
| **PROBATION:** | Ineligible | Ineligible | 3 years |
| **FINE:** | Cts. 1 - 4 : $1,000,000 | $9,179 to $45,899 | $45,899 |
| **RESTITUTION:** | $15,000 | $15,000 | $15,000 |
| **SPECIAL ASSESSMENT:** | $100 per count | $100 per count | $400 |

**Justification:**

Matthew Worthing is before the Court after pleading guilty to violations of 15 U.S.C. § 1- Bid Rigging and 18 U.S.C. § 1349 Conspiracy to Commit Mail Fraud. The defendant and others agreed not to compete to purchase selected properties at public auctions; designated which conspirator would win selected properties at public auctions; refrained from and stopping bidding for selected properties at public auctions; purchased selected properties at public auctions at artificially suppressed prices; and negotiated, made, and received payoffs or other financial benefits for agreeing not to compete with co-conspirators. The defendant purchased approximately nine foreclosed properties both independently and with combined resources from other bidders in the San Francisco County and San Mateo County auctions. The total volume of commerce, which does not include any payoffs he was owed or received based upon his participation, was stipulated in the Plea Agreement as $917,987. While a minimal role reduction

was not applied to this case, the defendant's overall conduct was not as involved or egregious as other co-conspirators in the instant offense.

In determining the sentence to recommend, the probation officer considered the factors set forth in 18 U.S.C. § 3553(a), which includes the nature and circumstances of the offense and the history and characteristics of the defendant. Additionally, the Court must consider whether the sentence reflects the seriousness of the offense; whether the punishment affords adequate deterrence to criminal conduct; whether the sentence protects the public from future crimes of the defendant; and to avoid sentence disparity.

The defendant has no criminal history or prior contact with law enforcement officers. The defendant and his sisters were raised by both parents and all of their basic material needs were met. He enjoyed an active childhood full of sports and travel. As an adult, he has intermittently volunteered his time and provided charitable donations to numerous organizations.

Worthing has been married since 2009, and the couple have two small children ages five and one years old. The defendant is the sole financial provider for the family and Mrs. Worthing stays at home to care for the children. He declined to provide details of his income, but he has been consistently employed in real estate since 2001.

The defendant declined to discuss his medical history and does not appear to have a history of mental or emotional health issues.

With regard to the facts of this case, and the defendant's history as relevant to 18 U.S.C. § 3553(a)(1), the probation officer considered the defendant's low likelihood of recidivism, his consistent employment history, his success over a lengthy period of pretrial release, and his commitment to his family to be mitigating factors. The defendant did not participate in as many auctions, did not coerce others into participating in the offense, and the loss amount attributed to him is substantially lower than the majority of the others involved in the offense. Per 18 U.S.C. § 3553(a)(6), when imposing a sentence, the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As such, the probation officer believes that a sentence below the low end of the guideline range is appropriate in this case. Therefore, the probation officer recommends a non-custodial sentence of three years probation. This sentence is sufficient but not greater than necessary to achieve the goals of sentencing. For the last several years, this offense has greatly impacted the defendant's usually law abiding life, and it is anticipated this sentence will deter him from engaging in any future criminal conduct. It is also hoped that this sentence will serve as a general deterrence, as well as emphasize the seriousness of the offense, promote respect for the law, and provide just punishment. In view of the offense and to ensure his future income is from legitimate sources, the defendant shall provide the probation officer with any requested financial information. Because he pled guilty to a felony offense, he should not possess any weapons and submit to DNA testing as statutorily mandated. A special assessment of $100 is mandatory. As stipulated in the Plea Agreement, the defendant has agreed to pay restitution in the amount of $15,000. The amount of restitution the defendant agreed to pay is relatively insignificant compared to his assets and he did not provide financial documentation indicating he does not have the ability to pay a fine,  thus a fine of $45,899 is also recommended.

**Voluntary Surrender:**

It appears the defendant is a person whose release is not restricted under 18 U.S.C. §3143. The defendant has kept all court appearances, complied with conditions of pretrial release, and is not viewed as a flight risk or a danger to the community.  Therefore, the defendant is considered to be a good candidate for voluntary surrender.

