1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Andrew.Mast@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA | CASE NO. CR 12-00300 CRB |
|---|---|
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| MATTHEW WORTHING, | |
| Defendant. | |

The United States respectfully requests that this Court sentence defendant MATTHEW

WORTHING to (1) serve 12 months of custody, (2) serve three years of supervised release,

and (3) pay a criminal fine of $3,000, a $400 special assessment, and $15,000 in restitution.

This sentence is consistent with the parties' plea agreement.

/ /

/ /

/ /

/ /

**BACKGROUND**

Worthing is charged with participating in the San Mateo County bid-rigging and mail-fraud conspiracies from September 2010 to January 2011, and participating in the San Francisco bid-rigging and mail-fraud conspiracies in or about September 2010.  Presentence Report (PSR) ¶ 15.

Worthing worked as a commercial real estate broker in the Bay Area from 2002 to 2009. In 2009, Worthing began working for his father's real estate company, Worthing Capital, and in February 2010 he started attending property auctions in San Francisco County.  Beginning in April 2010, Worthing began attending auctions in San Mateo County.  PSR ¶16.

Worthing first became involved in the bid-rigging conspiracies in August 2010 during the auction for 2307 Hacienda Street in San Mateo.  Worthing attended the auction with his business partner.  During the auction, Worthing's partner was speaking to co-conspirator Kevin Cullinane and signaled to Worthing to stop bidding.  His partner later explained that they would be paid either $6,000 or $6,500 for agreeing not to bid on the property.  About 10 days later, Worthing received an envelope filled with cash from co-conspirator Mo Rezaian, of which $3,000 was Worthing's share.  After that auction, Worthing began entering into payoff agreements on his own.  PSR ¶ 17.

Worthing also paid others to refrain from bidding.  For example, on October 1, 2010, Worthing attended an auction for 6 Santa Ana Avenue, Daly City.  Worthing, along with a business partner, agreed to pay Rezaian and four others $2000 each to stop bidding.  Worthing then purchased the property.  PSR ¶18.

On April 26, 2012, Worthing was charged by information with two counts of bid rigging and two counts of conspiracy to commit mail fraud in San Mateo and San Francisco Counties. Dkt. 1.  On June 20, 2012, Worthing pleaded guilty to all four counts. Dkt. 8.  The government later offered to enter a new plea agreement, in which Worthing would plead to bid rigging charges only. Worthing declined.  Worthing instead moved to withdraw his plea, which the court denied.  Dkts. 61, 100.  Therefore, unlike the other defendants in this case, Worthing's plea

//

1  contains both fraud and antitrust counts and his Guidelines calculation is driven by the fraud

2  charges, as discussed further below.

3      Worthing's fraud loss, representing the payoff money paid and received on properties

4  Worthing was involved in rigging, and as stipulated to in his plea agreement, is $96,500.  Dkt. 8;

5  PSR ¶ 29.  For the antitrust counts, Worthing's plea agreement reflects his participation in

6  rigging nine properties in San Mateo and San Francisco counties, and a volume of commerce of

7  $917,987.  Dkt. 8.  The volume of commerce does not reflect the bid-rigging agreements that

8  Worthing made in which he received payoff money.  Worthing received $69,000 in payoff

9  money for agreeing not to bid on six properties.  PSR ¶ 20.

10     Worthing's plea agreement contained a cooperation provision permitting the government

11 to move for a downward departure at its discretion under U.S.S.G. § 5K1.1.  That provision

12 states that "[i]f the United States determines that the defendant has provided substantial

13 assistance in any Federal Proceeding, as defined in Paragraph 18 of this Plea Agreement, and has

14 otherwise fully complied with all of the terms of this Plea Agreement, it will file a [5K1.1]

15 motion." Dkt. 8 at ¶15.  This determination is "within the sole discretion of the United States"

16 and the government's determination that substantial assistance has not been provided "will not

17 entitle the defendant to withdraw his guilty plea." Paragraph 18 of the plea agreement demands

18 the "ongoing, full, and truthful cooperation of the defendant." *Id*. at ¶ 18.  On January 17, 2018,

19 Worthing filed a motion to withdraw his guilty plea.  In that motion, Worthing challenged the

20 government's charging documents, the government's investigation and evidence (including

21 raising an entrapment defense), and the adequacy of his plea colloquy.  Dkt. 61.  This motion and

22 the litigation that ensued put Worthing in an adversarial position against the government, raised

23 affirmative defenses, and stopped any ongoing and full cooperation.  Furthermore, Worthing's

24 motion to withdraw his plea rendered his prior cooperation substantially less valuable because of

25 the impact the motion had on Worthing's ability to testify on behalf of the government.

26 Additionally, the government expended considerable resources litigating Worthing's motion to

27 withdraw and related motions.  The Court denied his motion to withdraw, and Worthing remains

28   //

U.S.' SENT'G MEMO                                3
*United States v. Worthing*, CR 12-00300 CRB

1   bound by his plea agreement.  Dkt. 100.  The government does not move for a departure under

2   5K1.1.

