ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Andrew.Mast@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW WORTHING,<br><br>Defendant. | CASE NO. CR 12-00300 CRB<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** |

On June 20, 2012, Defendant Matthew Worthing and the government entered into a plea agreement in this case, agreeing to his volume of commerce, fraud loss, restitution, and offense level under the Sentencing Guidelines, among other things. Dkt. 8. Worthing now argues for a different volume of commerce, fraud loss, restitution, and offense level. Dkt. 114 at 8, 20. He cannot. Worthing is precluded from making these arguments by his plea agreement, and the Court should ignore these arguments. Additionally, a variance from the Guidelines is not warranted based on Worthing's role in the offense, his plea to mail fraud, his perceived entrapment, or his alleged substantial assistance. The government respectfully

requests that the Court sentence Worthing to a 12-month custodial sentence, consistent with the agreed upon terms in his plea agreement.

## ARGUMENT

**I. Worthing Has Agreed To His Volume of Commerce, Fraud Loss, And Restitution.**

Worthing has agreed to a volume of commerce of $917,987. Dkt. 8. Yet Worthing now argues that "the government attributes a volume of commerce to Mr. Worthing of $917,987," when Worthing's volume of commerce should be "$507,387." Dkt. 114 at 8. This is incorrect. First, the plea agreement precludes Worthing from arguing any different volume of commerce. Second, calling the agreed-upon volume of commerce "the government's volume of commerce" is inaccurate. This is the volume of commerce stipulated to by both parties after plea negotiations which favorably resulted in a volume of commerce for Worthing of $917,987 – just under the $1 million threshold that would add two offense levels under U.S.S.G. § 2R1.1(c). Third, Worthing's argument for volume of commerce based on proportionate ownership of a property is contradicted by the Sentencing Guidelines and has been rejected by this Court in related sentencing proceedings. *See* U.S.S.G. § 2R1.1(b)(2) (volume of commerce is commerce "done by [the defendant] and his principal"); *U.S. v. Giraudo*, 14-CR-00534, Dkt. 387 at 4 ("The law treats members of partnerships as agents of the partnership, with the partnership functioning as the principal."). For these reasons, the government recommends a volume of commerce consistent with the plea agreement of $917,987.

Similarly, Worthing argues against the fraud loss he has already agreed to, stating that he only personally received $9,500 in payoffs. Dkt. 114 at 20. Again, he is precluded from making this argument. Dkt. 8. Furthermore, the calculation agreed to in the plea agreement is sound. The Sentencing Guidelines explain that fraud loss is calculated by actual or intended loss, including the reasonably foreseeable pecuniary harm that resulted from an offense. U.S.S.G. §2B1.1(b)(1) Commentary n.3. Here, a property owner was harmed when Worthing agreed not to bid or paid others not to bid. This ended any competitive bidding, and the property owner lost the amount of money that would have been bid in a competitive auction. The total payoff amount for a property—not Worthing's share— is a reasonable estimation of that loss, as

U.S.' RESPONSE TO DEFENDANT'S SENT'G MEMO                                       2
*United States v. Worthing*, CR 12-00300 CRB

conspirators made payoffs to acquire properties cheaper than they could at competitive auctions (bidders would not reasonably agree to payoffs if they could acquire the property cheaper without payoffs). *See* U.S.S.G. §2B1.1 (b)(1) Commentary n.3 ("The court need only make a reasonable estimate of the loss.").

Finally, Worthing states that the payoffs he received, which corresponds to his restitution amount, is based on "the government's miscalculated numbers." Dkt. 114 at 16. Again, these are not the government's numbers, but instead are the numbers the government and the defendant negotiated during plea negotiations and both accepted. Dkt. 8. The government adheres to the plea agreement by requesting restitution in the amount of $15,000, and Worthing is required to do the same.

## II. Worthing Does Not Merit A Variance.

Worthing's memorandum contains many inaccuracies, including incorrectly implying that stationary video (rather than audio) recordings were found to be illegal and suggesting that the government conceded alleged errors in charging documents. Dkt. 114 at 10-11. For the sake of brevity, the government limits its response to Worthing's arguments that most directly address a request for variance.

### A. A Minor Role Adjustment Does Not Apply.

Worthing is precluded from arguing for a minor role adjustment by his plea agreement, which specifies Worthing's offense level. Nonetheless, Worthing attempts to circumvent his plea agreement offense level by arguing for a four-level minor role "variance" as opposed to an "adjustment," all the while citing to the Sentencing Guidelines minor role adjustment provisions. Dkt. 114 at 17-18; U.S.S.G. § 3B1.2.

