DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 30676
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Matthew Worthing**

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:12-cr-00300-CRB |
| Plaintiff, | **MR. WORTHING'S MOTION FOR BAIL PENDING APPEAL AND STAY OF SENTENCE** |
| v. | |
| MATTHEW WORTHING, | Date:   August 1, 2018 |
| Defendant. | Time:   10:00 a.m.<br>Ctrm.:   6 |

**TABLE OF CONTENTS**

Page(s)

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE COURT HAS DISCRETION TO ORDER MR. WORTHING'S RELEASE
       PENDING HIS APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   MR. WORTHING IS NOT EVEN REMOTELY LIKELY TO FLEE OR POSE A
       DANGER TO ANY OTHER PERSON. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    MR. WORTHING'S APPEAL WILL RAISE SUBSTANTIAL QUESTIONS OF LAW
       AND FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.    Insufficient Appellate Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
       B.    Other Inadequacies in the Plea Colloquy. . . . . . . . . . . . . . . . . . . . 9
       C.    Legal Inadequacy of Fraud Charges. . . . . . . . . . . . . . . . . . . . . . 10
       D.    Lack of Specificity in Conspiracy Allegations and Improper Multiplicity of
             Charges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       E.    Denial of Motion to Withdraw Plea. . . . . . . . . . . . . . . . . . . . . . . 12
       F.    Denial of Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       G.    Denial of Motion to Compel Production of Client File. . . . . . . . . . . . 14
       I.    Sentencing Disparity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

**TABLE OF AUTHORITIES**

2

3  <u>CASES</u>                                                                          Page(s)

4  *Barefoot v. Estelle,*
      463 U.S. 880, 893 n.4 (1983)..................................................<u>5</u>
5

*Benvin v. United States Dist. Court,*
6      791 F.3d 1096, 1103 (9th Cir. 2015) ........................................<u>15</u>

7  *Class v. United States,*
      No. 16-424, 2018 U.S. LEXIS 1378, at *12 (Feb. 21, 2018) .....................<u>10</u>
8

*Cleveland v. United States,*
9      531 U.S. 12, 26 (2000. ......................................................<u>10</u>

10  *City of Marin v. Deloitte Consulting LLP,*
       836 F. Supp. 2d 1030, 1044 (N.D. Cal. 2011) ...............................<u>10</u>
11

*D'Aquino v. United States,*
12      180 F.2d 271, 272 (9th Cir. 1950)...........................................<u>6</u>

13  *Eller v. EquiTrust Life Ins. Co.,*
       778 F3d 1089, 1092 (9th Cir. 2015..........................................<u>10</u>
14

*Garcia-Aguilar v. United States Dist. Court,*
15      535 F.3d 1021, 1025 (9th Cir. 2008)........................................<u>15</u>

16  *Harris v. Nelson,*
       394 U.S. 286, 290 (1969)...................................................<u>15</u>
17

*Herzog v. United States,*
18      75 S. Ct. 349, 351, 99 L. Ed. 1299 (1955)..................................<u>6</u>

19  *Hung v. United States,*
       439 U.S. 1326 (1978)........................................................<u>4</u>
20

*Loughrin v. United States,*
21      134 S. Ct. 2384, 2391 (2014)...............................................<u>10</u>

22  *Menna v. New York,*
       423 U.S. 61, 62 n.2 (1975).................................................<u>11</u>
23

*Miller-El v. Cockrell,*
24      537 U.S. 322, 342 (2003)....................................................<u>5</u>

25  *Neibel v. Trans World Assur. Co.,*
       108 F.3d 1123, 1127 (9th Cir. 1997)........................................<u>10</u>
26

*Sanchez v. United States,*
27      50 F.3d 1448, 1453 (9th Cir. 1995) ........................................<u>13</u>

28

*Simon v. Value Behavioral Health, Inc.,*
    208 F.3d 1073, 1084 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. Baldwin,*
    510 F.3d 1127, 1148 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Alvarez,*
    358 F.3d 1194, 1207 (9th Cir. 2004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ankeny,*
    502 F.3d 829, 838 (9th Cir. 2007. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Arellano-Gallegos,*
    387 F.3d 794 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Baty,*
    980 F.2d 977, 979 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Brown,*
    250 F.3d 811, 815 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Bushert,*
    997 F.2d 1343, 1353 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Ensminger,*
    567 F.3d 587, 590-91 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Galloway,*
    2016 U.S. Dist. LEXIS 109639 (N.D. Cal. Aug. 15, 2016). . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Garcia,*
    340 F.3d 1013, 1020 n.5 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Handy,*
    761 F.2d 1279, 1281 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

*United States v. Jones,*
    472 F.3d 1136, 1141 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kalu,*
    791 F.3d 1194, 1203, n.11 (2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Martinez,*
    518 F. App'x 559 (9th Cir. 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. McTiernan,*
    546 F.3d 1160, 1167 (9th Cir. 2008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Miller,*
    753 F.2d 19, 23 (3d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Morales-Escobedo,*

367 F. App'x 804 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Ortega-Ascanio,*
    376 F.3d 879, 883 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,12

*United States v. Plunk,*
    153 F.3d 1011 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Pugh,*
    668 F. App'x 273 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Randell,*
    761 F.2d 122, 124 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Rios-Ortiz,*
    830 F.2d 1067, 1069 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Ruiz,*
    536 U.S. 622 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Santos,*
    481 F. App'x 346 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Smith,*
    60 F.3d 595 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Smith,*
    793 F.2d 85, 89 (3d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*United States v. Valdez,*
    585 F. App'x 656 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Villalobos,*
    333 F.3d 1070, 1073 (9th Cir. 2003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Weintraub,*
    871 F.2d 1257 (5th Cir. 1989. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Wessells,*
    936 F.2d 165 (4th Cir. 1991. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Wheeler,*
    795 F.2d 839, 840-841 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Yefsky,*
    994 F.2d 885, 893 (1st Cir. 1993. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Zalapa,*
    509 F.3d 1060, 1063 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Williamson v. United States,*
    95 L. Ed. 1379, 184 F.2d 280, 282 (2d Cir. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1