**Recommendation**

It is respectfully recommended that sentence in this case be imposed as follows:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Matthew Worthing is hereby placed on probation for three years.

While on probation, the defendant shall not commit another Federal, State or local crime, shall comply with the standard conditions that have been adopted by this court, except that the Mandatory Drug Testing Provision is suspended, and shall comply with the following additional conditions:

**Recommendation**

1.    You shall pay any restitution and special assessment that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2.    You shall provide the probation officer with access to any financial information, including tax returns, and shall authorize the probation officer to conduct credit checks and obtain copies of income tax returns.

3.    You shall cooperate in the collection of DNA as directed by the probation officer.

4.    You shall not own or possess any firearms, ammunition, destructive devices, or other dangerous weapons.

5.    You shall not open any new lines of credit and/or incur new debt without the prior permission of the probation officer.

6.    You shall submit your person, residence, office, vehicle, computer, other electronic communication or data storage devices or media, and effects or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to such a search may be grounds for revocation; you shall warn any residents that the premises may be subject to searches.

7.    The defendant shall not have contact with any co-participant in this case, namely Gary Anderson, Patrick Campion, Keith Goodman, Craig Lipton, Troy Kent, Laith Salma, Henri Pessah, Lydia Fong, Norman Montalvo, Gilbert Chung, Mohammad Rezaian, Robert Williams, Daniel Rosenblat, Kua Hsuan Chuck Chang, Michael Navone, Florence

Re:  Worthing, Matthew (40861)                                                                    Page 4

      Fung, Joseph Giraudo, Raymond A. Grisnell, Kevin B. Cullinane, James F. Appendrodt,
Abraham S. Farag.

It is further ordered that the defendant shall pay to the United States a special assessment of
$400. Payments shall be made to the Clerk of U.S. District Court, 450 Golden Gate Ave., Box
36060, San Francisco, CA 94102.

It is further ordered that the defendant shall pay to the United States a fine in the amount of
$45,899. Once the defendant is on probation, the fine must be paid in monthly payments of not
less than $2,500 or at least 10 percent of earnings, whichever is greater, to commence on the date
of sentencing. Any established payment plan does not preclude enforcement efforts by the US
Attorney's Office if the defendant has the ability to pay more than the minimum due. Fine
payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450
Golden Gate Ave., Box 36060, San Francisco, CA 94102.

It is further ordered that the defendant shall pay restitution totaling $15,000 to the following
victims in the following amounts:

| Victim | Restitution |
|---|---|
| Bayview Loan Servicing, LLC | $4,000 |
| Attn: Cashiering Department | |
| 4425 Ponce De Leon Boulevard 5th Floor | |
| Coral Gables, FL 33146 | |
| | |
| Ocwen Loan Servicing, LLC | $2,000 |
| c/o James Bologna | |
| Cashiering Department | |
| 1661 Worthington Road | |
| West Palm Beach, FL 33409 | |
| | |
| CitiMortgage | |
| c/o FPI | $2,500 |
| 1000 Technology Drive, Mail Stop 367 | |
| O'Fallon, MO 63368 | |
| | |
| Wells Fargo, N.A. | $4,500 |
| Attn: Denise Roy | |
| 625 Marquette Avenue South, 16th Floor | |
| Minneapolis, MN 55402 | |
| | |
| Provident Funding Associates, LP | $2,000 |
| Loan Servicing | |
| P.O. Box 5914 | |
| Santa Rosa, CA 95402 | |
| | _____ |
| Total | $15,000 |

Re:  Worthing, Matthew (40861)                                                            Page 5

Restitution must be paid in full within 30 days of sentencing. Any established payment plan does not preclude enforcement efforts by the US Attorney's Office if the defendant has the ability to pay more than the minimum due. The restitution payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

_____
By:  Lenene Williams
       U.S. Probation Officer

Approved:

_____
Catheryn  Grier
Supervisory U.S. Probation Officer