3                                            ARGUMENT

4   **A.      Sentencing Guidelines Calculations**

5          Worthing pleaded to two counts of bid rigging and two counts of mail fraud.  The two

6   bid-rigging counts (counts one and three) group with the mail-fraud charges (counts two and

7   four) under U.S.S.G. § 3D1.2(b).  According to U.S.S.G. § 3D1.3(a), the combined offense level

8   is the highest offense level between these two subgroups.  Here, the highest offense level is the

9   offense level for the subgroup consisting of fraud counts two and four, which results in a

10  combined offense level of 13.  For the Court's reference, the government also provides the

11  sentencing calculations for the antitrust counts.  The sentencing guidelines in effect at the time of

12  Worthing's plea agreement were the 2011 Guidelines.

13                               **1.      Criminal History**

14         In Paragraph 13 of the Plea Agreement, the parties agree that Worthing's Criminal

15  History Category is determined by the Court.  Dkt. 8.  The Presentence Report (PSR) calculates

16  Worthing's Criminal History Category as I, based on no criminal history.  PSR ¶¶ 38-42.

17                               **2.      Offense Level**

18         The PSR calculates the total offense level as 13 under the fraud guidelines, consistent

19  with the plea agreement.  PSR ¶ 37; Dkt. 8.  This calculation includes a base offense level of

20  seven, an eight-level increase for fraud loss exceeding $95,000, and a downward reduction of

21  two levels for acceptance of responsibility.  PSR ¶¶ 27-36; U.S. Sentencing Guidelines Manual

22  ("U.S.S.G.") §§2B1.1(a)(1), 2B1.1(b)(1), and 3E1.1(a) (U.S. Sentencing Comm'n 2011).  Under

23  the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a

24  sentence ranging from 12 to 18 months of imprisonment.

25         For the antitrust counts, Worthing's total offense level is 11.  This calculation includes a

26  one-level increase to the base offense level of 12 for conduct involving the submission of non-

27  competitive bids and a downward reduction of two levels for acceptance of responsibility.  Dkt.

28  8; U.S.S.G. §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a).  Under the Sentencing Guidelines, an

U.S.' SENT'G MEMO                                  4
*United States v. Worthing*, CR 12-00300 CRB

1   offense level of 11 and Criminal History Category of I results in a sentence ranging from eight to

2   fourteen months of imprisonment.

### 3.      Fine and Restitution

4        The plea agreement calculates a fine range of $3,000 to $30,000.  Dkt. 8.  This fine range

5   is consistent with the 2011 Sentencing Guidelines in effect at the time the plea agreement was

6   entered.  2011 U.S.S.G. §5E1.2(c)(3) (fine range of $3,000 to $30,000 for an offense level of 12-

7   13).  The government recommends a $3,000 fine in conjunction with its custodial

8   recommendation.

9        Under the antitrust guidelines, the fine would be calculated as one to five percent of the

10  volume of commerce, but not less than $20,000.  U.S.S.G. § 2R1.1(c)(1).  For Worthing, that

11  range would be $20,000 to $45,899.  Dkt. 8.  The parties have agreed in Paragraph 12 of the plea

12  agreement that restitution is $15,000. Dkt. 8.

### B.      Sentencing Recommendation

14       The government's recommendation of 12 months imprisonment is reasonable and not

15  greater than necessary in light of the factors articulated in 18 U.S.C. § 3553 and adequately

16  considers the history and characteristics of defendant, including his lack of prior criminal history.

17  The government believes the Court's sentence must reflect the seriousness of the offense,

18  promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and

19  white-collar crime generally.

20       Given the magnitude of the financial harm caused by Worthing's conduct, the

21  government's recommendation, which includes a custodial term, is appropriate and consistent

22  with the commentary in the applicable Guidelines.  The commentary makes clear that "prison

23  terms for [Antitrust] offenders should be . . . common" and "alternatives such as community

24  confinement [should] not be used to avoid imprisonment of antitrust offenders."  U.S.S.G.

25  §2R1.1, cmt. n. 5 & Background.  Worthing refused to disclose his finances with Probation, but

26  the government presumes he has substantial assets.  Therefore, a fine alone—in the absence of a

27  custodial term—would not serve as an adequate deterrent.  The foreclosure auctions were

28  vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions

U.S.' SENT'G MEMO                                    5
*United States v. Worthing*, CR 12-00300 CRB

1  were flooded with investment opportunities.  Worthing did not originate the conspiracy, but he

2  joined in willingly.

3                                         **CONCLUSION**

4          For the foregoing reasons, the United States respectfully requests that the Court

5  sentence defendant Worthing to (1) serve 12 months of custody, (2) serve three years of

6  supervised release, and (3) pay a criminal fine of $3,000, a $400 special assessment, and

7  $15,000 in restitution.

8

9  Dated:  April 19, 2018                              Respectfully submitted,

10                                                          _____/s/_____

11                                                          ANDREW MAST
                                                            Trial Attorney
12                                                          United States Department of Justice
                                                            Antitrust Division
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28