Worthing is correct that he rigged fewer properties than the most culpable defendants, and that he was not a leader or organizer. Those facts are taken into account in his lower volume of commerce, the non-existence of a leader/organizer enhancement, and the government's recommendation of a low-end guidelines sentence. However, Worthing is not entitled to a minor role adjustment because he is not "substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2, cmt. n. 3(A). Worthing's volume of commerce is just

U.S.' RESPONSE TO DEFENDANT'S SENT'G MEMO                           3
*United States v. Worthing*, CR 12-00300 CRB

under $1 million, and he personally profited from the resale of rigged properties and from payoffs, much like many other defendants in the related cases. *See United States v. Rojas-Millan*, 234 F.3d 464, 472-73 (9th Cir. 2000) (holding that the relevant comparison in determining an adjustment under §3B1.2 is between the defendant's conduct and that of the other participants in the same offense). Thus no minor role adjustment applies and a variance is not warranted. And despite Worthing's argument that his "involvement in the offense occurred as a result of a naïve perception that the payoff agreements were standard operating procedure," Dkt. 114 at 18, Worthing has already admitted that he knew it was wrong to participate in payoff agreements. Dkt. 78 Ex. B., Worthing 7/23/2012 FBI 302 Interview at 11.[1]

### B. Worthing's Plea to Fraud Does Not Warrant A Variance.

Worthing continues to misunderstand Judge Hamilton's order in a related case and the government's subsequent action. In a ruling not binding on this Court, Judge Hamilton dismissed a defendant's mail-fraud charge, concluding that the mail-fraud charges were deficient because they did not incorporate the bid-rigging charges in the indictment. This was a curable defect, but nonetheless the government subsequently offered defendants, including defendants before this court where no defect had been found, the opportunity to stipulate to withdrawing their prior plea agreements contingent upon agreeing to plea agreements charging bid rigging only. Worthing refused the government's offer, instead choosing to keep his plea agreement. He now complains to this Court that he will be sentenced according to the plea agreement he accepted. Dkt. 114 at 20. Worthing contends that he is facing "a higher sentence merely because he did not commit to the government's preferred procedural vehicle for dealing with the mail fraud charges." Dkt. 114 at 20. In fact, he is facing a sentence based on the plea agreement he agreed to.

---

[1] Worthing begins his variance argument by positing, "If one were to ask why, exactly, it is unlawful for real estate investors to agree to a bid on a foreclosed property beyond the minimum bid set by the bank, one might be posing a fair question indeed." Dkt. 114 at 15. The government has an answer. It is illegal because Section 1 of the Sherman Act makes it a crime to make agreements in restraint of trade, and bid-rigging agreements have been deemed per se illegal because there is no redeeming quality to them. *See United States v. Green*, 592 F.3d 1057, 1068 (9th Cir. 2010) ("Such agreements are those that 'always or almost always tend to restrict competition and decrease output'") (citations omitted).

**C.  Worthing Does Not Deserve A Variance Based On Entrapment.**

Worthing argues that the government is to blame for not stopping the conspiracies before Worthing joined, effectively "ensnaring an otherwise-law abiding citizen." Dkt. 114 at 21.  Yet, Worthing has not alleged any facts that merit even a plausible argument that entitles him to any sort of entrapment defense.[2]  Worthing was hardly ensnared.  Worthing willingly accepted payoffs and paid others not to bid at foreclosure auctions, including with coconspirators and government informants.  *See* PSR ¶¶ 17, 18, 20.  Moreover, the government was under no obligation to stop covertly gathering evidence to prove the conspiracies before Worthing willingly joined.  Despite Worthing's claim that he "knows the blame for his behavior rests on him alone," Worthing's entrapment defense is an attempt to evade responsibility for his criminal behavior.  Dkt. 114 at 21.

**D.  Worthing Does Not Deserve A Variance Based On Cooperation.**

The government is not moving for a downward departure for substantial assistance.  As the plea agreement and Sentencing Guidelines explicitly state, motions for departures for substantial assistance are within the sole discretion of the United States, not the defendant.  *See* Dkt. 8, ¶ 15; U.S.S.G. § 5K1.1.  And as explained in the government's sentencing memorandum, Worthing's representations in his motion to withdraw his plea agreement and subsequent filings made him of little value as a potential government witness.  Dkt. 115.

Nonetheless, Worthing argues that the court should vary downward based on Worthing's substantial assistance. Dkt. 118.  However, Worthing admits, "[b]ecause of his low-level status and limited involvement, Mr. Worthing was unable to provide any dramatic revelations regarding the participation of more major players in the bid-rigging scheme."  Dkt. 114 at 11.  Furthermore, Worthing's baseless claims of "government misconduct," accusations of government "absurdity" and "illogic," his implausible entrapment defense, and attacks on the government's evidence renders the information Worthing provided of little use to the government.  Dkt. 61.  It is not the fact that Worthing chose to stay in his plea that resulted in the

---

[2] To establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act by trickery, persuasion, or fraud of a government agent.  *United States v. Mohamud*, 843 F.3d 420, 432 (9th Cir. 2016), cert. denied (2018) 138 S.Ct. 636.

government not moving for a cooperation reduction, it is the substance of his later arguments in his motion to withdraw from his plea and related filings that removed the potential benefit he could have provided and ended any ongoing cooperation.

For the foregoing reasons the government requests that the Court sentence Worthing to a 12-month custodial sentence, consistent with the agreed upon terms in his plea agreement.

Dated:  May 22, 2018                    Respectfully submitted,

                                        _____/s/_____
                                        GABRIEL MARTINEZ
                                        Trial Attorney
                                        United States Department of Justice
                                        Antitrust Division