2

3 **RULES**

4 Rule 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 Rule 11(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6 Rule 11(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

7 Rule 11(b)(1)(G). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8 Rule 11(b)(1)(H). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9 Rule 11(b)(1)(K). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10 Rule 11(b)(1)(L). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 Rule 11(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

13 **STATUES**

14

15 18 U.S.C. §1962(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16 18 U.S.C. §3143. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

17 18 U.S.C. §3143(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 18 U.S.C. §3143(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19 18 U.S.C. §3143(b)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20

21

22

23

24

25

26

27

28

Mr. Worthing's Motion for Bail Pending Appeal and Stay of Sentence
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

# I.

# INTRODUCTION

On June 20, 2012, Mr. Worthing pled guilty to all four counts of a four count information, all pursuant to a negotiated plea agreement. Doc. no. 9. On May 25, 2018, Mr. Worthing was sentenced to 30 days imprisonment and $55,569 in fines, fees, and restitution. Doc. no. 132. He is ordered to surrender to the Bureau of Prisons by September 17, 2018.

Mr. Worthing, who is neither a flight risk nor danger to the community and whose appeal will involve substantial questions of law and fact, now moves for bail pending appeal pursuant to 18 U.S.C. §3143 and a stay of his sentence pursuant to Fed. R. Crim. P. 38. The claims he will raise on appeal are numerous, and include a number of which were previously presented to this court by way of litigation that occurred prior to sentencing. Mr. Worthing notes one additional significant claim that has arisen since his May 25, 2018 sentencing: the sentencing disparity this court has created in its fashioning of subsequent sentences following Mr. Worthing's sentencing. Mr. Worthing's 30 day sentence is uniquely aberrant when considered in light of the sentences imposed on more culpable defendants, and the result is clear, impermissible sentencing disparity deserving of reversal.

Although Mr. Worthing's plea agreement included an appellate waiver, many of the claims he enumerates below remain appealable notwithstanding any waiver. Importantly, however, Mr. Worthing's appellate waiver is entirely unenforceable due to the court's failure to address it in his plea colloquy.[1] As a consequence, all of Mr. Worthing's issues are appealable, and as he argues below, each presents a substantial question of law or fact supporting bail pending appeal.

---

[1] The court has earlier noted the "merit" of this argument, explaining:

THE COURT: The one point that has been raised that is -- that I think may have merit -- one point of all of the points -- is the question of the adequacy of the Court's articulation of the defendant's appellate waiver. And that issue is not ripe for determination.
If, in fact, the defendant appeals, then the Circuit will look at the appellate waiver, and make a determination as to whether or not the waiver was valid. If the appellate court believes that the waiver wasn't valid, then his appeal will go forward. If the appellate court believes that the waiver was valid, then it was valid.

3/2/18 TX, 5:11-25 (doc. no. 105).

Mr. Worthing's Motion for Bail Pending Appeal and Stay of Sentence
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

## II.

## THE COURT HAS DISCRETION TO ORDER MR. WORTHING'S RELEASE PENDING HIS APPEAL.

18 U.S.C. §3143(b)(1) permits a district court to order that a defendant sentenced to imprisonment not be detained and instead released on personal recognizance or an unsecured appearance bond if the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

>> (i) reversal,

>> (ii) an order for a new trial,

>> (iii) a sentence that does not include a term of imprisonment, or

>> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The requirement that the appeal "raise[] a substantial question of law or fact" does not require the district court to "predict the probability of reversal." *United States v. Randell*, 761 F.2d 122, 124 (2d Cir. 1985) (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)). Instead, the Ninth Circuit has described such a "substantial question" as one that is "fairly debatable." *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985). "A 'substantial question' is one of more substance than would be necessary to a finding that it is not frivolous." *Id*. at 1283. However, the question need not be "close," nor must the defendant show that he "will probably prevail on appeal." *Id*. at 1280.

Section 3142(g) sets out a number of factors for a court to consider in deciding whether specific conditions of release offer a reasonable assurance that a defendant will appear as required:

> Factors To Be Considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

>> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

---

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Ordinarily, an application for bail on appeal shall, in the first instance, be made in the district court. Fed. R. App. Proc. 9(b). If the application is denied, the district court must state its reasons for so ruling, and not merely its conclusions. *United States v. Wheeler*, 795 F.2d 839, 840-841 (9th Cir. 1986).

Once a defendant is granted release pending appeal, any sentence of imprisonment must be stayed. Fed. R. Crim. P. 38(b)(1). The district court may also stay payment of any fine, cost, or restitution. *Ibid.*

## III.

## MR. WORTHING IS NOT EVEN REMOTELY LIKELY TO FLEE OR POSE A DANGER TO ANY OTHER PERSON.

There is virtually no chance that Matthew Worthing will "flee or pose a danger to the safety of any other person or the community" as described in 18 U.S.C. §3143(b)(1)(A). Mr. Worthing stands convicted of a white-collar bid-rigging offense committed over seven years ago. At every step of the legal proceedings that have been ongoing since 2012, he has punctually attended every one

of his court appearances (as well as many for other, related defendants). Mr. Worthing has cooperated fully with the government since the inception of his case, expressed profound remorse to the court, and even acted to expedite his BOP designation in an effort to allow him to surrender in advance of his September self-surrender date. He is an upstanding member of his community who gives generously back to it, contributing to charities in a never-ending show of self-sacrifice. As indicated in the presentence report prepared for his sentencing, Mr. Worthing is a devoted husband and father to two young children from whom he would never flee. There are simply no indications whatsoever that Mr. Worthing might leave the area or ever pose any future danger to the community at large.

It is abundantly clear that Mr. Worthing satisfies the demands of §3143(b)(1)(A). Certainly, he poses much less of a risk to flee than defendants for whom reviewing Courts have ordered release appropriate, including for example the Vietnamese national in *Hung v. United States*, 439 U.S. 1326 (1978). And this Court has itself recognized the near impossibility that Mr. Worthing, or any of the defendants in the related bid-rigging cases, would ever reoffend.[2] Consequently, Mr. Worthing's present motion for bail pending appeal tasks the Court not with determining whether he poses a flight risk, but whether his appeal will raise a "substantial question of law or fact" under 18 U.S.C. §3143(b)(1)(B).

---

[2] THE COURT: I think your client, everybody else comes before me, interesting calculation. I think they would say, obviously, they would never do this again. And if they had known that the circumstances were so awful in terms of consequences, they wouldn't do it. Absolutely right.

5/25/18 TX, 13:3-7 (doc. no. 133).

THE COURT: And I'd like to make some comments before we start which I think are pertinent to all of the defendants who are being sentenced today and who have been sentenced already as part of a conspiracy and who are to be sentenced as part of this particular conspiracy. . . .

I say that to you because I don't believe for a second you or any of the other people who I've already sentenced or are about to be sentenced will commit another criminal offense.

3:14-cr-00534-CRB-5, 5/25/18 TX, 2:16-20; 7:1-3 (doc. no. 412).

Mr. Worthing's Motion for Bail Pending Appeal and Stay of Sentence
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

4

# IV.

## MR. WORTHING'S APPEAL WILL RAISE SUBSTANTIAL QUESTIONS OF LAW AND FACT.

Much like the question of whether Mr. Worthing has shown the incredible unlikelihood of his future flight from justice, the question of whether Mr. Worthing's appeal will raise substantial questions of law or fact must also be answered in the affirmative. In his prior litigation before this court, Mr. Worthing raised a number of significant and novel claims and objections, presenting issues and arguments that require thoughtful consideration and are certainly not contrary to clearly controlling precedent. Because many of these claims have been well developed before this court, Mr. Worthing does not repeat them at length here; instead he incorporates by reference the arguments contained within his motion to withdraw his plea (doc. no. 61), motion to compel discovery (doc. no. 74), reply to response to motion compel discovery (doc. no. 77), reply to response to motion to withdraw plea (doc. no. 92), motion to compel sentencing discovery (doc. no. 97), motion to compel disclosure of client file (doc. no. 107), motion to compel production of probation materials (doc. no. 108), motion to dismiss for Rule 11 violation (doc. no. 109), motion to dismiss for judicial interference in prosecution (doc. no. 110), sentencing memorandum (doc. no. 114), reply to response to motion to compel disclosure of client file (doc. no. 117), response to sentencing memorandum (doc. no. 118), and supplemental sentencing memorandum (doc. no. 128).

Although this court has previously indicated its disinterest in granting him bail pending appeal, Mr. Worthing notes that the court's disposition of his previous claims should not control here. As the Supreme Court stated concerning a similar issue regarding the granting of a Certificate of Appealability, "[the question is the debatability of the underlying[] claim, not the resolution of that debate." *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003). Indeed, an issue fits the call of §3143(b)(1)(B) when it is "one that poses issues debatable among jurists of reason." *Handy, supra*, 761 F.2d at 1282 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Ninth Circuit explains:

> Included within this definition [of a "substantial question"] have been questions that are novel and not readily answerable.

> The question may be substantial even though the judge or justice hearing the application for bail would affirm on the merits of the appeal. The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

*D'Aquino v. United States*, 180 F.2d 271, 272 (9th Cir. 1950) (Douglas, Circuit Justice). In *Herzog v. United States*, 75 S. Ct. 349, 351, 99 L. Ed. 1299 (1955), Circuit Justice Douglas stated:

> The first consideration is the soundness of the errors alleged. Are they, or any of them, likely to command the respect of the appellate judges. It is not enough that I am unimpressed. I must decide whether there is a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possibly prevail . . . . A question may nevertheless be substantial . . . if it is novel, or if there is a contrariety of views concerning it in the several circuits, or if the appellate court should give directions to its district judges on the question, or if in the interests of the administration of justice some clarification of an existing rule should be made.

*See also Williamson v. United States*, 95 L. Ed. 1379, 184 F.2d 280, 282 (2d Cir. 1950) (Jackson, Circuit Justice) ("It is one thing to maintain that the Court of Appeals has given the right answer to a substantial question, but it is another thing to contend that there is no question which merits answer by the only Court invested with ultimate and nation-wide authority in the matter").

*Id.* at 1281 (internal quotations marks omitted).

More recently, in *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003), the Court discussed the requirement set forth in 18 U.S.C. § 3143(b)(1)(B):

> At first glance, it might appear that a strong appeal is a threshold requirement under 18 U.S.C. § 3143(b)(1)(B), and that to consider this factor an "exceptional reason" under § 3145(c) would introduce a redundancy. However, the relevance of the § 3143(b)(1)(B) requirement must be considered in the light of our court's interpretation of that requirement. *United States v. Handy*, 761 F.2d 1279, 1280-83 (9th Cir. 1985); *see United States v. Smith*, 793 F.2d 85, 89 (3d Cir. 1986). In *Handy* we held that an issue is substantial if it is "fairly debatable" or "fairly doubtful," that is, "of more substance than would be necessary to a finding that it was not frivolous." *Handy*, 761 F.2d at 1283 (internal quotations marks and citations omitted). The second part of the requirement -- that the question be likely to result in reversal, a new trial, a non-prison sentence, or a sentence reduced to less than the time that would be served by the end of the appeal process -- concerns only the type of question that meets the requirement; it does not involve assessing the likelihood that a reversal will occur in the particular case. *Id.* at 1280. . . . The defendant, in other words, need not, under *Handy*, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one of the other conditions. Because under § 3143(b)(1)(B)

1
2
3

a defendant need not show a likelihood of success on appeal, a defendant who does show such likelihood goes well beyond the threshold requirement. There is therefore no redundancy in considering likelihood of success as a factor in determining whether there are exceptional reasons justifying release under § 3145(c).

4
5
6
7

This Circuit's precedent makes clear that Mr. Worthing need not convince this Court of the imminency of reversal in order to obtain from it bail pending the resolution of his appeal. Rather, Mr. Worthing need only show that his appeal will raise non-frivolous issues of fair debate which, if decided in his favor, will compel reversal.

8
9
10
11
12
13
14
15
16
17
18
19
20

Mr. Worthing moves for bail and a stay of his sentence not in a meaningless effort to delay the inevitable. Rather, he does so because he has presented, and will present to the Ninth Circuit, significant legal issues and substantial legal claims worthy of redress. Some of the questions raised by Mr. Worthing's appeal, such as whether the court's conduct in dictating the available charges for prosecution violates Fed. R. Crim. P. 11 or the Constitution, have never been squarely addressed in published law. Others, such as the question of the effect of the court's failure to comply with Rule 11(b)(1)(G), have been answered in the defendant's favor in analogous cases. Still others, such as the legal adequacy of the fraud charges, have been handled differently by different courts in this very district. Mr. Worthing will be raising each of these many arguments in the reviewing court, and resolution of these issues will undoubtedly take considerable time to obtain. If Mr. Worthing is forced to begin his 30-day custodial sentence in September of this year, there is absolutely no probability that his appeal will conclude before his sentence does. Of course, once a sentence is served and a fine is paid, any appeal from the judgment becomes moot.

21
22
23
24
25
26
27

Mr. Worthing seeks bail and a stay of his sentence to allow him to pursue the appellate review to which he is entitled. For its own purposes, the government has delayed for years in seeking the imposition of sentence upon Mr. Worthing; a comparatively small further delay in execution of sentence while Mr. Worthing is before the Ninth Circuit would work no injustice on the proceedings. Rather, this delay in execution of sentence is necessary to permit Mr. Worthing the opportunity to adjudicate his legal issues before the court of review. In order to highlight the clear significance of his claims, Mr. Worthing describes some of them in brief below.

28

## A.    Insufficient Appellate Waiver

Undisputed is the fact that, despite the presence of a waiver of his right to appeal in his plea agreement, Mr. Worthing was not advised by the court during his plea colloquy of the appellate waiver nor its effects as required by Fed. R. Crim. P. 11(b)(1)(N). Also undisputed is the oft-repeated legal principle that an adequate Rule 11 plea colloquy mandates that a defendant's request for withdrawal from his guilty plea be granted. *See, e.g.*, *United States v. Ensminger*, 567 F.3d 587, 590-91 (9th Cir. 2009); *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007); *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (2004); *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987). For his part, Mr. Worthing moved to withdraw his plea before his sentencing on a number of bases, including the court's inadequate advisement of his appellate waiver. In its opposition to Mr. Worthing's motion to withdraw his plea, the government cited no fewer than nine cases in which reviewing Courts heard a defendant's appeal in the face of an appellate waiver in the plea agreement due to the district court's failure to advise of the waiver during its colloquy.[3]

Despite this, this court took the extraordinary position that, although Mr. Worthing may well be entitled to appellate review of his claims, the inadequate colloquy was *not* sufficient to provide the less dramatic remedy of the withdrawal of his plea that Mr. Worthing requested. Neither the court nor the parties have identified any case law substantiating this position; the law on the issue instead stems from post-conviction challenges to plea colloquies, rather than pre-sentencing motions to withdraw. In denying Mr. Worthing's motion to withdraw his plea on this basis, the court staked out new ground, implicitly asserting that a failure to advise a defendant of his appellate waiver "does not affect substantial rights" under Rule 11(h). If a reviewing court were to adopt this court's novel

---

[3] *See United States v. Arellano-Gallegos*, 387 F.3d 794 (9th Cir. 2004) [defendant's appeal heard because appellate waiver was invalid]; *United States v. Pugh*, 668 F. App'x 273 (9th Cir. 2016) [relying on *Arellano-Gallegos* for same]; *United States v. Valdez*, 585 F. App'x 656 (9th Cir. 2014) [relying on *Arellano-Gallegos* for same]; *United States v. Martinez*, 518 F. App'x 559 (9th Cir. 2013) [relying on *Arellano-Gallegos* for same]; *United States v. Santos*, 481 F. App'x 346 (9th Cir. 2012) [relying on *Arellano-Gallegos* for same]; *United States v. Morales-Escobedo*, 367 F. App'x 804 (9th Cir. 2010) [relying on *Arellano-Gallegos* for same]; *United States v. Bushert*, 997 F.2d 1343, 1353 (11th Cir. 1993) [defendant's appeal heard because appellate waiver was not knowing and voluntary]; *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) [same]; *United States v. Wessells*, 936 F.2d 165 (4th Cir. 1991) [same].

position, it would be doing so for the first time. Thus, this claim alone is non-frivolous and "fairly debatable," and it consequently is one that satisfies the demands of §3143(b)(1)(B) and warrants bail pending its resolution.

### B.     Other Inadequacies in the Plea Colloquy

In making its plea colloquy, this court also failed to comply with a number of other provisions of Rule 11(b)(1), including, perhaps most dramatically, its obligation to inform Mr. Worthing of "the nature of each charge to which the defendant is pleading." The court's denial of Mr. Worthing's motion to withdraw his plea excuses this defect by noting references to four counts during the hearing made by the prosecutor and the clerk, although it offers no suggestion that Mr. Worthing was informed of the actual nature of each of the four charges at any point during that proceeding. *See* doc. no. 100, pg. 2. Whether this statutory violation itself requires reversal is one question; whether the violation required the court to grant Mr. Worthing's motion to withdraw his plea is one even more favorable to Mr. Worthing on appeal.[4]  Indeed, the Ninth Circuit has repeatedly held that errors of this sort require the district court to permit withdrawal of a guilty plea, and has ordered reversals on this basis. *See, e.g., United States v. Villalobos*, 333 F.3d 1070, 1073 (9th Cir. 2003) [withdrawal required because substantial rights are affected where a defendant is "not informed of a critical element of his offense"]; *United States v. Minore*, 292 F.3d 1109, 1119-20 (9th Cir. 2002) ; *United States v. Smith*, 60 F.3d 595 (9th Cir. 1995) [plea agreement, government's recitation of factual basis for the plea, and the defendant and counsel's recitations that they had discussed the nature of the charges with one another were insufficient because "the reading of the plea agreement is no substitute for rigid observance of Rule 11"]. In Mr. Worthing's case, where the record of the plea colloquy contains no description whatsoever of two of the four charges to which the defendant pled, it is a significant argument that this deficiency was one that affected Mr. Worthing's substantial rights. It is a claim that will be addressed on appeal, and because it is a significant one, Mr. Worthing should be released until it is resolved.

---

[4] In addition to violations of Rule 11(b)(1)(G) and (H), Mr. Worthing also moved to withdraw his plea for violations of Rule 11(b)(1)(A), (K), and (L).

C.     **Legal Inadequacy of Fraud Charges**

As this court is well aware, another court in this district has already deemed deficient nearly identical fraud allegations as those charged against Mr. Worthing in his information. *United States v. Galloway*, 2016 U.S. Dist. LEXIS 109639 (N.D. Cal. Aug. 15, 2016). The legal inadequacy of the charges against Mr. Worthing rest in (1) their failure to allege either an affirmative misrepresentation or non-disclosure combined with a duty to disclose as required by law (*see Eller v. EquiTrust Life Ins. Co.*, 778 F3d 1089, 1092 (9th Cir. 2015); *Cleveland v. United States*, 531 U.S. 12, 26 (2000); *Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014); *United States v. Kalu*, 791 F.3d 1194, 1203, n.11 (2015)); and (2) the government's failure to incorporate the bid-rigging allegations into the fraud counts. Although the government has attempted to distinguish Mr. Worthing's charging document from that dismissed by Judge Hamilton, this effort is futile. *See United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993); *Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1044 (N.D. Cal. 2011) ["Because Marin failed to allege a cause of action under 18 U.S.C. § 1962(c), the claim under section 1962(d) for conspiracy to violate section 1962(c) is likewise be [*sic*] dismissed with leave to amend. *See Neibel v. Trans World Assur. Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997)."]; *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000) ["*Simon's* failure to plead the requisite elements of either a Section 1962(a) or a Section 1962(c) violation implicitly means that he cannot plead a conspiracy to violate either section."].

This court, however, never reached the merits of this claim, instead determining that such an attack on the propriety of the charges cannot sustain a motion to withdraw a guilty plea. This ruling is contrary to reasoning issued by the Supreme Court, which recently held that the issue of a structurally deficient charge is one that is not waived by a guilty plea. *Class v. United States*, No. 16-424, 2018 U.S. LEXIS 1378, at *12 (Feb. 21, 2018) [recognizing cognizability on appeal of claims "consistent with [à defendant's] knowing, voluntary, and intelligent admission that he did what the indictment alleged"]. In any event, it is clear that Mr. Worthing may now raise this claim before the Ninth Circuit, and it is similarly clear that the issue, which was decided in the defendants' favor by one court in this district, is one about which reasonable jurists can at least disagree. Mr.

Worthing need not convince this court of the correctness of Judge Hamilton's ruling, nor of its application to Mr. Worthing's information. All that is required for bail to be granted is this court's acknowledgment that the claim is not merely a frivolous one; that burden is easily satisfied, especially in the absence of any enforceable appellate waiver.

### D.   Lack of Specificity in Conspiracy Allegations and Improper Multiplicity of Charges

In his motion to withdraw his plea, Mr. Worthing raised two additional, and related, claims: (1) the conspiracy allegations that comprise the entirety of Mr. Worthing's information are insufficiently specific because they do not include any named co-conspirators; and (2) the charges against Mr. Worthing are insufficiently multiplicitous. As with Mr. Worthing's attacks on the sufficiency of the fraud charges, the former claim remains appealable even after a guilty plea. *See Class v. United States*, No. 16-424, 2018 U.S. LEXIS 1378, at *12 (Feb. 21, 2018). The latter multiplicity claim, which formed one of the bases for Mr. Worthing's requested withdrawal of his plea, was incorrectly disposed of by this court as procedurally barred when, in fact, it was raised at precisely the time it should have been. *See United States v. Ankeny*, 502 F.3d 829, 838 (9th Cir. 2007); *United States v. Zalapa*, 509 F.3d 1060, 1063 (9th Cir. 2007); *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). The court's refusal to consider the merits of either claim was error, and its denial of Mr. Worthing's motion to withdraw his plea on that basis was an abuse of discretion.

Importantly, both claims stem from the same fundamental problem with the government's pleading, that is, its utter failure to determine the contours of the conspiracy it is actually alleging. Because it did not (or was unable to) decide the individuals with whom Mr. Worthing conspired or the specific agreements he entered into, the government neglected to allege a specific conspiracy and instead arbitrarily brought two counts of bid-rigging (and two counts of mail fraud) against Mr. Worthing. Mr. Worthing does not restate his detailed, earlier arguments regarding the impropriety of this tactic. However, the court's handling of it raises two issues that are worthy of review on appeal: (1) whether issues of this type, if meritorious, present a justification for a pre-sentencing withdrawal of plea; and (2) whether the underlying claims of a lack of specificity and multiplicity

independently warrant reversal. These are complex, fact-and-pleading-specific questions that are fairly debatable, and until they are resolved, Mr. Worthing should not be required to serve his sentence and render his significant legal claims moot.

### E.      Denial of Motion to Withdraw Plea

The issues noted above were all initially raised in the context of Mr. Worthing's motion to withdraw his plea; also included in that motion were arguments related to the government's arbitrary and capricious conduct and newly discovered information. Despite the generous and liberal standard that applies to motions to withdraw pleas (*United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008)), the court denied Mr. Worthing's motion. It did so in error, for all of the reasons described above and the arguments posited in Mr. Worthing's withdrawal motion. Although a district court's denial of a motion to withdraw a plea is reviewed for abuse of discretion, that discretion is abused when the court "makes an error of law." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). Thus, it is not the case that the district court may deny a withdrawal motion as long as the defendant's proffered reasons for withdrawal do not go to the validity of the plea; *any* reason warrants withdrawal where it is "fair and just," and the district court abuses its discretion where it fails to recognize this. *Id.* at 885. Mr. Worthing proffered a number of fair and just reasons for withdrawal of his plea, and this court disposed of all of them. In addition to the underlying claims themselves, the court's *treatment* of Mr. Worthing's claims is also worthy of review and presents a significant issue to the Ninth Circuit.

### F.      Denial of Discovery

Repeatedly after entering his guilty plea, Mr. Worthing sought discovery necessary to litigate his motion to withdraw his plea, whose disclosure was required by *Brady*, which had been provided to and relied upon by United States Probation in fashioning its presentence investigation report, or which was directly pertinent to his sentencing. Repeatedly, the court denied these motions. Its resolutions of these claims are fairly debatable, particularly as Mr. Worthing has already cited considerable authority supportive of his discovery pursuits. *See, e.g., United States v. Plunk*, 153 F.3d 1011 (1998) [government's *Brady* obligations continue beyond the point of a guilty plea];

*Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ["a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim"]; *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) [applying *Brady* in guilty plea context]; *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) [applying *Brady* to a motion to a motion to withdraw a plea]; *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) ["the due process principles announced in Brady and its progeny must be applied to a suppression hearing"]; *United States v. Weintraub*, 871 F.2d 1257 (5th Cir. 1989) [vacating sentence for failure to turn over materials relevant to sentencing]; *United States v. Alvarez*, 358 F.3d 1194, 1207 (9th Cir. 2004) [constitutional right to *Brady* materials contained in a presentence report]; *United States v. Ruiz*, 536 U.S. 622 (2002) [holding that a defendant may waive discovery rights in plea agreement and thus implying that the entrance of a plea does not by itself act as a waiver].

In denying Mr. Worthing's motion to compel sentencing discovery under Fed. R. Crim. P. 16, it relied on a single out-of-Circuit case limiting the rule to pretrial discovery (*see* doc. no. 101); the Ninth Circuit has not issued such a holding, and this question of statutory interpretation remains unanswered in this jurisdiction. In any event, the court dismissed Mr. Worthing's *Brady* arguments without any such citation, and its reasoning is worth quoting here:

> His goal in seeking discovery is apparently to conduct an analysis of all 24 defendants in this case and challenge the factual basis for a determination of the relative culpability of any or all of those 24 defendants. But this assumes that the Court is incapable of performing this analysis, with assistance from the government and each of the 24 defendants. Worthing's apparent concern that there will be errors in assessing those cases is really a concern with the adversarial system of justice itself. His remedy is a Constitutional convention, not additional discovery.

*Ibid.* In denying Mr. Worthing any discovery related to the inevitable question of sentencing disparity (or any of the actions of Mr. Worthing's alleged co-conspirators), the court provided the mere assurance that Mr. Worthing need not have access to these materials, as they would be appropriately assessed and used against Mr. Worthing by the court and the government. Separate and apart from the fact that the "adversarial system of justice itself" necessarily requires access to pertinent information be provided to both adversaries in order to function effectively, the court's assurances

were ultimately belied by later developments in the proceedings, including the following exchange held during Mr. Worthing's sentencing:

> THE COURT: Let me talk to the government. Where does Mr. Worthing fit in this hierarchy of offenders?
>
> MR. MARTINEZ: I think it's fair to say that Mr. Worthing is less culpable than most. But we would not consider him the least culpable defendant.
>
> THE COURT: Where would he be vis-a-vis Mr. Farag?
>
> MR. MAST: Your Honor, they have similar volumes of commerce, similar numbers of transactions. So I think it's very comparable to Mr. Farag.

5/25/18 TX, 14:24-15:7 (doc. no. 133). As a direct result of not having been provided discovery relating to other conspirators (nor even the full discovery related to Mr. Worthing), during this exchange, Mr. Worthing was unable to rebut the government's assertions or offer any input into the matter on which the court sought edification. The court ultimately sentenced Mr. Worthing in accordance with, and identical to, Mr. Farag's sentence, just as the government implied was appropriate. Mr. Worthing could do little but sit idly by, referring to matters of which he *did* have knowledge, while the government and the court relied upon materials that Mr. Worthing had requested, but was never provided.

Whether or not this process represents the effective functioning of the adversarial system of justice, it is surely one whose propriety may be fairly debated by jurists of reason. Mr. Worthing's numerous requests for discovery, and this court's denials thereof, will be raised in his appeal. While that appeal is pending, Mr. Worthing should not be required to serve the entirety of his (and, as it stands, also Mr. Farag's) sentence.

**G.    Denial of Motion to Compel Production of Client File**

In the only claim raised by him before this court that the government did not oppose, Mr. Worthing moved to compel the production to him of his client file from his previous attorney. Mr. Worthing's previous counsel, John L. Williams, Esq., took no position on the motion, only noting that his "requirements to comply with his obligations under the Joint Defense Agreement and to

provide successor counsel with a complete file [were] in tension." Doc. no. 116. No party was able to identify any binding case law directly on point, and it is evident from Mr. Williams' concerns and the abnormality of a defendant seeking an order compelling the disclosure of his own file that the issues raised were unique and worthy of careful consideration. Nonetheless, the court summarily disposed of Mr. Worthing's motion, claiming it had identified no "legal mechanism whereby this Court may grant the relief he [sought]." Doc. no. 119. Of course, federal courts possess an inherent power to control and direct the conduct of litigants before it (*See* Daniel J. Meador, *Inherent Judicial Authority in the Conduct of Civil Litigation*, 73 TEX. L. REV. 1805, 1805 (1995)), and have exercised this power in the past to implement discovery procedures where unique circumstances unaddressed by the legislature called for them (*See Harris v. Nelson*, 394 U.S. 286, 290 (1969)). And federal courts likewise possess an explicit statutory authority to compel compliance with lawfully issued subpoenas. Fed R. Crim. P. 45. The precise contours and reaches of these implicit or statutory authorities may be fairly debatable, but that is all that Mr. Worthing need show to warrant his release while the Ninth Circuit makes its determinations. In denying Mr. Worthing's motion, the court rejected his claim and left it to the Ninth Circuit to assess on its merits. This court should allow the reviewing court to do so before the claim is mooted.

## H.   Violations of Rule 11 and the Separation of Powers

Mr. Worthing moved to dismiss the information on the basis of the court's unlawful interference with plea negotiations and intervention in prosecutorial discretion. The court construed this motion as a motion to reconsider the withdrawal motion, and dismissed it out of hand. Doc. no. 111. But this motion, premised on the court's violation of both Fed. R. Crim. P. 11(c)(1) and the constitutional tenet of the separation of powers, was a direct attack on the information that *resulted* directly from the court's denial of Mr. Worthing's withdrawal motion. Notably, the circumstances present in Mr. Worthing's case were novel, and remain so; Mr. Worthing argued by analogy to similar Ninth Circuit cases such as *Benvin v. United States Dist. Court*, 791 F.3d 1096, 1103 (9th Cir. 2015) and *Garcia-Aguilar v. United States Dist. Court*, 535 F.3d 1021, 1025 (9th Cir. 2008). This issue has likely never arisen in quite this same manner, and certainly has never been resolved

in published law. Thus, when Mr. Worthing raises it on appeal, he will not be doing so frivolously or for purposes of delay. Rather, he will be presenting a significant claim over which reasonable jurists may disagree.

## I.   Sentencing Disparity

Under 18 U.S.C. 3553(a), one of the considerations this court was required to take into account in sentencing Mr. Worthing was the disparity between his sentence and other, similar defendants. The court acknowledged the particular importance of ensuring it did not effectuate unwarranted sentencing disparities amongst the related defendants before it:

> THE COURT: I finally get to the point that while I understand unwarranted disparities address not just the defendants in a particular case but defendants by and large in similar cases, sentenced not by this court but by other courts, I think as a first instance, and the way I've looked at it is, I have to make sure that there are no unwarranted disparities in the defendants I'm sentencing for the same activities in varying degrees in the same conspiracies. That is, I think, meant first by unwarranted disparities. And then I look beyond these defendants, and I look broader to see whether I've achieved some sort of balance.

3:14-cr-00534-CRB-5, 5/25/18 TX, 21:10-20 (doc. no. 412). As Mr. Worthing argued at length in his sentencing memorandum, the probationary sentences imposed on dozens of similar (and largely more culpable) defendants recently sentenced in this district for identical (and likely connected) conspiracies by themselves compelled a probationary sentence for Mr. Worthing as well. The court instead sentenced Mr. Worthing to a custodial term of 30 days of imprisonment. This sentence stands not only in stark contrast to the sentences imposed on Oakland defendants, but those imposed on defendants sentenced by this very court.

The following chart reflects the sentences imposed by the court thus far on all defendants in this case and related cases (with the exception of the clearly distinguishable Big Five):

| Defendant Name | Custodial Sentence | Probation Sentence | Sentencing Range | Volume of Commerce | Number of Transactions |
|---|---|---|---|---|---|
| Florence Fung | 45 days | | 12 | $2,907,644 | 38 |

| Defendant Name | Custodial Sentence | Probation Sentence | Sentencing Range | Volume of Commerce | Number of Transactions |
|---|---|---|---|---|---|
| *Matthew Worthing* | *30 days* | | *11[5]* | *$917,987[6]* | *9* |
| Abraham Farag | 30 days | | 11 | $928,087 | 11 |
| James Doherty | 20 days | | 10 | $799,869 | 15 |
| Lydia Fong | 15 days | | 13 | $1,785,211 | 14 |
| James Appenrodt | 15 days | | 11 | $2,134,447 | unknown |
| Norman Montalvo | 10 days | | 13 | $4,303,507 | unknown |
| Kuo Hsuan Chang | | 24 months | 13 | $1,498,711 | 14 |
| Keith Goodman | | 24 months | 13 | $1,337,800 | 15 |
| Michael Navone | | 24 months | 12 | $2,908,337 | unknown |
| Troy Kent | | 24 months | 13 | $1,032,200 | 10 |
| Gilbert Chung | | 24 months | 12 | $2,532,060 | 23 |
| Robert Williams | | 24 months | 12 | $1,779,137 | 19 |
| Craig Lipton | | 24 months | 13 | $1,337,800 | 19 |
| Laith Salma | | 24 months | 12 | $3,470,900 | 22 |

---

[5]Although he did not acquiesce in the government's pleading scheme and was thus the sole defendant to face fraud charges, Mr. Worthing was sentenced in accordance with an effective sentencing range of 11 so that he would not be uniquely punished for his exercise of his rights in pre-sentencing litigation:

THE COURT: It would be initially set at 15, and you get two points for acceptance, so 13.

MR. COHEN: Yes, sir.

THE COURT: However, the way the Court is viewing it -- and I don't know whether it's a departure or a variance, one or the other -- I am going to sentence the defendant as if he has only been convicted of the crimes of bid rigging and not those of wire fraud. . . .

I am sentencing him as if he had not been convicted of those crimes, and they do not influence directly or indirectly my decision as to what the appropriate sentence is. . . .

Once again, as I've already said -- so your offense level that I am sentencing you on is 11, criminal history category I.

5/25/18 TX, 3:5-4:12 (doc. no. 133).

[6]Although the $917,987 amount reflects the volume of commerce attributed to Mr. Worthing by the government, it greatly exceeds the $507,387 volume of commerce that is reached by limiting Mr. Worthing's volume to his interest in the properties acquired, as argued in Mr. Worthing's sentencing memorandum.

Mr. Worthing's Motion for Bail Pending Appeal and Stay of Sentence
*U.S. v. Worthing*;
Case No. 3:12-cr-00300-CRB

*See* 3:13-cr-00805-TEH; 3:14-cr-00534-CRB-5; 3:11-cr-00797-CRB; 3:12-cr-00301-CRB; 3:14-cr-00534-CRB-4; 3:12-cr-00785-WHA; 3:13-cr-00670-CRB; 3:11-cr-00798-WHA; 3:13-cr-00804-SI; 3:11-cr-00800-SI; 3:13-cr-00069-SI; 3:13-cr-00388-RS; 3:11-cr-00799-EMC; 3:11-cr-00801-CRB.[7]

Mr. Worthing committed no acts that these other defendants did not, and in almost all instances, was involved in fewer transactions and a smaller volume of commerce.[8] Unlike many of these more culpable conspirators who received less harsh sentences, Mr. Worthing acted at the direction of his employers and immediately cooperated with the FBI, eventually becoming one of the first defendants to enter into a plea agreement. Ultimately, the government attempted to punish Mr. Worthing for his motion to withdraw his plea by refusing to make the §5K1.1 motion it had promised; the court wisely rejected the suggestion that Mr. Worthing was less deserving of the benefits of his cooperation than other defendants.[9] In short, if Mr. Worthing were to be sentenced differently from the related defendants (as he should have been), he should have been given a *lower* sentence than those defendants, not a *higher* one.

It is entirely unknown why the court imposed probationary sentences on so many more culpable defendants, nor why it gave a number of shorter custodial sentences to defendants with higher volumes of commerce and sentencing ranges. Recognizing the blatant disparity in sentences

---

[7] The number of transactions attributed to each defendant is surmised from the government's sentencing memorandum, where discernible.

[8] Only one of these defendants, James Doherty, has a lower volume of commerce. No defendant sentenced was involved in fewer transactions.

[9]

THE COURT: I am also stating for the record that if a motion pursuant to 5K1 had been filed, I would have granted it because notwithstanding the fact that he didn't offer substantial assistance, it is his view that had the prosecution -- had the prosecution of the case gone a particular way he would have availed himself of that consideration.

So I think what I'm saying is that I am treating it as if he fits within the category of those defendants who had made 5K1 motions and granted them. That is to say, I'm sentencing him consistent with the same guideline considerations as to any other person who was in criminal history category I and adjusted guideline offense 11.

5/25/18 TX, 4:23-5:9 (doc. no. 133).

Mr. Worthing's Motion for Bail Pending Appeal and Stay of Sentence
*U.S. v. Worthing;*
Case No. 3:12-cr-00300-CRB

imposed, Mr. Farag, one of the three defendants first sentenced by the court on May 25, filed a motion to correct sentence. *See* 3:14-cr-00534-CRB-5, doc. no. 420. The court's order denying the motion offers one possible explanation for the discrepancies in sentencing: it may have "changed its mind." 3:14-cr-00534-CRB-5, doc. no. 421.

Whatever the reason for these disparities, it is not reflected in the record (and it certainly does not arise from anything Mr. Worthing was able to adequately address without access to the discovery he requested prior to his own sentencing). Whether these sentencing disparities are warranted will be decided by the Ninth Circuit. But it is clear from even a superficial review that the issue of sentencing disparity in Mr. Worthing's case is a significant one that, like the others Mr. Worthing has described in this motion, warrants his release while it is reviewed by the Ninth Circuit.

## V.

## CONCLUSION

Mr. Worthing respectfully requests the Court grant him bail pending his appeal of his conviction and sentence pursuant to 18 U.S.C. § 3143 and a stay of his sentence pursuant to Fed. R. Crim. P. 38.

Dated: July 18, 2018                          Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

By: /s/David J. Cohen
DAVID J. COHEN, ESQ.

Attorneys for Defendant **Matthew Worthing**